UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **KIMBERLY KUBAS**<br>**500 Benforest Drive**<br>**Severna Park, MD 21146**<br>Plaintiff,<br><br>v.<br><br>**331B, LLC**<br>**(D/B/A ROCKWELL FITNESS)**<br>**2120 Bell Tower Drive**<br>**Crownsville, MD 21032**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Civil Action No.  1:20-cv-2456<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW Kimberly Kubas ("Plaintiff") and brings this action against Defendant 331B, LLC d/b/a Rockwell Fitness for violating Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e, *et seq*. by terminating her, after thirteen years of service, in retaliation for complaining about sexual harassment by the gym's General Manager, Devin Conway.

### I. The Parties

1. Plaintiff Kimberly Kubas (hereinafter, "Ms. Kubas") is an adult, female resident of Severna Park, Maryland.

2. Defendant 331B, LLC is a Maryland limited liability company.  Its corporate address is 2120 Bell Tower Drive, Crownsville, MD 21032.  331B, LLC is co-owned by Maryland State Delegates Sid A. Saab ("Saab") and Brian A. Chisholm ("Chisholm").  According to the

1

business's registration, 331B, LLC's registered agent is Jason C. Buckel, 206 Washington Street, Cumberland, MD 21502.

3. "Rockwell Fitness" is a trade name registered to Defendant 331B, LLC. Rockwell Fitness is a full-service gym, with approximately 33 employees, located at 551 Baltimore Annapolis Blvd D, Severna park, MD 21146. Prior to her unlawful termination, Ms. Kubas worked at Rockwell Fitness (hereinafter, "RWF" or "gym") as a part-time administrative assistant.

## II. Jurisdiction and Venue

4. This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because Plaintiff worked at RWFin Anne Arundel County and the actions and omission giving rise to the claims asserted herein occurred in this District.

## III. Exhaustion of Administrative Remedies

6. Plaintiff has exhausted her administrative remedies prior to filing this lawsuit.

7. The EEOC issued Plaintiff a Notice of Right to Sue on June 2, 2020. This lawsuit is being filed within 90 days of Plaintiff's receipt of this notice as required by 29 CFR § 1614.407.

## IV. Statement of Facts

8. Ms. Kubas started working for RWF in 2006 in the Child Care Department under its prior owners. She later switched into an Administrative Assistant position, where she handled bookkeeping and other similar tasks.

9. In or around the fall of 2016, Ms. Kubas joined a weekly small group personal training session taught by Devin Conway, who was, at that time, the Personal Training Director

for RWF. Though the class initially had six attendees, four individuals dropped out and the class soon consisted of only Ms. Kubas and the husband of another employee. During these personal training sessions Ms. Kubas was repeatedly sexually harassed by Mr. Conway. He would call her "hot buns," ask her to bend over so he could enjoy the view of her posterior, and simulate masturbation using the gym's exercise ropes. While Conway's behavior made Ms. Kubas uncomfortable, for a time, they had a workplace friendship and Ms. Kubas would interact with him socially outside of the office to some degree.

10. Mr. Conway's behavior escalated over the next two years. At times he would deliberately collide with Ms. Kubas and rub his body against her. Twice he locked the door to Ms. Kubas's office and proceeded to grope her breasts. Ms. Kubas asked him to stop in both instances. Conway's behavior made Ms. Kubas nervous and uncomfortable, but she feared reporting him. At this point, Ms. Kubas was unaware that Mr. Conway was treating other female employees in the same manner.

11. In or around August of 2017, after a night of trivia at a local bar, Ms. Kubas and Mr. Conway had a consensual sexual encounter. Ms. Kubas has never suggested that this was anything but consensual and as will be discussed below, she disclosed the encounter to Mr. Chisolm when making a complaint to him that Mr. Conway had sexually harassed her and other female employees of RWF.

12. In September of 2018 the gym was purchased by Brian Chisolm and Said Saab, through their entity, Defendant 331B, LLC. At that time, Ms. Kubas was employed as an Administrative Assistant, working approximately ten (10) hours a week at a rate of fourteen dollars ($14) an hour.

13. In November 2018, at a Thanksgiving event at RWF, Ms. Kubas was approached by RWF employee Riley Mayer.  Ms. Mayer confided in Ms. Kubas that Mr. Conway was making her uncomfortable in the workplace by repeatedly grabbing her posterior and making sexualized comments about the same.  Ms. Mayer's complaints regarding Conway sounded eerily familiar to his harassment of Ms. Kubas.  Ms. Mayer quit shortly thereafter.

14. In April of 2019 Mr. Conway became the gym's General Manage and Ms. Kubas's supervisor.  At this point, Conway stopped teaching Ms. Kubas's group training session and ceased harassing Ms. Kubas.

15. On May 11, 2019 Ms. Kubas attended a benefit at RWF for an employee with an autoimmune disease. There was a substantial amount of alcohol consumed during the event by staff, in part, because Mr. Chisolm was passing out vodka shots to employees in his office.  That evening, Ms. Kubas spoke with a RWF trainer named Bobbi Beers in the women's restroom. Ms. Beers disclosed that Conway was romantically interested in her and he was making her feel uncomfortable at work.  Ms. Beers mentioned that Conway had showed up at her house unannounced and was flirting with her inappropriately in the workplace.  While Ms. Beers insinuated that she was interested in Conway, she also told Ms. Kubas she doubted Mr. Conway's character and intentions.  Ms. Beers stated she was concerned about "rejecting" Conway due to the fact that he was tasked with delegating clients to her and could easily affect her income.  In an act of solidarity Ms. Kubas shared her own experiences with Conway, specifically mentioning the two instances of workplace groping and their past sexual encounter (of which Ms. Beers was already aware).

16. That same evening, another trainer named Breanna Moore, who had recently been promoted to Assistant Manager of RWF, also talked with Ms. Kubas and conveyed similar experiences with Mr. Conway.

17. After the benefit, Ms. Beers invited Ms. Kubas and a few others out for drinks at the Taphouse in Severna Park.  Ms. Beers drove herself and Ms. Kubas to the bar and they spoke more about how Ms. Beers could handle Conway's advances without jeopardizing her job.  Later that evening, Ms. Beers came to Ms. Kubas's home, where they continued their discussion.  Ms. Kubas had no reason to doubt the authenticity of Ms. Beers statements or her concerns regarding Conway.

18. For reasons unknown to Ms. Kubas, Ms. Beers chose to disclose her communications with Ms. Kubas regarding Mr. Conway to him at some point prior to Ms. Kubas going to work on May 13, 2019.  When Ms. Kubas arrived at work that morning, she found Conway standoffish and hostile towards her which made her concerned that someone had related to him the details of her candid conversations with Ms. Beers and Ms. Moore at the event that took place two nights prior.  She reached out to Mr. Conway over text and asked him to speak with her because she was concerned for her job.

19. Later that day, Ms. Kubas and Mr. Conway met in Mr. Conway's office.  Mr. Conway admitted that he was told about Ms. Kubas's conversation with Ms. Beers.  He was livid and told Ms. Kubas that he did not want to hear another word about her allegations and that he could not have her complaint come out against him.  He told Ms. Kubas that they needed to sweep everything under the rug.  Conway then screamed at Ms. Kubas that if he heard that she was talking to anyone else about the matter, there would be consequences for her.

5

20. Shortly thereafter, Conway's attitude and demeanor towards Ms. Kubas became very negative and changed dramatically in retaliation for her truthful comments about his sexually harassing behavior towards her.  For example, Conway started undermining and belittling Ms. Kubas during meetings, he would purposefully ignore her when Ms. Kubas would say good morning to him, and go out of his way to avoid interacting with her.  Mr. Conway's attitude also appeared to change towards Ms. Williams, who he believed supported Ms. Kubas.  Ms. Williams' hours were drastically cut and she resigned her position from the gym shortly thereafter.

21. For the sake of her own safety, the safety of the other female employees of RWF, and the health of the business, Ms. Kubas decided to report Mr. Conway's behavior to RWF's owners, Chisholm and Saab.  As a thirteen-year employee of the gym, Ms. Kubas was invested in its continued success and believed that Conway posed a serious threat to the business.

22. On or around June 1, 2019 Ms. Kubas spoke with one of the owners, Brian Chisolm, by phone.  During their conversation Ms. Kubas was forthright with Mr. Chisolm explaining that while she once had a consensual encounter with Conway approximately two years prior, that he had sexually harassed her for years including groping her in her office.  Ms. Kubas further told Mr. Chisolm about her conversation with Ms. Beers regarding Ms. Beers' concerns with Mr. Conway.  Ms. Kubas made it clear that she would like to remain anonymous, and that she simply wanted Conway to leave her alone and allow her to do her job without issue. Chisolm assured Ms. Kubas that he and Mr. Saab would investigate the matter and take her allegations seriously and that the complaint would remain confidential.

23. In or around early June of 2019, Mr. Conway called Ms. Kubas into his office and started yelling at her about an error she made on her time clock, which was normally a non-issue.

6

Many of the other staff regularly commit such errors and there was or is currently an entire Slack forum (a workplace communication platform) called "time clock" in which employees could send in their time keeping errors/unrecorded time to management. On June 18, 2019, Conway berated Complainant again for her time clock, telling her that she thought "she was better than everyone else." The next day, he stated that he had spoken with other female employees (Ms. Moore and another employee) who told him that his behavior toward them was perfectly normal. At some point during this period Chisolm admitted to Ms. Kubas that he had spoken with Conway about her allegations and disclosed that she was the source of the complaint.

    24. Ms. Kubas was afraid that Conway's retaliatory behavior would continue. She tried to discuss her concerns in a June 19, 2019 meeting with Mr. Chisolm, Latoya Williams (another gym employee), and Conway. In the meeting Ms. Kubas explained that she felt retaliated against for making a complaint against Conway. Chisolm did not appear at all concerned. This upset Ms. Kubas and she politely asked to leave the meeting because she did not wish to cry in front of her employer.

    25. That night, Ms. Kubas emailed Chisolm and Saab to formally document the mistreatment she was being subjected to by Mr. Conway. She hoped that they would take her allegations more seriously if she sent a written complaint. In her email, she wrote:

> I am writing to formally document the recent weeks series of events and what has led to where I am at the present moment.
>
> I want to start by saying, I truly am invested in Rockwell's profitability and success as a gym. Having been with the company for 13 years, I have formed great relationships with members as well as staff, that keeps me coming back each day with a smile. It was a pleasure to meet you two, and I can see both of you have a financial, as well as emotional investment in the gym as well.

This all started May 11, 2019, after the benefit for Pete. Bobbi Beers asked me if I could give her any advice on how to handle Devin. She told me he has been acting aggressive (sexually) towards her, and she does not trust him. She stated she was afraid of losing clients if she stood up to him.  I told her that she needs to trust her instinct, and that I have personally witnessed him doing the same to others, including myself.

That Monday, May 13, Devin did not acknowledge me at all. I said hello, he ignored me. I asked to meet with him, at which point he demanded that I keep it all a secret, it never happened, and to sweep it under the rug.  In addition, he berated me for coming clean to Bobbi. I felt badly for her, and my sole intention was to let her know she is not trapped with this situation.

Since then things have gotten worse. I did reach out to you, Brian. And I thought and thought about it, debating if it was the right thing to do. I was nervous and scared, but I did.

There are at least 2 other women who have approached me with similar stories, and if need be I can contact them and disclose their identities, if they wish.

I have felt highly uncomfortable around Devin since this came to light, due to the fact he is singling me out.  It is without a doubt related to my bringing his sexual harassment to light.  He berated me about my error in clocking in. There are plenty of times staff forgets to clock in, and he has never had an issue with anybody else previously.

I had not clocked in properly, due to the schedule of our software conference calls, and providing care for my daughter during those times.  He called me in his, office on June 18, and accused me of thinking I'm better than everyone, and not clocking in just to get him upset.

He also admitted talking to other staff about this situation (Bree and Sarah). That is what I felt the most embarrassed and upset.  I have kept this whole situation private, between you (Brian) and Devin.  I have gone out of my way to make sure this situation is protected and anonymous, and I feel let down.

I have been feeling dread and anxiety anytime I have to communicate with Devin, and it is taking a toll on me.

> Due to the current situation, I am requested the ability to work from home for the next two weeks, until I figure out how to proceed.
>
> I look forward to hearing from you.
>
> Take care,

26. Chisolm wrote back to say that he and the gym's co-owner, Saab, would investigate the retaliation allegations and that it was perfectly fine for Ms. Kubas to work from home. Ms. Kubas responded on June 20, 2019 stating "Thank you for your responses . . . . I simply want to be treated with common courtesy, and basic respect." Ms. Kubas also indicated that she had everything she needed to continue working from home.

27. The following day, Ms. Kubas received a text from Mr. Chisolm urgently asking her to come into the office that day to handle some deposits for the business to cover expenses. At that time, Ms. Kubas was at a doctor's appointment with her young daughter and was planning to return home and work from there after the conclusion of the doctor's appointment, as she had been given permission to do so by Chisolm.

28. Ms. Kubas responded at 9:45 am that she was at a doctor's appointment but would work on getting the deposits done afterwards. After the appointment finished, Ms. Kubas made the five-minute drive home and logged into the time keeping software indicating that she was working. She then proceeded to work on the deposits for RWF which she had at her home. Ms. Kubas then drove to the gym, which is also a five-minute trip, and went to her office to finish preparing all of the deposits. Some additional checks had arrived while Ms. Kubas was out of the office and she wanted to deposit all available funds because Mr. Chisolm had indicated to her that the matter was urgent. Ms. Kubas was unable to log into the software at that time, so she walked to the bank and manually made the deposits that she prepared at home. At this time, Ms.

Kubas believed it to be some type of IT error and was unaware that Mr. Chisolm had terminated her access to RWF's software. Ms. Kubas texted Mr. Chisolm to explain that she was locked out of the software.

29. When Complainant returned from the bank, Mr. Chisolm was waiting for her in her office and told her that a gym member had approached him earlier that day because he had heard rumors about Conway sexually harassing women. Mr. Chisolm looked angry and said that Ms. Kubas and LaToya Williams were a cancer on his business and starting to make him look bad and that he could not have that. Ms. Williams was a Rockwell employee and the spouse of the customer Chisolm allegedly heard was stating that Conway had been accused of sexual harassment. Mr. Chisolm further stated that Respondent had conducted an investigation and found Mr. Conway to be a "stand-up guy." He then told Ms. Kubas to leave immediately, stating that he would pay her for two weeks. In sum, Ms. Kubas was terminated for her protected activity and ordered to immediately leave the premises.

30. After her termination Ms. Kubas was not paid as promised by Mr. Chisolm. Ms. Kubas was only paid *after* she filed an Initial Charge of Discrimination with the EEOC. Mr. Chisolm explained that Mr. Conway failed to include any hours for Ms. Kubas for her last paycheck. Upon information and belief, this was an act of retaliation by Mr. Conway. Defendant then further retaliated against Ms. Kubas by opposing her application for unemployment in July 2019 by falsely claiming that she was fired for "gross misconduct" for working from home without permission. This caused Ms. Kubas to be dragged into the appeals process which resulted in an unnecessary delay in her receipt of unemployment benefits.

## COUNT I:
### Retaliation

31. Plaintiff incorporates the paragraphs above as if specifically set forth herein.

32. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because[s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

33. Plaintiff engaged in protected activity by, *inter alia*, complaining to her employer, specifically co-owner Brian Chisholm about Mr. Conway's sexual harassment of her and other employees of RWF. Plaintiff further engaged in protected activity when she complained about Mr. Conway's retaliatory conduct towards her after she complained his misconduct.

34. Defendant took a materially adverse action against Ms. Kubas by unlawfully terminating her.

35. Defendant's decision to terminate Ms. Kubas, who was a long tenured employee at RWF, was based on Defendant's retaliatory animus for Ms. Kubas's protected activity.

36. As a direct result of Defendants' unlawful actions, including terminating Ms. Kubas for engaging in protected activity, Plaintiff felt degraded, humiliated, and embarrassed. She also felt extreme emotions including stress, anxiety and depression over an extended period of time. The results on her physical health, family life, and emotional well-being were significant. Additionally, as a direct result of Defendants' unlawful actions, Plaintiff has suffered economic harm in the form of lost wages and benefits.

## V. <u>Relief Requested</u>

WHEREFORE, Plaintiff prays that the Court award Plaintiff Kimberly Kubas:

a. back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct;

b. compensatory damages against Defendants in an amount to be determined by the jury;

c. costs, disbursements, prejudgment interest, post-judgement interest, expert witness fees and reasonable attorney's fees allowed under actions brought pursuant to Title VII;

d. punitive damages; and

e. such further relief as is deemed just and proper.

## VII. <u>Jury Demand</u>

Plaintiff demands a trial by jury to hear this cause.

Date: August 25, 2020

Respectfully Submitted,

    /s/ Sundeep Hora
Sundeep Hora (M.D. Bar. No. 28208)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW, Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

COUNSEL FOR PLAINTIFF