

1025 Connecticut Avenue, NW
Suite 615
Washington, D.C. 20036

Phone (202) 969-8220
Fax (202) 969-8224

www.adhlawfirm.com

Sundeep Hora, Admitted DC, MD
shora@adhlawfirm.com

April 23, 2021

**VIA E-MAIL ONLY (MDD_DLBChambers@mdd.uscourts.gov)**
Hon. Deborah L. Boardman
U.S. Magistrate Judge
U.S. District Court for the District of Maryand
101 West Lombard Street
Baltimore, Md 21201

  Re: **Kubas v. 331B, LLC Case No. 20-cv-02456 (DLB)**

Dear Judge Boardman:

Pursuant to the Court's October 30, 2020 Letter Order concerning the Court's informal discovery dispute procedure, Plaintiff provides the following summary regarding her dispute with Defendant 331B LLC (d/b/a Rockwell Fitness).

## Brief Overview of Plaintiff's Case

Plaintiff Kim Kubas has asserted a one-count complaint against Defendant Rockwell Fitness, a full-service gym based in Severna Park, Maryland for retaliation arising out of her termination for reporting sexual harassment allegations against her and other gym employees by the gym's prior general manager, Devin Conway.  On June 21, 2019, two days after she filed a written complaint summarizing Mr. Conway's misconduct, Ms. Kubas was terminated by Maryland Delegate Brian Chisolm, who co-owns the gym with Maryland Delegate Sid Saab.  During his discussion with Ms. Kubas on June 21, 2019, Mr. Chisolm informed Ms. Kubas that a gym member had approached him because he had heard rumors about Mr. Conway sexually harassing women.  Chisolm angrily told Ms. Kubas that she was a cancer to his business and starting to make him "look bad," and that he could not have "this." He further told Ms. Kubas that Mr. Conway was a "stand-up guy" and then terminated her.  Defendant claims that it terminated Ms. Kubas for failing to clock out properly on the day of her termination.

Within two weeks after her termination, Ms. Kubas filed a charge with the EEOC on July 9, 2019 alleging retaliatory termination.  Delegate Chisolm acknowledged electronic receipt of her complaint on July 30, 2019, triggering Defendant's duty to preserve and gather documetns.  At this point, and for several months thereafter, several key witnesses were employed by the Defendant, including Mr. Conway, his girlfriend Bobbi Beers, Bree Moore (who also complained to Ms. Kubas about Mr. Conway's harassment) and Latoya Williams (another employee who filed a written complaint about Mr. Conway).

On November 19, 2020, Plaintiff propounded interrogatories and request for production on the Defendant.  On January 25, 2021, Defendant provided its responses, which were deficient in several

respects, and in particular, its document production. Prior to its document production, counsel for Defendant indicated that it had approximately one thousand (1000) pages to produce, however, it ended up producing only about two-hundred pages. The bulk of the documents produced consist of Defendant's tax records (114 pages), Defendant's EEOC Position Statement (39 pages), and an unsigned and undated company handbook (16 pages). In sum, despite having several months in which to collect documents, Plaintiff received approximately 31 pages of substantive documents.

On March 2, 2021, Plaintiff submitted a letter identifying various deficiencies in Defendant's responses to both her Interrogatories and Request for Production including the lack of a meaningful document production. Defendant agreed to supplement all of the identified deficiencies during the parties' meet and confer on March 8, 2021. Although Defendant promised to supplement its responses by March 15, 2021, it took several additional weeks wherein Defendant failed to seek an extension or otherwise communicate with Plaintiff (unless repeatedly prompted) regarding the status of it is supplemental responses. Finally, on the April 5, 2021, Defendant issued its supplemental response to the request for production, which included only pay stubs for Plaintiff and Latoya Williams, and a few pages from the Slack forum, entitled, "Time Clock." Defendant failed to produce any other documents, and simply affirmed that all documents had been previously produced. Defendant also failed to provide any supplement its response to interrogatories despite promising to do so during the parties meet and confer.

Among the identified deficiencies was RFP No 1:

> RFP No.1 seeks "[a]ll communications and documents **between and among Defendant's owners and/or employees** regarding the allegations made in the Complaint." It appears as if little effort was made to search for emails, text messages or other responsive communications by Defendant's staff and ownership regarding this case. **In total, Defendant has produced seven pages of emails which were not part of its EEOC Position Statement or obtained indirectly from Plaintiff through her correspondence with the Maryland Unemployment Commission. See 331B_60-61, 194-198. Please supplement this request after carrying out a comprehensive search.**

Ex. 1 (3-2-21 Deficiency Letter).[1]

On April 16, 2021 counsel for Plaintiff took the deposition of Sid Saab, one of the two owners of Rockwell Fitness. During his deposition, Delegate Saab testified, unequivocally, that he never has, *nor has he been asked by counsel*, to search his emails, documents or text messages for responsive documents in this case. Saab admitted this after admitting that he regularly communicated via email and text with co-owner Chisolm and less regularly with Defendant's employees. During the parties second meet and confer regarding Saab's testimony on April 21, 2021, counsel for Defendant revealed that Mr. Saab's deposition testimony prompted him to ask Delegate Brian Chisolm (the other owner of Rockwell Fitness) to produce his emails to him for review. Allegedly, Delegate Chisolm complied and produced 70 emails to counsel for Defendant, however, to date, none of these emails have been produced. Moreover, based on Saab's testimony and Chisolm's after-the-fact search for emails,

---

[1] As discussed in the March 2, 2021 Deficiency Letter, RFP Nos. 2, 6 and 7 also seek documents and communications from Chisolm, Saab and Defendant's former employees.

Plaintiff does not believe that Defendant has or is fulfilling its discovery obligations in this case. There are also several deponents that are former employees of Rockwell Fitness for whom Defendant had access to their emails prior to their separation. None of these emails or communications have been produced, likely because these individuals, like their bosses, were never asked to search for responsive documents.

Plaintiff's instructions in her Requests for Production of Documents specified that Plaintiff was requesting documents "in the actual or constructive possession, custody, or control of Defendant, Defendant's attorney(s) or agent(s), or which are believed by Defendant, Defendant's attorney(s) or agent(s) to exist or previously to have existed." If Defendant previously had responsive documents in its possession, which were subsequently lost or destroyed, it should so state and provide an explanation for the destruction or loss. Defendant had an obligation to preserve these documents under Federal Rule of Civil Procedure 37(e). Rule 37(e)(1) "provides that if (1) ESI that should have been preserved in anticipation of litigation is permanently lost because a party failed to take reasonable steps to preserve it, and (2) another party is prejudiced by that loss, then (3) the Court 'may order measures no greater than necessary to cure the prejudice.'" *Eller v. Prince George's Cty. Pub. Sch.,* 2020 U.S. Dist. LEXIS 234367, *20 (D. Md. Dec. 11, 2020) (quoting Fed. R. Civ. P. 37(e)(1)). Rule 37(e)(2) indicates that the Court may impose more severe sanctions than those available under Rule 37(e)(1) if ESI that should have been preserved is lost because a party failed to take reasonable steps to preserve

Plaintiff seeks and order: (1) compelling Defendant to conduct a thorough search for responsive documents; (2) compelling supplemental responses to the interrogatories identified in Plaintiff's March 2, 2021 deficiency letter; (3) production of digital copies of Delegates Saab and Chisolm's cell phones to preserve the contents of these devices and allow the extraction text messages; (4) allow Plaintiff to redispose Saab at Defendant's expense; (5) an extension of the discovery deadline[2] to allow Plaintiff an opportunity review the supplemental production and the rescheduling of the remaining depositions; (6) requiring Defendant to reimburse Plaintiff for any costs associated with re-serving any witnesses that required a subpoena; and (7) sanctions for Defendant's discovery misconduct, which may be an issue that must be decided at a later date, after the supplemental production has been made.

Plaintiff respectfully requests that the Court hold a telephonic hearing on the issues raised in this correspondence.

Sincerely,

Sundeep Hora

---

[2] Curiously, even though Defendant knows that it has not complied with its discovery obligations and that it possesses emails from Mr. Chisolm (that have not been produced), it opposes an enlargement of the discovery deadline and the rescheduling of the remaining depositions in this case. Defendant would not be prejudiced by any extension and its unwillingness to agree to request such an extension evidences bad faith.