## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**KIMBERLY KUBAS,**

       Plaintiff,

   v.                                Civil Case No. <u>1:20-cv-2456(GLR)</u>

**331B, LLC**
**(D/B/A: ROCKWELL FITNESS)**

       Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Respectfully submitted,


       / s /
_____
Jason C. Buckel, Bar No: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
_Counsel for Defendants_

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.    FACTS ................................................................................................................. 1

   A.  *History of Rockwell Fitness Ownership* ................................................... 1

   B.  *Kubas' Employment with Rockwell* ........................................................ 2

   C.  *Kubas' Allegations of Sexual Harassment by Conway* ........................... 2

   D.  *Kubas' Allegations Regarding Sexual Harassment of Others by Conway* ............. 3

   E.  *Kubas' Reporting of Conway's Actions to 331B and 331B's Investigation* .......... 5

   F.  *Kubas' Timeclock and Theft of Time* ................................................... 7

   G.  *Kubas' Termination* ............................................................................. 9

   H.  *Exhaustion of Administrative Remedies* ............................................... 9

III.   STANDARD OF REVIEW ................................................................................ 10

IV.   ARGUMENT ...................................................................................................... 12

   A.  Kubas Cannot Establish a Prima Facie Case of Retaliation Because She Cannot Prove a Causal Connection to the Protected Activity. ........................................... 12

   B.  Kubas in Unable to Demonstrate that 331B's Articulated Legitimate Non-Retaliatory Reasons for Terminating Her are Pretextual. ..................................... 13

   C.  Kubas Cannot Establish a Prima Facie Case of Retaliation Because She Cannot Prove She Engaged in a Protected Activity. ....................................................... 17

V.    CONCLUSION .................................................................................................. 20

APPENDIX ....................................................................................................................

   A.  *Appendix A (Plaintiff's Complaint)* ..................................................... A1

   B.  *Appendix B (Deposition Tr. of Kimberly Kubas)* ................................. A6

   C.  *Appendix C (Deposition Tr. of Brian Chisholm)* ................................ A15

   D.  *Appendix D (Defendant's Production of Documents)* ......................... A23

   E.  *Appendix E. (Deposition Tr. of Devin Conway)* ................................. A35

   F.  *Appendix E. (Plaintiff's Answer's to Interrogatories)* ........................ A36

   G.  *Appendix E. (Plaintiff's Production of Documents)* ............................ A47

i

## <u>TABLE OF AUTHORITIES</u>

**Rules**
Fed. R. Civ. P. 56(c)                                                                                                10

**Case Law**
*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)     10
*Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981)                                     17
*Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)                         12,17
*Charbonnages de France v. Smith*, 597 F .2d 406, 414 (4th Cir. 1979)                               10
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)           10-12
*DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)                                     12-13
*Ennis v. Nat'l/ Ass 'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995)                 11
*Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996)                          13
*Fabian v. Storage Tech. Corp.*, 959 F. Supp. 742, 746 (E.D. Va. 1997)                               11
*Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987)
*Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001)                                                 13
*Foster v. University of Maryland Eastern Shore,* 787 F.3d 243, 250 (4th Cir. 2015)                  15
*Gilooly v. Missouri Dep't of Health and Senior Servs.*, 421 F.3d 734, 741-45
(8th Cir. 2005)                                                                                    17-18
*Khoury v. Meserve,* 268 F.Supp.2d 600, 615 (D.Md.2003)                                              15
*Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)             17
*Matushita Elec. Indust. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587-88,
106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)                                                             10-11
*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)                                           12-13,15
*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)                                    11
*Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991)                                              10
*Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000)                                 12
*Taylor v. Peninsula Regional Medical Center*, 3 F.Supp.3d 462, 473-474 (D.Md 2014)                 15
*Villa v. Cavamezze Grill, LLC*, 858 F.3d 896, 902-903 (4th Cir. 2017)                         13,17-18,20
*Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989)                                 12,14

I.      **INTRODUCTION**

This is an action brought by Plaintiff, Kimberly Kubas ("Plaintiff" or "Kubas"), against her former employer, Defendant, 331B, LLC ("Defendant" or "331B").  331B operates a fitness center known as Rockwell Fitness ("Rockwell").  In her Complaint, Plaintiff alleges that she was the victim of retaliation under Title VII, 42 U.S.C. § 2000e et seq ("Title VII").  Plaintiff's entire claim rests upon her allegation that an employee of 331B, Devin Conway ("Conway") sexually harassed Kubas and that when she reported this conduct to the owners of 331B she was terminated in retaliation for complaining about Conway's behavior.

Defendant asks this Court to enter judgment in its favor on all claims raised in Plaintiff's Complaint.  As demonstrated herein, Plaintiff is unable to establish a prima facie case of retaliation under Title VII.  Additionally, 331B can establish legitimate non-retaliatory reasons for all of its actions.  The entry of summary judgment in favor of Defendant on all of Plaintiff's claims is appropriate.

II.     **FACTS**

A.      ***History of Rockwell Fitness Ownership***

At some point in time prior to 2006, a gym opened at 551 Baltimore Annapolis Blvd D, Severna Park, Maryland. Appx. A[1] (¶ 3); Appx. B[2] (7:10-12, 7:19-22).  At that time, Sport Fit, a predecessor to Rockwell Fitness, was owned by an individual named Morrie Goldman. Appx. B (13:13-18).  At some point in time prior to September 2018, Sport Fit was rebranded as Rockwell Fitness. Appx. B (14:9-12).

_____

[1] Appendix A contains excerpts of Plaintiff's Complaint.
[2] Appendix B contains excerpts of the Deposition Transcript of Kimberly Kubas, taken on August 5, 2021, via virtual means.

1

Rockwell Fitness was purchased by 331B, LLC in September 2018. Appx. C[3] (12:1-5). 331B, LLC, a Maryland limited liability company, is owned by Brian Chisholm and Said Saab. Appx. C (13:17-20). Both Saab and Chisholm are members of the Maryland General Assembly. Appx. C (13:13-16; 13:21-22 - 14:1). Presently, Rockwell Fitness employs approximately 16 employees and an additional 10 to 12 trainers on a contractual basis. Appx. C (11:7-22). In 2019, after 331B had assumed ownership of Rockwell, approximately 40 to 50 employees and contractors were employed by 331B. Appx. C (12:12-22 – 13:1-4).

### B.   *Kubas' Employment with Rockwell*

Kubas became employed at a gym known as Sport Fit in May 2006 working in childcare. Appx. B (7:10-12; 7:19-22). Later, she moved to a part-time administrative assistant position, handling bookkeeping and clerical tasks. Appx. A (¶ 8). She worked approximately, eight to ten hours per week at the time of the cessation of her employment. Appx. B (42:15-18).

### C.   *Kubas' Allegations of Sexual Harassment by Conway*

Kubas alleges in her Complaint that "In or around the fall of 2016, Ms. Kubas joined a weekly small group personal training session taught by Devin Conway, who was, at that time, the Personal Training Director for [Rockwell]." Appx. A (¶ 9). Further, she alleges that during these personal training sessions she was repeatedly sexually harassed by Conway. Appx. A (¶ 9). This sexual harassment included allegations that "[Conway] would call [Kubas] "hot buns," ask her to bend over so he could enjoy the view of her posterior, and simulate

---

[3] Appendix C contains excerpts of the Deposition Transcript of Brian Chisholm, taken on July 28, 2021, via virtual means.

2

masturbation using the gym's exercise ropes." Appx. A (¶ 9).  Kubas alleged that Conway's behavior escalated over the next two years, with him "deliberately collid[ing] with Kubas and rub[bing] his body against her." Appx. A (¶ 10).  Kubas claimed that Conway twice locked the door to Kubas' office and proceeded to grope her breasts. Appx. A (¶ 10). Despite these uncorroborated incidents of harassing conduct, Kubas admitted that in or around August 2017, she had a consensual sexual encounter with Conway. Appx. A (¶ 11). The consensual sexual encounter between Kubas and Conway occurred at Conway's home. Appx. B (9:4-12).

In April 2019 Conway became the gym's General Manager and Kubas' supervisor. Appx. A (¶ 14).  By Plaintiff's own admission, "at this point, Conway ceased harassing Kubas." Appx. A (¶ 14).

Noteworthy is Conway's complete denial of Kubas' allegations under oath in an affidavit submitted to the EEOC and during his deposition in this matter. Appx. D[4] (331B_0022 at ¶¶ 28-31). Conway had never been the subject of any other sexual harassment allegations. Appx. E[5] (67:5-15).  In point of fact, other than Kubas' own allegations, there is no admissible evidence developed during discovery in this matter supporting her claim of any harassment by Conway. She cannot identify names and addresses of anyone who she believes observed or can support her version of events. Appx. B (31:20 – 32:9)

**D.**    ***Kubas' Allegations Regarding Sexual Harassment of Others by Conway***

---

[4] Appendix D contains excerpts of Defendant's Production of Documents.
[5] Appendix E contains excerpts of the Deposition Transcripts of Devin Conway, taken on July 29, 2021-July 30, 2021, via virtual means.

Kubas further alleges that Conway sexually harassed not only her, but other female gym employees. Appx. A (¶¶ 11,21); Appx. F[6] (Answers 2, 12, 14). Kubas alleges that, among the other female employees, Conway specifically sexually harassed Breanna Moore (Appx. A (¶ 16); Appx. B (167:14-21), Bobbi Beers (Appx. A (¶¶ 17-18); Appx. B (167:22 - 168:1)), and Riley Mayer (Appx. A (¶ 13)). Kubas recalls specifically complaining to Chisholm regarding Moore and Beers, but is unsure of whether she informed Chisholm about the allegation that Conway sexually harassed Riley Mayer. Appx. B (174:14-21).

Bobbi Beers has specifically denied in a sworn affidavit that she told Kubas or anyone else that Conway harassed her or made her feel uncomfortable in any way. Appx. D (331B_0024 at ¶ 12). She further denied witnessing Conway harassing anyone else. Appx. D (331B_0024 at ¶ 13). Finally, Beers indicated that she had "never observed [Conway] being mean to [Kubas], singling her out, or being unprofessional towards her." Appx. D (331B_0025 at ¶ 14).

Similarly, Bree Moore indicated in a sworn affidavit that she had never told Kubas or anyone else that Conway harassed her or made her feel uncomfortable in any way. Appx. D (331B_0027 at ¶ 10). She has never witnessed Conway harassing anyone. Appx. D (331B_0027 at ¶ 11). She further commented that "[Kubas] has never complained to me that Devin sexually harassed her or anyone else," (Appx. D (331B_0027 at ¶ 12)) and noted that Kubas "started acting weird when [Conway] told her she needed to clock in and out." Appx. D (331B_00027 at ¶ 13). She also reported that she had "never observed [Conway] being mean to [Kubas], singling her out, or being unprofessional towards her." Appx. D (331B_0028 at ¶ 14).

---

[6] Appendix F contains excerpts of Plaintiff's Answers to Interrogatories

### E. *Kubas' Reporting of Conway's Actions to 331B and 331B's Investigation*

On June 12, 2019, Kubas asked Chisholm to call her. Appx. D (331B_0033 at ¶ 9). During this call, Kubas complained that she felt that Conway was being "mean" to her and that he made Kubas and others "uncomfortable." (the "Verbal Complaint"). Appx. D (331B_0033 at ¶ 9). This was the first complaint that Chisholm had received about Conway, and he told Kubas that he took the complaint seriously and would investigate. Appx. D (331B_0033-331B_0034 at ¶¶ 9-10); Appx. C (74:20-22 – 75:1-8).

To begin his investigation, Chisholm asked Kubas for details regarding her personal experience and the names of anyone else that Kubas thought was made uncomfortable by Conway. Appx. D (331B_0033-331B_0034 at ¶¶ 10-11). Ms. Kubas' response was very general – that Mr. Conway made her feel uncomfortable "in a sexually harassing way" and that he went into her office and told her that he could lock the door, and he sometimes flirted; however, Kubas made clear that Conway had never touched her in an unwanted way. Appx. D (331B_0033-331B_0034 at ¶¶ 10-11).  Kubas told Chisholm that Bobbi Beers and Bree Moore had similar experiences with Conway or witnessed Conway's actions toward Kubas. Appx. D (331B_0034 at ¶ 11).

On or around June 14, 2019, Chisholm met privately with Conway to remind him that, as General Manager, Conway had a position of great responsibility and should be sure to take the utmost care in how he conducted himself with Gym employees and members so that the Gym remains a safe and comfortable environment. Appx. D (331B_0034 at ¶ 12). Chisholm did not, at that time, tell Conway about Kubas' Verbal Complaint. Appx. D (331B_0034 at ¶ 12).

Between June 12, 2019, and June 20, 2019, Chisholm interviewed Ms. Beers and Ms. Moore, the two witnesses identified by Kubas in her Verbal Complaint. Appx. D (331B_0034 at ¶ 13). He also interviewed another female RWF employee, Trista Chandler. Appx. D (331B_0035 at ¶ 16). Each woman denied Kubas' allegations and insisted that they never experienced or

5

witnessed any harassment by Conway. Appx. D (331B_0033-331B_0034 at ¶¶ 13-16). Ms. Beers told Chisholm that, at a company event held as a charitable event earlier in 2019, Kubas had told Ms. Beers that Conway was "a bad person" and that she believed Ms. Beers "deserved better." (Ms. Beers and Conway had allegedly entered into a consensual relationship at some point prior). Appx. D (331B_0033 at ¶ 15). Ms. Beers told Chisholm that she thought Kubas was trying to get Conway fired because she was jealous that he was promoted to the General Manager position. Appx. D (331B_0033 at ¶ 15).

On June 15, 2019, Mr. Chisholm's brother Bob Chisholm ("Bob") told him about an encounter Bob had with Kubas while socializing on his boat on June 14, 2019. Appx. D (331B_0033 at ¶ 17). Bob conveyed that Kubas appeared to be drunk and disparaged Conway. Appx. D (331B_0033 at ¶ 17). According to Bob, Kubas made fun of Conway's physical attributes and claimed that he didn't deserve to be the General Manager of the Gym. Appx. D (331B_0033 at ¶ 17). Bob said that LaToya Butler Williams ("Mrs. Williams"), another employee of the Gym, had been on his boat with Kubas. Appx. D (331B_0033 at ¶ 17).

On June 19, Kubas and Latoya Butler-Williams requested a meeting with Chisholm and Conway. Appx. D (331B_00035 at ¶ 18).  During the meeting, Kubas accused Conway of targeting her for falsifying her hours and not clocking in. Appx. D (331B_00035 at ¶ 18).  Conway responded that if she were to simply clock in and out, there would be no problems. Appx. D (331B_00035 at ¶ 18). Kubas then stormed out of the meeting. Appx. D (331B_00035 at ¶ 18).

On June 19, 2019, Chisholm received an e-mail from Kubas, writing to "formally document the recent weeks series of events." Appx G[7] (0003). Kubas' e-mail states that "this all started May 11, 2019, after the benefit" where Kubas claims that Ms. Beers asked for her advice on how to handle Conway acting sexually aggressive toward her. Appx. G (0003). Ms. Kubas asked to work from home for two weeks "due to the current situation." Appx. G (0003). Mr. Chisholm granted that request but reiterated in a text to Ms. Kubas that she was required to clock in and out for work performed. Appx. D (331B_0036 at ¶ 20).

On June 20, 2019, Kubas emailed Chisholm and Saab to thank them for the response and to "make it clear that I am not requesting that Devin be let go or anything of the sort" and that she wanted to be treated with "common courtesy" and "respect." Appx. G (0005). Following the receipt of the previous e-mail from Kubas, Chisholm e-mailed Kubas at 7:09 p.m. on June 20, 2019, stating, in relevant part, "Thank you, both Sid and I met today with Devin and some others in regards to the current state of Rockwell Fitness. We furthermore spoke with Devin alone with just Sid and myself and discussed the culture and the overall environment of the gym I do not believe this will be any sort of a concern going forward although we only discussed thing, in very general terms. You will have to let either Sid or I know if you feel as though you are not comfortable or safe. Once again, we are very sorry if you felt any undue pressure or uncomfortably dangerous situations." Appx. G (0005). Kubas responded back at 8:20 p.m. "I appreciate you speaking out today regarding the issues at hand. I am prepared to put this behind me, with the assumption all is well moving forward." Appx. G (0005).

F.    *Kubas' Timeclock and Theft of Time*

---

[7] Appendix G contains excerpts of Plaintiff's Production of Documents.

Employees of 331B are required to clock in when working utilizing a timeclock system called Mindbody. Appx. C (33:13-19).  The timeclock system recorded employees time down to the second they clocked in or out. Appx. C (33:1-6).  On June 17, 2019, Ms. Kubas texted Mr. Conway, "Hey, Devin. Just realized my time clock is completely fucked up. Had been forgetting to clock in for meetings, work from home, etc. Can you put me down for 25 hours. I'll make any adjustments to next pay. Also, I'll be in around 1130 today. Is our call at 1?" Appx. G (0010). Conway responded to Kubas, "The call is at 1.  From now on you will have to clock in/out when you are here and when you are working from home. No exceptions." Appx. G (0010).  Kubas did not clock in for shifts worked on June 17, 2019, or June 18, 2019. Appx. D (331B_0020 at ¶ 19). On June 18, 2019, following a manager meeting at Rockwell, Conway asked Kubas to stop by his office. Appx. D (331B_0020 at ¶ 20).  Conway asked Kubas why she still was not clocking in and out. Appx. D (331B_0020 at ¶ 20).  Kubas' response to Conway was that his message directing her to clock in and out with "no exceptions" was "hostile." Appx. D (331B_0020 at ¶ 20).  Conway told Kubas during that meeting, generally, that she is responsible for clocking in and out like all other employees and that she is not allowed to make up her hours as she pleases. Appx. D (331B_0020 at ¶ 20).  Kubas accused Conway of targeting her and being rude. Appx. D (331B_0020 at ¶ 20).

On June 21, 2019, Chisholm reached out to Kubas, asking if he could call her later regarding the making of deposits in the company bank account. Appx. D (331B_0013).  At 9:45 a.m. Kubas responded, "I am at an appt [sic] for my daughter right now. As soon as I get to a computer I will let you know the amount being deposited. And I will have them the bank by 2pm." Appx. D (331B_0013).  Shortly after 10:00 a.m. Chisholm mentioned to Conway that Kubas was unavailable because she was taking her daughter to the doctor. Appx. D (331B_0021).  Conway

was aware, from having checked the Mindbody system, that Kubas had clocked herself in at 10:03 a.m. and informed Chisholm of the same. Appx. D (331B_0021 at ¶ 25).   At 10:07 a.m. Kubas texted Chisholm, informing him of the amount of money she had in her possession to deposit and let him know that as soon as she left her daughter's appointment, she would get to the bank. Appx. D (331B_0038 at ¶¶ 29-30). Kubas remained clocked in until 12:14 p.m., when she texted Chisholm informing him that she was at the bank and trying to make the deposit. Appx. D (331B_0038 at ¶¶ 31).

### G.     *Kubas' Termination*

Upon Kubas' return to the office, following her attempt to make the deposit at the bank, Chisholm informed Kubas that he needed to speak with her immediately. Appx. D (331B_0038 at ¶ 32).   He asked Kubas why she had been clocked in for over two (2) hours while she was not working. Appx. D (331B_0038 at ¶ 32).   Kubas became flustered and defensive.   Chisholm also questioned Kubas about the rumor that Conway was being fired because comments like these "spread like a cancer" and are very harmful to the gym. Appx. D (331B_0038 at ¶ 32).   When questioned, Kubas offered no response other than to ask, "Am I being fired?" Appx. D (331B_0038 at ¶ 33).   Chisholm responded that she was only being fired if she could not explain why she had been clocked in over two (2) hours while not working. Appx. D (331B_0038 at ¶ 33).   Kubas said nothing but began to collect her belongings. Appx. D (331B_0038 at ¶ 33); Appx. C (89:18-22 – 90:1).   That day marked the end of Kubas' employment with 331B *Id*.

### H.     *Exhaustion of Administrative Remedies*

Plaintiff filed her initial Complaint with the Equal Employment Opportunity Commission ("EEOC").   On June 2, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue. Appx. A ¶ 7. Plaintiff filed suit with this Court on August 25, 2020. Plaintiff's Complaint. Appx. A.

9

### III.   **STANDARD OF REVIEW**

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Charbonnages de France v. Smith*, 597 F .2d 406, 414 (4th Cir. 1979). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. Id. at 248, 106 S.Ct. 2505. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the basis for its summary judgment motion. Id. at 323 (1986). Once the movant sufficiently supports its summary judgment motion, the burden shifts to the nonmoving party to go beyond the pleadings and present evidence through affidavits, depositions, answers to interrogatories, or admissions on file to show that there is a genuine issue of fact for trial. Id. at 324. *See also* Fed. R. Civ. P. 56(e). A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Celotex Corp.*, 477 U.S. at 324; *Anderson,* 477 U.S. at 252; *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991). The facts, as

well as justifiable inferences to be drawn from the facts, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indust. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

The Supreme Court has emphasized that the ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. This requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87. A genuine issue is established only if a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. *Anderson.*, 477 U.S. at 248. Bare speculation by the nonmovant will not defeat summary judgment. *Ennis v. Nat'l Ass 'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (stating that "[m]ere unsupported speculation ... is not enough to defeat a summary judgment motion"); *Fabian v. Storage Tech. Corp.*, 959 F. Supp. 742, 746 (E.D. Va. 1997) (holding that an allegation of discrimination without evidence of disparate impact "is insufficient to withstand summary judgment"), aff'd 217 F.3d 838 (4th Cir. 2000).

In a Title VII or Section 1981 action, summary judgment will be granted to the defendant either when plaintiff fails to establish one or more elements of the requisite prima facie case or when the defendant puts forth evidence of legitimate, non-retaliatory reasons for the challenged acts and plaintiff fails to rebut those reasons. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).  It also bears noting that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (internal citations omitted).

IV.   **ARGUMENT**

A.   **Kubas Cannot Establish a Prima Facie Case of Retaliation Because She Cannot Prove a Causal Connection to the Protected Activity.**

In order to prove a *prima facie* case for retaliation under Title VII, a Plaintiff must show that: (1) (s)he engaged in a protected activity; (2) her employer took an action against her "that a reasonable employee would have found . . . materially adverse;" and (3) her employer's action has a causal connection to the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006). The standard set forth in *Burlington Northern* does not insulate employees from "petty slights, minor annoyances, and simple lack of good manners" in the workplace. Id. at 2415. Further, the "reasonable employee" standard is objective. It is intended to avoid "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective findings." *Id*.  In Title VII discrimination actions, the courts apply the burden shifting test first articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000) ("the *McDonnell-Douglas* burden shifting scheme applies in analyzing retaliation claims under Title VII").

When evaluating the causal connection element, the standards for establishing a prima facie retaliation case and proving pretext are not identical; rather, the burden for establishing causation at the prima facie stage is "less onerous." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989).  Because Title VII prohibits discrimination only when it results from particular, enumerated motivations, "when an employer articulates a reason for discharging the plaintiff" that the statute does not proscribe, "it is not our province to decide whether the reason was wise, fair,

or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)(internal quotation marks omitted).  That an employer must act out of "the desire to retaliate" in order to incur liability does not mean that the employer must act *maliciously*. *Villa v. Cavamezze Grill, LLC*, 858 F.3d 896, 902-903 (4th Cir. 2017) *citing Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001)(emphasis added).

Kubas' claim fails to establish a *prima facie* case for retaliation under Title VII because she fails to establish that her employer's action has a causal connection to the protected activity. Kubas has not provided a single substantive piece of evidence at the summary judgment stage to prove a causal connection between her alleged protected activity and the adverse employment action other than her own belief that she was terminated in retaliation for making uncorroborated claims of harassment against Conway.

> **B.     Kubas in Unable to Demonstrate that 331B's Articulated Legitimate Non-Retaliatory Reasons for Terminating Her are Pretextual.**

Under the familiar *McDonnell-Douglas* burden shifting framework, if Plaintiff successfully establishes a prima facie case of retaliation, her employer has the opportunity to articulate legitimate non-retaliatory reasons for the adverse employment acts. *McDonnell-Douglas*, 411 U.S. at 802-05. If the employer successfully articulates such reasons, the burden shifts back to Plaintiff, who must then put forth evidence that the employer's reasons were actually mere pretext for prohibited retaliation. *Id*. Plaintiff always bears the ultimate burden of showing that the employer's proffered reasons were not its true reasons, but rather were a pretext for discrimination. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

Mere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989)(*abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013)).   Assuming *arguendo* that Kubas has established a *prima facie* claim that 331B retaliated against her by terminating her employment because she engaged in a protected activity, 331B's adverse employment action of terminating Kubas was for legitimate, non-retaliatory reasons, to wit: failing to properly clock-in and clock-out while working from home and fraudulently clocking-in and claiming hours while not working.

Employees of 331B are required to clock in when working utilizing a timeclock system called Mindbody. Appx. C (33:13-19).  On June 17, 2019, after indicating to Conway that she had been forgetting to clock in and work from home, Kubas requested Conway to "put her down for 25 hours." Appx. D (331B_0010).  Conway responded to Kubas, in relevant part, ". . . ***From now on you will have to clock in/out when you are here and when you are working from home. No exceptions.***" Appx. D (331B_0010)(emphasis added).   Despite Conway's admonition that she must clock in/out with no exceptions, Kubas did not clock in for shifts worked on June 17, 2019 or June 18, 2019. Appx. D (331B_0020 at ¶ 19).

Because Kubas' timekeeping continued to be an ongoing issue, and because it was not addressed with a message, Conway reasonably requested Kubas to stop by his office. Appx. D (331B_0020 at ¶ 20).  Conway asked Kubas why she still was not clocking in and out. Appx. D (331B_0020 at ¶ 20).  Kubas' response to Conway was that his message directing her to clock in and out with "no exceptions" was "hostile." Appx. D (331B_0020 at ¶ 20).  Conway told Kubas during that meeting, generally, that she is responsible for clocking in and out like all other

14

employees and that she is not allowed to make up her hours as she pleases. Appx. D (331B_0020 at ¶ 20). Kubas accused Conway of targeting her and being rude. Appx. D (331B_0020 at ¶ 20). Conway, Kubas' supervisor, had now addressed her timeclock issues on two straight days in two different manners.

On June 19, Kubas and Latoya Butler-Williams requested a meeting with Chisholm and Conway. Appx. D (331B_00035 at ¶ 18). During the meeting, Kubas accused Conway of targeting her for falsifying her hours and not clocking in. Appx. D (331B_00035 at ¶ 18). Conway responded that if she were to simply clock in and out, there would be no problems. Appx. D (331B_00035 at ¶ 18). Kubas then stormed out of the meeting. Appx. D (331B_00035 at ¶ 18). Conway, Kubas' supervisor, had now addressed her timeclock issues on three straight days in three different manners.

On June 21, 2019, Chisholm reached out to Kubas, asking if he could call her later. Appx. D (331B_0013). At 9:45 a.m. Kubas responded, "I am at an appt [sic] for my daughter right now. As soon as I get to a computer, I will let you know the amount being deposited. And I will have them the bank by 2pm." Appx. D (331B_0013). Shortly after 10:00 a.m. Chisholm mentioned to Conway that Kubas was unavailable because she was taking her daughter to the doctor. Appx. D (331B_0021). Conway was aware, from having checked the Mindbody system, that Kubas had clocked herself in at 10:03 a.m. and informed Chisholm of the same. Appx. D (331B_0021 at ¶ 25). At 10:07 a.m. Kubas texted Chisholm, informing him of the amount of money she had in her possession to deposit and let him know that as soon as she left her daughter's appointment, she would get to the bank. Appx. D (331B_0038 at ¶¶ 29-30). Kubas remained clocked in until 12:14 p.m., when she texted Chisholm informing him that she was at the bank and trying to make the

deposit. Appx. D (331B_0038 at ¶¶ 31).   This constituted the fourth time in five days that a supervisor or management had to address Kubas' timekeeping deficiencies.

When questioned, Kubas offered no response other than to ask, "Am I being fired?" Appx. D (331B_0038 at ¶ 33).  Chisholm responded that she was only being fired if she could not explain why she had been clocked in over two (2) hours while not working. Appx. D (331B_0038 at ¶ 33). Assuming that Chisholm's conduct constituted terminating Kubas, it is abundantly clear that 331B had a legitimate, non-retaliatory reason for terminating Kubas' employment.

The Fourth Circuit has made clear that "If the employer makes [a showing of legitimate nonretaliatory purpose], the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Foster v. University of Maryland Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015)(internal quotation marks and citation omitted).   The *McDonnell Douglas* framework has "long demanded proof at the pretext stage that ***retaliation was a but-for cause*** of a challenged adverse employment action." *Foster*, 787 F.3d at 252. (Emphasis added).

Kubas has offered no evidence, either direct or indirect, that would prove but-for causation and that 331B's legitimate, nonretaliatory reason for terminating Kubas was pretextual.  "It is not enough for Plaintiff to allege pretext based on her own view of the truth; in order to rebut Defendant's non-discriminatory reason, Plaintiff's task is to proffer evidence showing that Defendant's stated reason was not the real reason for its actions." *Taylor v. Peninsula Regional Medical Center*, 3 F.Supp.3d 462, 473-474 (D.Md 2014) *citing Khoury v. Meserve,* 268 F.Supp.2d 600, 615 (D.Md.2003).  Because 331B had legitimate, non-retaliatory reasons for terminating Kubas and because those reasons were clearly not pretextual, any claim for retaliation under Title VII fails to survive summary judgment.

C.       **Kubas Cannot Establish a Prima Facie Case of Retaliation Because She
Cannot Prove She Engaged in a Protected Activity.**

In order to prove a *prima facie* case of retaliation under Title VII, the employee must prove

that she was engaged in a protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct.

2405, 2414 (2006).  "[T]o determine whether an employee has engaged in legitimate [protected]

opposition activity [the Fourth Circuit] employ[s] a balancing test" weighing "the purpose of the

Act to protect persons engaging reasonably in activities opposing discrimination, against

Congress' equally manifest desire not to tie the hands of employers in the objective selection and

control of personnel." *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259

(4th Cir. 1998).

The Fourth Circuit has examined whether false statements made by an employee can

amount to a "protected activity" giving rise to a recognizable retaliation claim, holding that.

"Engaging in knowing fabrications certainly does not amount to "engaging reasonably in activities

opposing ... discrimination"; and precluding employers from taking any action against employees

who have engaged in such deceit obviously would create enormous problems for employers who

would be forced to retain dishonest or disloyal employees. *Cf. Armstrong v. Index Journal Co.*,

647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause ... was not intended to immunize

insubordinate, disruptive, or nonproductive behavior at work. An employer must retain the power

to discipline and discharge disobedient employees." (Citations omitted)). *Villa v. Cavamezze Grill,

LLC*, 858 F.3d 896, 902-903 (4th Cir. 2017).  In light of the subjective-belief requirement, an

employee who complains of conduct that she knows did not actually occur is not "oppos[ing] any

practice made an unlawful employment practice by Title VII." *Id*. at 901-902 *citing Gilooly v.

Missouri Dep't of Health and Senior Servs.*, 421 F.3d 734, 741-45 (8th Cir. 2005) (Colloton, J.,

17

concurring in part and dissenting in part). The employee, in that instance, is, at most, *pretending* to oppose such conduct. *Id.* In *Villa*, an employee made knowingly false statements and accusations regarding sexual harassment by a coworker and was terminated based upon the employer's investigation and conclusion that her statements were patently false. *Id.* at 899. As a result of the investigation, the employee was terminated. In analyzing the issue raised in *Villa*, the Fourth Circuit held:

> "As we have explained, to prove that her termination violated Title VII, Villa had to show that her employer was motivated by a desire to retaliate against her for engaging in conduct that the opposition clause protected. When it fired Villa, Cava did not know Villa had engaged in any protected conduct. ***Because its investigation led it to conclude in good faith that Villa had simply made up her conversation with Bonilla, Cava's reason for terminating her was necessarily not retaliatory.***" *Id.* at 903. (Emphasis added)(internal citations removed).
> . . .
>
> *See Richey v. City of Independence,* 540 F.3d 779, 785 (8th Cir. 2013)("[W]hen an employer is presented with a 'he said, she said' set of facts involving two employees," and the employer disbelieves the employee and disciplines her, the employer is not liable so long as it "took the adverse action because of a good faith belief that the employee made false accusations."); *Total Sys. Servs., Inc.,* 221 F.3d 1171, 1176 (11th Cir. 2000)("When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true? When the resulting employer's investigation (not tied to the government) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions—that is, to accept one as true and to reject one as fictitious—at least, as long as the choice is an honest choice."). *Id.* at 903.

Here, Kubas' allegations of sexual harassment by Devin Conway stand *ipse dixit*. Kubas cannot be held to have been engaging in a protected activity because her allegations of sexual harassment lack even an iota of evidence to support them. Among her allegations, Kubas stated that while exercising in the training room, Conway would come up behind her and just rub against her and push against her backside. Appx. B (27:13-22 – 28:1-6). Despite this conduct, Kubas continued to train with Conway. Appx. B (29:19 – 30:5). Kubas admits that while Mr. Conway

was allegedly sexually harassing her in the training room, other people were present. Appx. B (31:14-19).  She identifies an individual named "Kirk" with an unknown last name, that allegedly witnessed these incidents (Appx. B (31:20 – 32:9), but not a single piece of admissible evidence has been produced to corroborate that "Kirk" would present the same testimony.  It was also alleged by Kubas that Conway sexually harassed her by calling her nicknames, such as "Hot Buns" during these training sessions. Appx. B (36:6-11).  Again, there is no evidence corroborating Kubas' claim, nor any individuals who have offered admissible evidence, testimony, or affidavits that they physically observed any of this alleged conduct.  Conway unequivocally denies the conduct.

Kubas also alleged that Conway had sexually harassed Breanna Moore ((Appx. A (¶ 16); Appx. B (167:14-21)), Bobbi Beers (Appx. A (¶¶ 17-18); Appx. B(167:22 – 168:1), and Riley Mayer (Appx. A (¶ 13)).  Bobbi Beers and Bree Moore each unequivocally denied Kubas' allegations in sworn affidavits. Appx. D (331B_0024 at ¶¶ 12-14) and Appx. D (331B_0027 at ¶ 10-14).  Riley Mayer has offered no evidence, testimony, or affidavits in this matter and there is no evidence to suggest that she corroborates Plaintiff's allegations.

331B, through Chisholm, conducted a legitimate and thorough investigation into the allegations brought forward by Kubas.  He interviewed Kubas and the two women that Conway allegedly harassed. Appx. D (331B_034 at ¶ 13).  When Chisholm interviewed Ms. Moore, she was "surprised at the allegations and assured Chisholm that Conway had never intimidated or harassed her or made her feel uncomfortable." Appx. D (331B_034 at ¶ 14).  When Chisholm interviewed Ms. Beers, she was "insulted by the insinuation that Conway had ever harassed her, or anyone for that matter." Appx. D (331B_034 at ¶ 15).  Ms. Beers then provided the context that, on the night that Kubas alleged Ms. Beers had confided in her, Kubas was extremely drunk and

ranted while insulting Conway. (331B_034 at ¶ 15).  Ms. Beers made clear to Chisholm that at no point during her conversation with Kubas did Ms. Beers indicate that Conway had harassed her nor did Kubas indicate Conway had harassed her. Appx. D (331B_034 at ¶ 15).  Chisholm went a step further and interviewed another female personal trainer with extensive interactions with Conway, Trista Chandler, regarding the allegations. (331B_0035 at ¶ 16).

Kubas made knowingly false allegations to Chisholm on behalf of 331B.  Her allegations do not contain one scintilla of evidentiary support which would tend to establish a *prima facie* case that she was engaged in a protected activity in the workplace. In fact, every piece of evidence elicited throughout discovery directly contradicts her allegations.  The Fourth Circuit, in *Villa* made clear "that the balancing of these interests does not justify protecting knowingly fabricated allegations should hardly come as a surprise." *Villa* 858 F.3d at 902.  Because Kubas was not engaging in a protected activity, her *prima facie* case for retaliation under Title VII fails.

## V.   CONCLUSION

331B is entitled to summary judgment.  The material facts presented are clear and lack genuine dispute.  Kubas' claims are entirely without corroboration and are, in fact, controverted by the entirety of the evidence garnered through discovery.  Kubas fails to establish a *prima facie* case of retaliation under Title VII because "the protected activity" on which she bases her claim tumbles like a house of cards in hurricane when confronted with the myriad evidence contradicting her baseless allegations.  She fails to establish a *prima facie* case because no evidence proves a causal connection to the adverse employment action.  Finally, even assuming Kubas has proven a *prima facie* case of retaliation, her claim still fails on summary judgment because 331B took adverse action against her employment for legitimate, non-discriminatory reason and she is unable

20

to meet the ultimate burden of proving that reason was merely pretextual.  The entry of summary judgment in favor of 331B on Kubas' sole claim is appropriate.