UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **KIMBERLY KUBAS** ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  1:20-cv-2456 (GLR) |
| ) | |
| **331B, LLC** ) | |
| **(D/B/A ROCKWELL FITNESS)** ) | |
| ) | |
|         Defendant**.** ) | |
| ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S INTERROGATORIES TO PLAINTIFF**

Pursuant to Fed. R. Civ. P. 33, Plaintiff Kimberly Kubas ("Plaintiff" or "Ms. Kubas") hereby submits the following Responses to Defendant 331 B, LLC d/b/a Rockwell Fitness's (hereinafter "Defendant" or "Rockwell") Interrogatories in this matter.

        II.        **INTERROGATORIES AND RESPONSES**

**INTERROGATORY NO. 1:** Identify all persons who provided information used in answering these Interrogatories and state in detail the information provided by each person identified.

**RESPONSE:** Plaintiff Kimberly Kubas provided information in response to Defendant's Interrogatories and is verifying these Interrogatory Responses based on her personal knowledge. Plaintiff's counsel is responsible for the wording, dictum, and objections.

**INTERROGATORY NO. 2:** Identify each person (other than a person intended to be called as an expert witness at trial) having discoverable information that tends to support a position that

you have taken or intend to take in this action and state in detail the information possessed by each person identified.

**RESPONSE:** Plaintiff objects to this Request for being vague and unintelligible by requiring Plaintiff to determine what exactly constitutes "a position" that Plaintiff has taken or will take in this action. This Request also seeks information that is protected under the attorney-work product doctrine. Moreover, even if the term were clearly defined, Plaintiff cannot predict what positions she intends to "take in this action" because she cannot predict what future facts or arguments Defendant may raise that will require her to take a position in response. Likewise, Plaintiff cannot predict what facts or arguments the Court may raise in future hearings or at trial. Without waiving those objections, the following individuals have knowledge about the underlying matter:

A. **Bobbi Beers** – Ms. Beers is a former personal trainer at Rockwell who disclosed to Plaintiff she was being harassed by Devin Conway.
B. **Kimberly Balageas**- Ms. Balageas is a friend of Plaintiff's who is familiar with the emotional pain and suffering Plaintiff experienced due to Defendant's unlawful behavior.
C. **Krishia Balageas** - Ms. Balageas is a friend of Plaintiff's who is familiar with the emotional pain and suffering Plaintiff experienced due to Defendant's unlawful behavior. She briefly worked for the gym under prior ownership and is the daughter of Kimberly Balageas.
D. **Don and Michele Behan** – Mr. and Mrs. Behan are Plaintiff's parents. They are aware of the pain and suffering Plaintiff experienced due to Defendant's unlawful behavior.
E. **Deana Bussey**- Ms. Bussey is a friend and neighbor of Plaintiff's who is familiar with the emotional pain and suffering Plaintiff experienced due to Defendant's unlawful behavior
F. **Brian Chisholm** – Mr. Chisolm is the co-owner of Rockwell Fitness. He is aware that Devin Conway sexually harassed Plaintiff and other women. Plaintiff engaged in protected activity when she complained about Conway's sexual harassment and retaliation to Mr. Chisolm. Mr. Chisolm, in conjunction with Mr. Saab, terminated Plaintiff based on her protected activity.
G. **Devin Conway** – Mr. Conway was a personal trainer with Rockwell Fitness who was promoted to General Manager in the spring of 2019. Mr. Conway sexually harassed Plaintiff and other women and retaliated against Plaintiff after she discussed his harassment with other victims and complained about his harassment to Rockwell's ownership.

Plaintiff is unable to take on a new job because she must stay at home to care for her young daughter, whose school has been largely online due to the covid crisis.

**INTERROGATORY NO. 11:** Identify all attempts to find work following employment with the Defendant until present, specifically stating the place of application, the date of application, the position applied for, whether the Plaintiff interviewed for the position, and any reason given to the Plaintiff for not being hired.

    **RESPONSE:**  After Plaintiff was terminated and before the covid pandemic struck, Plaintiff applied for positions with Rivera's Mexican Café, Macy's (the Westfield Annapolis Mall location), Ulta Beauty (the Pasadena Crossroads location), and Nordstrom (the Westfield Annapolis Mall location).  Plaintiff applied to additional positions and will supplement the record once she receives records of her job search from the Maryland Division of Unemployment Insurance.

**INTERROGATORY NO. 12:** Do you contend that you were terminated for any reason other than the reasons articulated to you at the time that you were termination? Please set forth each additional reason for which you believe you were terminated.

    **RESPONSE:**  Defendant has alleged that Plaintiff was terminated for "stealing time" and alternatively that she tendered her resignation.  Plaintiff contends that she was terminated for complaining to Defendant, through Sid Saab and Brian Chisolm, that Devin Conway (Defendant's General Manager) was sexually harassing her and other female employees of Defendant.

8

**INTERROGATORY NO. 14:** Please describe in detail each act of retaliation that you allege the Defendant engaged in against you and for each act that you allege, please set forth the following:

(a) the nature of each act of retaliation;

(b) the date of each act of retaliation;

(c) the name of the person whose actions were retaliatory; and

(d) the adverse employment action you suffered as a result.

**RESPONSE:** Plaintiff experienced retaliation from Defendant's General Manager, Devin Conway, and from Defendant's owners, Sid Saab and Brian Chisolm. On the night of May 11, 2019 Defendant hosted a benefit for a former employee. At this fundraiser, two of Plaintiff's coworkers, Bobbi Beers and Bree Moore, disclosed to her that they had been sexually harassed by Defendant's General Manager, Devin Conway. Ms. Beers in particular was concerned that if she complained about Mr. Conway's behavior that he would retaliate against her because he was her manager and was tasked with assigning her personal training clients. Ms. Kubas talked with Ms. Beers at length about the sexual harassment and shared with Ms. Beers that she too was sexually harassed by Conway before he became the gym's manager. Ms. Kubas was supportive of Ms. Beers and believed they had a productive conversation.

The following Monday, May 13, Plaintiff went back to work for the first time following the benefit and noticed that Conway was standoffish and hostile towards her, which made her concerned that someone had related to him the details of her discussions with Ms. Beers and Ms. Moore at the event that took place two nights prior. She reached out to Mr. Conway over text and asked him to speak with her because she was concerned for her job. Later that day, Ms.

Kubas and Mr. Conway met in Mr. Conway's office. Mr. Conway admitted that he was told about Ms. Kubas's conversation with Ms. Beers. He was livid and told Ms. Kubas that he did not want to hear another word about her allegations and that he could not have her complaint come out against him. He told Ms. Kubas that she needed to sweep everything under the rug. Conway then screamed at Ms. Kubas that if he heard that she was talking to anyone else about the matter, there would be consequences for her. Finally, he called Bree Moore into the office and repeated the same instructions to her.

After he learned about her discussions with Beers and Moore, Conway's attitude and demeanor towards Ms. Kubas changed dramatically and became negative in retaliation for her truthful comments about his sexually harassing behavior towards her. For example, Conway started undermining and belittling Ms. Kubas during meetings, he would purposefully ignore her when Ms. Kubas would say good morning to him, and go out of his way to avoid interacting with her. For the sake of her own safety, the safety of the other female employees of RWF, and the health of the business, Ms. Kubas decided to report Mr. Conway's behavior to Chisolm and Saab.

On or around June 1, 2019 Ms. Kubas spoke with Mr. Chisolm by phone. During their conversation Ms. Kubas explained that Conway had sexually harassed her for years and twice groped her in her office. Ms. Kubas further told Mr. Chisolm about her conversation with Ms. Beers regarding Ms. Beers' concerns with Mr. Conway. Ms. Kubas made it clear that she would like to remain anonymous, and that she simply wanted Conway to leave her alone and allow her to do her job without issue. Chisolm assured Ms. Kubas that he and Mr. Saab would investigate the matter and take her allegations seriously and that the complaint would remain confidential. During this conversation, Chisolm stated to Plaintiff something to the effect of "if it makes you

feel any better, I patronized a massage parlor and now I am worried because they have been busted, my name is at stake because visited this business the day before" regarding a business called Evergreen Massage.  An Evergreen employee had recently been arrested for prostitution.

In or around early June of 2019, Mr. Conway called Ms. Kubas into his office and started yelling at her about an error she made on her time clock, which was normally a non-issue for her and others who had similar issues with timekeeping.  On June 18, 2019, Conway berated Ms. Kubas again for her time clock, telling her that she thought "she was better than everyone else."  The next day, he stated that he had spoken with other female employees (Ms. Moore and another employee) who told him that his behavior toward them was perfectly normal.  Around this time, Chisolm admitted to Ms. Kubas that he had spoken with Conway about her allegations and disclosed that she was the source of the complaint.  Ms. Kubas was afraid that Conway's retaliatory behavior would continue.  She tried to discuss her concerns in a June 19, 2019 meeting with Mr. Chisolm, Latoya Williams, and Conway.  In the meeting Ms. Kubas explained that she felt retaliated against for making a complaint against Conway.  Chisolm did not appear at all concerned.  This upset Ms. Kubas and she politely asked to leave the meeting because she did not wish to cry in front of her employer.

That night, Ms. Kubas emailed Chisolm and Saab to formally document the mistreatment she was being subjected to by Mr. Conway and to request to work from home for the next two weeks because she was fearful of encountering Conway.  Chisolm wrote back to say that he and Saab would investigate the retaliation allegations and that it was perfectly fine for Ms. Kubas to work from home.  Ms. Kubas responded on June 20, 2019 stating "Thank you for your responses . . . . I simply want to be treated with common courtesy, and basic respect."

The following day, Ms. Kubas received a text from Mr. Chisolm urgently asking her to come into the office that day to handle some deposits for the business to cover expenses. At that time, Ms. Kubas was at a doctor's appointment with her young daughter and was planning to return home and work from there after the conclusion of the doctor's appointment, as she and Chisolm had agreed. Ms. Kubas responded at 9:45 am that she was at a doctor's appointment but would work on getting the deposits done afterwards. Because Chisolm indicated that the deposits were urgent, Plaintiff logged into the gym's software system at the doctor's office to total the outstanding checks. Because Conway and Chisolm had recently berated her for not clocking in, Plaintiff also clocked in through Rockwell's timekeeping software. Plaintiff then sent the check totals to Mr. Chisolm via text. After the appointment finished, Ms. Kubas made the five-minute drive home without logging out, thinking that she could later adjust her time for the drive home and the conclusion of her child's doctor's appointment. Adjusting her time in this manner was consistent with what she and the other employees at Rockwell did throughout the time that Ms. Kubas had been employed at Rockwell. Ms. Kubas then proceeded to work on the deposits for Rockwell at her home. After Ms. Kubas finished working on the deposits, she tried to log out of the timekeeping software but was unable to do so because, unbeknownst to Plaintiff, her access was disabled. Ms. Kubas then drove to the gym and went to her office to finish preparing all the deposits. Additional checks had arrived since Ms. Kubas had been to the office and she wanted to make sure to deposit all available funds because Mr. Chisolm seemed concerned about the gym's finances. Ms. Kubas was unable to log into the software at that time, so she walked to the bank and manually made the deposits that she prepared at home. At this time, Ms. Kubas believed it to be some type of IT error and was unaware that Mr. Chisolm had

terminated her access to Rockwell's software. Ms. Kubas texted Mr. Chisolm to explain that she was locked out of the software.

When Ms. Kubas returned from the bank, Mr. Chisolm was waiting for her in her office and told her that a gym member had approached him earlier that day because he had heard rumors about Conway sexually harassing women. Mr. Chisolm looked angry and said that Ms. Kubas and LaToya Williams were a cancer on his business and starting to make him look bad and that he could not have that. Mr. Chisolm further stated that Defendant had conducted an investigation and found Mr. Conway to be a "stand-up guy." He then told Ms. Kubas to leave immediately, stating that he would pay her for two weeks. In sum, Ms. Kubas was terminated for her protected activity and ordered to immediately leave the premises.

After her termination Ms. Kubas was not paid as promised by Mr. Chisolm. When Plaintiff reached out to Chisolm on July 5, 2019 about her final paycheck, he explained that Mr. Conway had not entered any hours for Plaintiff's final week of work. This too was an act of retaliation. Chisolm did not provide Ms. Kubas with her final paycheck until after she filed an Initial Charge of Discrimination with the EEOC. Defendant then further retaliated against Ms. Kubas by opposing her application for unemployment in July 2019 by falsely claiming that she was fired for "gross misconduct" for working from home without permission. This caused Ms. Kubas to be dragged into the appeals process which resulted in an unnecessary delay in her receipt of unemployment benefits.

Date: May 7, 2021                                          Respectfully Submitted,

                                                              /s/ *Sundeep Hora*   
                                                           Sundeep Hora (Bar. No. 28208)
                                                           ALDERMAN, DEVORSETZ & HORA
                                                           PLLC

                        1025 Connecticut Ave., NW, Suite 615
                        Washington, D.C. 20036
                        Tel. 202.969.8220
                        Fax 202.969.8224
                        E-mail: shora@adhlawfirm.com

                        **COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Responses to Interrogatories was served upon counsel for the Defendant by email, on this date, May 7, 2021, at the following:

>T. Lee Beeman, Jr.,
>Buckel, Levasseur,
>Pillai & Beeman, LLC
>206 Washington, Street
>Cumberland, Maryland 21502
>Tel: (301) 759-3700
>Email: lbeeman@blpblaw.com
>
>*Counsel for Defendant*

                                        /s/
                                        Savanna L. Shuntich

## VERIFICATION OF KIMBERLY KUBAS

I verify, under penalty of perjury, that the foregoing Plaintiff's Responses to Defendant's Interrogatories to Plaintiff are true and correct.

_____  _____5/7/21_____
Kimberly Kubas                                               Date