# ATTACHMENT 1

## Redline Amended Complaint

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | ) | |
| **500 Benforest Drive** | ) | |
| **Severna Park, MD 21146** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:20-cv-2456 |
| | ) | |
| **331B, LLC** | ) | |
| **(D/B/A ROCKWELL FITNESS)** | ) | **JURY TRIAL DEMANDED** |
| **2120 Bell Tower Drive** | ) | |
| **Crownsville, MD 21032** | ) | |
| | ) | |
| Defendant**.** | ) | |
| | ) | |

## <span style="color:red">AMENDED</span> <u>COMPLAINT</u>

COMES NOW Kimberly Kubas ("Plaintiff") and brings this action against Defendant 331B, LLC d/b/a Rockwell Fitness for violating Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e, *et seq.* by terminating her, after thirteen years of service, in retaliation for complaining about sexual harassment by the gym's General Manager, Devin Conway.

### I.  The Parties

1.    Plaintiff Kimberly Kubas (hereinafter, "Ms. Kubas") is an adult, female resident of Severna Park, Maryland.

2.  Defendant 331B, LLC is a Maryland limited liability company.  Its corporate address is 2120 Bell Tower Drive, Crownsville, MD 21032.  331B, LLC is co-owned by Maryland State Delegate Brian A. Chisholm ("Chisholm") and former Delegate Sid A. Saab ("Saab").

**Deleted:** s

**Deleted:** Sid A. Saab ("Saab") and

1

According to the business's registration, 331B, LLC's registered agent is Jason C. Buckel, 206 Washington Street, Cumberland, MD 21502.

3.   "Rockwell Fitness" is a trade name registered to Defendant 331B, LLC.  Rockwell Fitness is a full-service gym, with approximately 33 employees, located at 551 Baltimore Annapolis Blvd D, Severna park, MD 21146.  Prior to her unlawful termination, Ms. Kubas worked at Rockwell Fitness (hereinafter, "RWF" or "gym") as a part-time administrative assistant.

## II.  Jurisdiction and Venue

4.   This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331.

5.   Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391 because Plaintiff worked at RWF in Anne Arundel County and the actions and omission giving rise to the claims asserted herein occurred in this District.

## III.  Exhaustion of Administrative Remedies

6.   Plaintiff has exhausted her administrative remedies prior to filing this lawsuit.

7.   The EEOC issued Plaintiff a Notice of Right to Sue on June 2, 2020.  This lawsuit is being filed within 90 days of Plaintiff's receipt of this notice as required by 29 CFR § 1614.407.

## IV.  Statement of Facts

8.   Ms. Kubas started working for RWF in 2006 in the Child Care Department under its prior owners.  She later switched into an Administrative Assistant position, where she handled bookkeeping and other similar tasks.

9.   In or around the fall of 2016, Ms. Kubas joined a weekly small group personal training session taught by Devin Conway, who was, at that time, the Personal Training Director

2

for RWF.  Though the class initially had six attendees, four individuals dropped out and the class

soon consisted of only Ms. Kubas and the husband of another employee.  During these personal

training sessions Ms. Kubas was repeatedly sexually harassed by Mr. Conway.  He would call

her "hot buns," ask her to bend over so he could enjoy the view of her posterior, and simulate

masturbation using the gym's exercise ropes.  While Conway's behavior made Ms. Kubas

uncomfortable, for a time, they had a workplace friendship and Ms. Kubas would interact with

him socially outside of the office to some degree.

10. Mr. Conway's behavior escalated over the next two years.  At times he would

deliberately collide with Ms. Kubas and rub his body against her.  Twice he closed the door to

Ms. Kubas's office and proceeded to grope her breasts.  Ms. Kubas asked him to stop in both

instances.  Conway's behavior made Ms. Kubas nervous and uncomfortable, but she feared

reporting him.

11. In or around August of 2017, after a night of trivia at a local bar, Ms. Kubas and Mr.

Conway had a consensual sexual encounter.  Ms. Kubas disclosed the encounter to Mr. Chisholm

when making a complaint to him that Mr. Conway had sexually harassed her and other female

employees of RWF.

12. In September of 2018 the gym was purchased by Brian Chisholm and Said Saab,

through their entity, Defendant 331B, LLC.  At that time, Ms. Kubas was employed as an

Administrative Assistant, working approximately ten (10) hours a week at a rate of fourteen

dollars ($14) an hour.

13. In November 2018, at a Thanksgiving event at RWF, Ms. Kubas was approached by

RWF employee Riley Mayer.  Ms. Mayer confided in Ms. Kubas that Mr. Conway was making

her uncomfortable in the workplace by repeatedly grabbing her posterior and making sexualized

3

**Deleted:** locked

**Deleted:** At this point, Ms. Kubas was unaware that Mr. Conway was treating other female employees in the same manner.…

**Deleted:** has never suggested that this was anything but consensual and as will be discussed below, she

**Deleted:** Chisolm

**Deleted:** Chisolm

comments about the same.  Ms. Mayer's complaints regarding Conway sounded eerily familiar

to his harassment of Ms. Kubas.  Ms. Mayer quit shortly thereafter.

14. In April of 2019 Mr. Conway became the gym's General Manager and Ms. Kubas's

supervisor.  At this point, Conway stopped teaching Ms. Kubas's group training session and

ceased harassing Ms. Kubas.

15. On May 11, 2019 Ms. Kubas attended a benefit at RWF for an employee with an

autoimmune disease.  There was a substantial amount of alcohol consumed during the event by

staff, in addition to having access to a bar, Chisolm was passing out vodka shots to employees in

| Deleted: , in part, because |
| Deleted: Mr. |

his office.  That evening, Ms. Kubas spoke with a RWF trainer named Bobbi Beers in the

women's restroom.  Ms. Beers disclosed that Conway was romantically interested in her and he

was making her feel uncomfortable at work.  Ms. Beers mentioned that Conway had showed up

at her house unannounced and was flirting with her inappropriately in the workplace.  While Ms.

Beers insinuated that she was interested in Conway, she also told Ms. Kubas she doubted Mr.

Conway's character and intentions.  Ms. Beers stated she was concerned about "rejecting"

Conway due to the fact that he was tasked with delegating clients to her and could easily affect

her income.  In an act of solidarity, Ms. Kubas shared her own experiences with Conway,

specifically mentioning the two instances of workplace groping and their past sexual encounter

(of which Ms. Beers was already aware).

16. That same evening, another trainer named Breanna Moore, who had recently been

promoted to Assistant Manager of RWF, also talked with Ms. Kubas and conveyed similar

experiences with Mr. Conway.

17. After the benefit, Ms. Beers invited Ms. Kubas and a few others out for drinks at the

Taphouse in Severna Park.  Ms. Beers drove herself and Ms. Kubas to the bar and they spoke

more about how Ms. Beers could handle Conway's advances without jeopardizing her job.  Later

that evening, Ms. Beers came to Ms. Kubas's home, where they continued their discussion.  Ms.

Kubas had no reason to doubt the authenticity of Ms. Beers statements or her concerns regarding

Conway.

18. For reasons unknown to Ms. Kubas, Ms. Beers chose to disclose her communications

with Ms. Kubas regarding Mr. Conway to him at some point prior to Ms. Kubas going to work

on May 13, 2019.  When Ms. Kubas arrived at work that morning, she found Conway standoffish

and hostile towards her which made her concerned that someone had related to him the details of

her candid conversations with Ms. Beers and Ms. Moore at the event that took place two nights

prior.  She reached out to Mr. Conway over text and asked him to speak with her because she

was concerned for her job.

19. Later that day, Ms. Kubas and Mr. Conway met in Mr. Conway's office.  Mr.

Conway admitted that he was told about Ms. Kubas's conversation with Ms. Beers.  He was livid

and told Ms. Kubas that he did not want to hear another word about her allegations and that he

could not have her complaint come out against him.  He told Ms. Kubas that they needed to

"sweep everything under the rug."  Conway then screamed at Ms. Kubas that if he heard that she

was talking to anyone else about the matter, there would be consequences for her.

20. Conway's attitude and demeanor towards Ms. Kubas became very negative and

changed dramatically in retaliation for her truthful comments about his sexually harassing

behavior towards her.  For example, Conway started undermining and belittling Ms. Kubas

during meetings, he would purposefully ignore her when Ms. Kubas would say good morning to

him, and go out of his way to avoid interacting with her.  Mr. Conway's attitude also appeared to

**Deleted:** Shortly thereafter,

change towards Ms. Williams, who he believed supported Ms. Kubas.  Ms. Williams' hours were drastically cut and she resigned her position from the gym shortly thereafter.

21. For the sake of her own safety, the safety of the other female employees of RWF, and the health of the business, Ms. Kubas decided to report Mr. Conway's behavior to RWF's owners, Chisholm and Saab.  As a thirteen-year employee of the gym, Ms. Kubas was invested in its continued success and believed that Conway posed a serious threat to the business.

22. On or around June 1, 2019, Ms. Kubas spoke with one of the owners, Brian Chisholm, by phone.  During their conversation Ms. Kubas was forthright with Mr. Chisholm explaining that while she once had a consensual encounter with Conway approximately two years prior, that he had sexually harassed her for years including groping her in her office.  Ms. Kubas further told Mr. Chisholm about her conversation with Ms. Beers regarding Ms. Beers' concerns with Mr. Conway.  Ms. Kubas made it clear that she would like to remain anonymous, and that she simply wanted Conway to leave her alone and allow her to do her job without issue.  Chisholm assured Ms. Kubas that he and Mr. Saab would investigate the matter and take her allegations seriously and that the complaint would remain confidential.

23. In or around early June of 2019, Mr. Conway called Ms. Kubas into his office and started yelling at her about an error she made on her time clock, which was normally a non-issue.  Many of the other staff regularly committed time-clock errors and there was an entire Slack forum (a workplace communication platform) called "time clock" in which employees could send in their time keeping errors/unrecorded time to management.  On June 18, 2019, Conway berated Complainant again for her time clock, telling her that she thought "she was better than everyone else."  The next day, he stated that he had spoken with other female employees (Ms. Moore and another employee) who told him that his behavior toward them was perfectly normal.

6

**Deleted:** Chisolm

**Deleted:** Chisolm

**Deleted:** Chisolm

**Deleted:** commit such

**Deleted:** or is currently

At some point during this period, Chisholm admitted to Ms. Kubas that he had spoken with

Conway about her allegations and disclosed that she was the source of the complaint.

     24. Ms. Kubas was afraid that Conway's retaliatory behavior would continue.  She tried

to discuss her concerns in a June 19, 2019 meeting with Mr. Chisholm, Latoya Williams (another

gym employee), and Conway.  In the meeting Ms. Kubas explained that she felt retaliated against

for making a complaint against Conway.  Chisholm did not appear at all concerned.  This upset

Ms. Kubas and she politely asked to leave the meeting because she did not wish to cry in front of

her employer.

     25. That night, Ms. Kubas emailed Chisholm and Saab to formally document the

mistreatment she was being subjected to by Mr. Conway.  She hoped that they would take her

allegations more seriously if she sent a written complaint.  In her email, she wrote:

> I am writing to formally document the recent weeks series of
> events and what has led to where I am at the present moment.
>
> I want to start by saying, I truly am invested in Rockwell's
> profitability and success as a gym. Having been with the company
> for 13 years, I have formed great relationships with members as
> well as staff, that keeps me coming back each day with a smile. It
> was a pleasure to meet you two, and I can see both of you have a
> financial, as well as emotional investment in the gym as well.
>
> This all started May 11, 2019, after the benefit for Pete. Bobbi
> Beers asked me if I could give her any advice on how to handle
> Devin. She told me he has been acting aggressive (sexually)
> towards her, and she does not trust him. She stated she was afraid
> of losing clients if she stood up to him.  I told her that she needs to
> trust her instinct, and that I have personally witnessed him doing
> the same to others, including myself.
>
> That Monday, May 13, Devin did not acknowledge me at all. I said
> hello, he ignored me. I asked to meet with him, at which point he
> demanded that I keep it all a secret, it never happened, and to
> sweep it under the rug.  In addition, he berated me for coming

---

**Deleted:** Chisolm

**Deleted:** Chisolm

**Deleted:** Chisolm

**Deleted:** Chisolm

clean to Bobbi. I felt badly for her, and my sole intention was to let her know she is not trapped with this situation.

Since then things have gotten worse. I did reach out to you, Brian. And I thought and thought about it, debating if it was the right thing to do. I was nervous and scared, but I did.

There are at least 2 other women who have approached me with similar stories, and if need be I can contact them and disclose their identities, if they wish.

I have felt highly uncomfortable around Devin since this came to light, due to the fact he is singling me out.  It is without a doubt related to my bringing his sexual harassment to light.  He berated me about my error in clocking in. There are plenty of times staff forgets to clock in, and he has never had an issue with anybody else previously.

I had not clocked in properly, due to the schedule of our software conference calls, and providing care for my daughter during those times.  He called me in his, office on June 18, and accused me of thinking I'm better than everyone, and not clocking in just to get him upset.

He also admitted talking to other staff about this situation (Bree and Sarah). That is what I felt the most embarrassed and upset.  I have kept this whole situation private, between you (Brian) and Devin.  I have gone out of my way to make sure this situation is protected and anonymous, and I feel let down.

I have been feeling dread and anxiety anytime I have to communicate with Devin, and it is taking a toll on me.

Due to the current situation, I am requested the ability to work from home for the next two weeks, until I figure out how to proceed.

I look forward to hearing from you.

Take care,

26. Chisholm wrote back to say that he and the gym's co-owner, Saab, would investigate

the retaliation allegations and that it was perfectly fine for Ms. Kubas to work from home.  Ms.

Kubas responded on June 20, 2019 stating "Thank you for your responses . . . . I simply want to

8

**Deleted:** Chisolm

**Deleted:**

be treated with common courtesy, and basic respect."  Ms. Kubas also indicated that she had everything she needed to continue working from home.

27. The following day, on June 21, 2019, around 6:00 a.m., a Rockwell Fitness employee informed Conway that a gym member had approached him asking about Ms. Kubas's sexual harassment claims against Conway.  The employee was under the impression that the member had heard the rumor from Billy Williams, Latoya Butler-Williams's husband.  Conway called Chisholm around 7:00 a.m. to inform him about the rumor.  At 8:17 a.m., Chisholm sent a text message to Plaintiff directing her to go in first thing this in the morning and make any deposits we have, explaining, that he needed to know if he and Saab needed to deposit more money to cover expenses.  At 9:45 a.m., Ms. Kubas texted Chisholm informing him that she was at a doctor's appointment for her daughter, that she would tell Chisholm the deposit amount as soon as she could get to a computer, and that she would have the deposit at the bank by 2:00 p.m. Although Ms. Kubas initially intended to work on the deposits when she got home, she decided to log in at the doctor's appointment to give Chisholm the deposit amount, due to the sense of urgency conveyed in his request.

28. Since she was performing work at the doctor's office and had been instructed to clock in when she started working, Plaintiff clocked in remotely at 10:03 a.m.  At 10:07 a.m., Plaintiff texted Chisholm informing him the total amount to be deposited and promising to complete the deposit immediately after the doctor's appointment.  After the appointment finished, Ms. Kubas made the five-minute drive home and logged into the time keeping software indicating that she was working.  She then proceeded to work on the deposits for RWF which she had at her home. She also began working on the gym membership reports Chisholm had requested the day prior. She then realized that there were two additional deposits in the safe at the Gym that she needed

9

**Deleted:** Ms. Kubas received a text from Mr. Chisolm urgently asking her to come into the office that day to handle some deposits for the business to cover expenses.

**Deleted:** At that time, Ms. Kubas was at a doctor's appointment with her young daughter and was planning to return home and work from there after the conclusion of the doctor's appointment, as she had been given permission to do so by Chisolm.

**Deleted:** Ms. Kubas responded at 9:45 am that she was at a doctor's appointment but would work on getting the deposits done afterwards.

**Deleted:** Ms. Kubas then drove to the gym, which is also a five-minute trip, and went to her office to finish preparing all of the deposits.  Some additional checks had arrived while Ms. Kubas was out of the office and she wanted to deposit all available funds because Mr. Chisolm had indicated to her that the matter was urgent.

to retrieve before going to the bank. At some point while she was working, Plaintiff noticed that her software "froze." Believing that it was a problem with her home computer, she figured that she might as well go to the office at that point since her computer at home was not working, there were additional deposits at work she could include and because of the urgent need for her to deposit the money that day, per Mr. Chisholm's instructions.

> **Deleted:** Ms. Kubas was unable to log into the software at that time, so she walked to the bank and manually made the deposits that she prepared at home. At this time, Ms. Kubas believed it to be some type of IT error and was unaware that Mr. Chisolm had terminated her access to RWF's software. Ms. Kubas texted Mr. Chisolm to explain that she was locked out of the software.

29. Unbeknownst to Ms. Kubas at the time, the reason for her computer failure was that Chisholm had disabled her access to Rockwell Fitness's system. Sometime after 10:00 a.m., Chisholm notified Conway that Ms. Kubas took her daughter to the doctor and would be making a bank deposit later that afternoon. Conway informed Chisholm that Kubas had clocked in at 10:03 a.m. Sometime after receiving Kubas's 10:07 a.m. text message about the amount to be deposited, Chisholm decided to disable her access. Unaware that her access had been disabled, Ms. Kubas went to Rockwell Fitness and attempted to log in from there but could not access the software. Ms. Kubas then texted Chisholm at 12:14 p.m. informing him that she was blocked from accessing the information she needed and asking whether her permission level had been changed. Plaintiff then took the deposits she was able to complete to the bank. Chisholm texted Ms. Kubas at 12:27 p.m. confirming that Plaintiff's permission level had been changed and inquiring of her whereabouts. Around the same time, Chisholm texted Saab, "I am firing [Ms. Kubas] right now." Chisholm asked Plaintiff to come see him at the Gym. When Complainant returned from the bank, Mr. Chisholm was waiting for her in her office. He asked her about her whereabouts and activities that morning and then asked her if she knew about a rumor that was circulating that Conway was sexually harassing women. Ms. Kubas told Chisholm that she was trying to prepare the deposits at her daughter's doctor's appointment that morning and that she had no idea about the rumor. Mr. Chisholm looked angry and said that Ms. Kubas and LaToya

> **Deleted:** Chisolm

> **Deleted:** and told her that a gym member had approached him earlier that day because he had

> **Deleted:** heard rumors about

> **Deleted:** Chisolm

10

Butler-Williams were "a cancer" to his business and starting to make him look bad and that he could not have that.  Ms. Butler-Williams was a Rockwell employee and the spouse of Billy Williams, who is the same gym member Chisholm allegedly heard was the source of the rumor that Conway was being fired due to Ms. Kubas's accusations of sexual harassment.  Mr. Chisholm further stated that Respondent had conducted an investigation and found Mr. Conway to be a "stand-up guy."  He then told Ms. Kubas to leave immediately, stating that he would pay her for two weeks.

30. After her termination Ms. Kubas was not paid as promised by Mr. Chisholm.  Ms. Kubas was only paid *after* she filed an Initial Charge of Discrimination with the EEOC.  Mr. Chisholm explained that Mr. Conway failed to include any hours for Ms. Kubas for her last paycheck.  Upon information and belief, this was a further act of retaliation by Mr. Conway. Defendant continued to retaliate against Ms. Kubas by opposing her application for unemployment in July 2019 by falsely claiming that she was fired for "gross misconduct" for working from home without permission.  This caused Ms. Kubas to be dragged into the appeals process which resulted in an unnecessary delay in her receipt of unemployment benefits.

## COUNT I:
## Retaliation

31. Plaintiff incorporates the paragraphs above as if specifically set forth herein.

32. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because[s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

33. Plaintiff engaged in protected activity by, *inter alia*, complaining to her employer, specifically co-owner Brian Chisholm about Mr. Conway's sexual harassment of her and other employees of RWF.  Plaintiff further engaged in protected activity when she complained about

11

**Deleted:** on

**Deleted:** of

**Deleted:** customer

**Deleted:** Chisolm

**Deleted:** stating that

**Deleted:** had been

**Deleted:** accused of

**Deleted:** Chisolm

**Deleted:** In sum, Ms. Kubas was terminated for her protected activity and ordered to immediately leave the premises.

**Deleted:** Chisolm

**Deleted:** Chisolm

**Deleted:** an

**Deleted:** then further retaliated

**Deleted:** ¶
¶

Mr. Conway's retaliatory conduct towards her after he learned that Ms. Kubas had complained about his harassment.

Deleted: she

Deleted: misconduct

34. Defendant took a materially adverse action against Ms. Kubas by unlawfully terminating her.

35. Defendant's decision to terminate Ms. Kubas, who was a long tenured employee at RWF, was based on Defendant's retaliatory animus for Ms. Kubas's protected activity.

36. As a direct result of Defendants' unlawful actions, including terminating Ms. Kubas for engaging in protected activity, Plaintiff felt degraded, humiliated, and embarrassed.   She also felt extreme emotions including stress, anxiety and depression over an extended period of time. The results on her physical health, family life, and emotional well-being were significant. Additionally, as a direct result of Defendants' unlawful actions, Plaintiff has suffered economic harm in the form of lost wages and benefits.

Deleted: ¶

### V.  Relief Requested

Deleted: ¶
¶

WHEREFORE, Plaintiff prays that the Court award Plaintiff Kimberly Kubas:

a.  back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct;

b.  compensatory damages against Defendants in an amount to be determined by the jury;

c.  costs, disbursements, prejudgment interest, post-judgement interest, reasonable attorney's fees allowed under actions brought pursuant to Title VII;

Deleted: expert witness fees and

d.  punitive damages; and

e.  such further relief as is deemed just and proper.

12

**VII.  Jury Demand**

Plaintiff demands a trial by jury to hear this cause.

Date: February 27, 2023                    Respectfully Submitted,

**Deleted:** August 25, 2020

_____/s/ Sundeep Hora_____
Sundeep Hora (M.D. Bar. No. 28208)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW, Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

COUNSEL FOR PLAINTIFF

13

# ATTACHMENT 2

## Plaintiff's Exhibit List with Defendant's Objections and Plaintiff's Response

*Kubas v. 331B*, 1:20-cv-2456 (MJM)
**Plaintiff's Exhibit List**
**with Defendant's Objections and Plaintiff's Response**
Updated 2-26-23

**Will Use**

| Exhibit No | Bates | Date (s) | Description | Defendant's Objection/Pl. Response (bold) |
|---|---|---|---|---|
| 1 | 331B 31 | 5/13/19 | Text Exch Kubas, Conway | Objection – Relevance **Pl. Resp.: Relevance will be demonstrated at trial.** |
| 2 | 331B 45 | 6/1/29-6/21/19 | Kubas Time Clock June 2019 | None |
| 3 | 331B 46-47 | Various | Text Exch Kubas, Chisholm | None |
| 4 | 331B 61 | 6/4/19 | Email L. Butler-Williams to Chisholm | Objection – Hearsay **Pl. Resp.: Not being offered for the truth of the matters asserted; Rule 803(3) (motive, intent)** |
| 5 | 331 B 64-120 | | 331B LLC 2018 Tax return | Objection – Relevance **Pl. Resp.: Relevance will be demonstrated at trial.** |
| 6 | 331 B 121-177 | | 331B LLC 2019 tax return | Objection – Relevance **Pl. Resp.: Relevance will be demonstrated at trial.** |
| 7 | 331B 194-198 | 6/19/19-6/21/19 | Email Exch Kubas, Chisholm, Saab | None |
| 8 | 331 B 1267 | 6/21/19 | Text Chisholm to Saab | None |
| 9 | 331 B 1291-1292 | 6/17/19-6/21/19 | Text Exch Chisholm and Kubas | None |
| 10 | 331 B 1337 | 6/2/19 | Text Chisholm to Saab | Objection – Relevance **Pl. Resp.: Relevance will be demonstrated at trial.** |

| 11 | PL 10 | 6/17/19-6/18/19 | Text Exch Kubas, Conway | Objection to handwritten notations. Relevance.<br>**Pl. Resp.: Relevance will be demonstrated at trial. Plaintiff can authenticate handwritten notations.** |

**May Use**

| Exhibit No | Bates | Date (s) | Description | Defendant's Objection |
|---|---|---|---|---|
| 12 | 331B 18-22 | 12/20/19 | Conway Affidavit (for impeachment) | None |
| 13 | 331B 23-25 | No Date | Beers Affidavit (unsigned) (for impeachment) | None |
| 14 | 331B 26-28 | 12/23/19 | Moore Affidavit (for impeachment) | None |
| 15 | 331B 29-30 | 12/3/19 | C. Conway Affidavit (for impeachment) | None |
| 16 | 331B 643-652 | 12/11/19 | Chisholm Affidavit with attached emails(for impeachment) | None |
| 17 | 331 B 48-49 | Various | Text Exch Kubas, Chisholm | None |
| 18 | 331 B 50 | Various | Text Exch Chisholm, B. Williams | Objection to Hearsay (Billy Williams)<br>**Pl. Resp.- Not being offered for the truth of the matters asserted; Rule 803(3) (motive, intent of Chisholm) (mental feeling of Williams); 807** |
| 19 | 331B 206-222 | 4/18/19-2/15/21 | "hourcorrection" slack forum | None |
| 20 | 331B 245-0273 | 9/9/18-9/8/19 | Butler-Williams Pay Stubs | None |
| 21 | Summary | 9/9/18-9/8/19 | Butler-Williams Pay Stubs Summary (331B 245-0273) | None |
| 22 | 331 B 284-290 | 7/24/19- | Text Exch Chisholm, Chandler (subj to redactions) | Objection – Hearsay (Trista Chandler) / Relevance |

2

| | | | | Pl. Resp.- Not being offered for the truth of the matters asserted; Rule 803(3) (motive, intent); ; 807; Relevance will be demonstrated at trial. |
|---|---|---|---|---|
| 23 | 331B 291-299 | 7/24/19-9/9/19 | Text Exch Chisholm, Mayer (subj to redactions) | Objection – Hearsay (R. Mayer) / Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; Rule 803(3) (motive, intent); 807; Relevance will be demonstrated at trial.** |
| 24 | 331 B 309-310 | | Text Exch Chisholm, Conway (need better version with date) | Objection – Hearsay (Conway) / Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; Rule 803(3) (motive, intent); 807 Relevance will be demonstrated at trial.** |
| 25 | 331 B 592 | 7/30/19 | Unemployment denial letter | None |
| 26 | 331 B 662-664 | | Chisholm Timeline Statement | None |
| 27 | 331 B 704-708 | 9/10/20 | Email Conway to Chisholm re complaint | Objection – Hearsay / Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; Rule 803(3) (motive, intent); 807 Relevance will be demonstrated at trial.** |
| 28 | 331B 725 | 9/9/20 | Email Chisholm to Mayer | Objection – Relevance **Pl. Resp.: Relevance will be demonstrated at trial.** |
| 29 | 331 B 742 | 9/9/20 | Email Chisholm to Beers | Objection – Relevance |

3

| | | | | |
|---|---|---|---|---|
| | | | | **Pl. Resp.: Relevance will be demonstrated at trial.** |
| 30 | 331 B 759 | 9/9/20 | Email Chisholm to Chandler | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 31 | 331 B 776 | 9/9/20 | Email Chisholm to Moore | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 32 | 331 B 805-808 | 7/18/19 | EEOC Notice of Charge of Discrimination | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 33 | 331 B 809 | 9/2/20 | Email Chisholm to Moore, Saab and others | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 34 | 331 B 813-818 | 7/25/19 | Email Exch Chisholm, Conway | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 35 | 331 B 819-827 | 7/19/19 | Email Exch Chisholm and Y. Anisal, Div. of MD Unemployment | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 36 | 331 B 840 | 7/19/19 | Email Conway to Chisholm | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 37 | 331 B 844 | 6/19/19 | Email Exch Conway, Chisholm | None |
| 38 | 331 B 855 | 6/5/19 | Email Exch Conway, Chisholm | None |
| 39 | 331 B 1072 | 5/31/19 | Email Butler-Williams to Chisholm | Objection – Hearsay<br>**Pl. Resp.- Not being offered for the truth of the matters asserted; Rule 803(3) (Then-existing mental, emotional, or physical condition, motive,** |

| | | | | intent); 807 Relevance will be demonstrated at trial. |
|---|---|---|---|---|
| 40 | 331 B 1075 | 6/19/19 | Email Exch Chisholm, Saab | None |
| 41 | 331 B 1232 | 8/29/19 | Text Conway to Chisholm | Objection – Hearsay<br>**Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition, motive, intent.** |
| 42 | 331 B 1264 | 6/19/19-7/9/19 | Text Chisholm to Saab | None |
| 43 | 331 B 1276 | 6/21/19-8/29/19 | Text Conway to Chisholm | Objection – Hearsay<br>**Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition, motive, intent.** |
| 44 | 331 B 793-797 | 11/13/19 | Email Chisholm to Crowell and Benedick | Objection – Relevance<br>**Pl. Resp.: Relevance will be demonstrated at trial.** |
| 45 | 331 B 1284-1286 | 6/12/19-9/9/20 | Text Exch Chisholm, Conway | None |
| 46 | 331 B 1295 | 6/19/19-8/19/19 | Text Exch Chisholm, Saab | None |
| 47 | 331B 1317 | 6/4/19-6/19/19 | Text Exch Chisholm, Saab | None |
| 48 | 331 B 1344 | 6/19/19-8/25/19 | Text Conway to Chisholm | None |
| 49 | 331 B 1659 | 8/21/19 | Email Chisholm to Conway | None |
| 50 | 331 B 1660 | 6/9/20 | Email Exch Conway Chisholm | None |
| 51 | PL 1 | 4/4/19-5/13/19 | Text Exch Beers, Kubas | Objection – Hearsay<br>**Pl. Resp.- Not being offered for the truth of the matters asserted** |

| 52 | PL 15-16 | 4/24/19 | Text Exch Kubas, Conway | Objection – Hearsay **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(6)(c)** |
|---|---|---|---|---|
| 53 | PL 17-21 | 6/19/19-6/21/19 | Text Exch Kubas, Salemi | Objection – Hearsay **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition.** |
| 54 | PL 22-50 | Various | Text Exch Kubas, Butler-Williams | Objection – Hearsay **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(6)(c)** |
| 55 | PL 51-54 | 5/11/19-5/13/19 | Text Exch Kubas, Moore | Objection – Hearsay **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(1) Present sense impression; 803(3) Then existing mental, emotional condition.** |
| 56 | PL 61-62 | 7/5/19 | Email Exch Kubas, Chisholm | Objection – Relevance **Pl. Resp.: Relevance will be demonstrated at trial.** |
| 57 | PL 106-108 | 7/15/19 | Unemployment Fact Finding Report | None |
| 58 | PL 120-121 | **CONFIDENTIAL** | Schedule 1 2019 Kubas Tax Return (redacted) | None |
| 59 | PL 338-440 | **CONFIDENTIAL** | 2018 Kubas Tax Returns (redacted) | None |
| 60 | PL 441-571 | **CONFIDENTIAL** | 2019 Kubas Tax Returns (redacted) | None |
| 61 | PL 467-474 | **CONFIDENTIAL** | 2020 Tax Documents | None |
| 62 | PL 580-593 | 12/12/19 **CONFIDENTIAL** | Kubas Medical Records | Objection – Hearsay, Expert Opinion, Foundation |

| | | | | |
|---|---|---|---|---|
| | | | | Pls. Resp.- Foundation will be laid at trial; 803(4); 803(6). |
| 63 | PL 594 | | Audio recording of Unemployment Appeal | Objection – Relevance **Pl. Resp.: Relevance will be demonstrated at trial.** |
| 64 | | | Complaint | None |
| 65 | | | Answer to Complaint | None |
| 66 | | | Defendant's Responses to Plaintiff's Interrogatories | None |
| 67 | | | Plaintiff's Responses to Defendant's Interrogatories | None |
| 68 | 331 B 278-282 | Various | Text Exch Chisholm, Chandler (subj to redactions) | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(1) Present sense impression; 803(3) Then existing mental, emotional condition.** |
| 69 | 331 B 314-316 | Various | Text Exch Chisholm, Conway (subj to redactions) | Objection – Hearsay **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition.** |
| 70 | 331 B 628 | 2/27/21 | Email to Chisholm referencing attachments. | None |
| 71 | 331 B 1161 | 5/18/21 | Text Exch Chisholm, Chandler (subj to redactions) | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; Admission of a party opponent; 803(3) Then existing** |

| | | | | mental, emotional condition; Relevance will be demonstrated at trial. |
|---|---|---|---|---|
| 72 | 331 B 1216 | | Text Exch Chisholm, Chandler | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 73 | 331 B 1227 | 2/27/19 | Text Butler-Williams to Chisholm | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 74 | 331 B 1233 | 2/27/21 | Text Exch Chisholm, Butler-Williams | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 75 | 331 B 1262 | 1/24/21 | Text Chisholm to J. Souders and B. Moore | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; 803(3) Then existing mental, emotional condition;** |

| | | | | Relevance will be demonstrated at trial. |
|---|---|---|---|---|
| 76 | 331 B 1263, 1313 | 2/27/21 | Text Exch Chisholm, Butler-Williams | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 77 | 331 B 1297 | 7/24/19-12/19/19 | Text Exch Chisholm, Chandler | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 78 | 331 B 1304-1306 | 12/19/19-4/25/21 | Text Exch Chisholm, Conway | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 79 | 331 B 1312 | 7/24/19-9/9/20 | Text Exch Chisholm, Chandler | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; 803(3) Then existing mental, emotional condition;** |

| | | | | Relevance will be demonstrated at trial. |
|---|---|---|---|---|
| 80 | 331 B 1316 | 2/27/21-3/23/21 | Text Exch Chisholm, Butler-Williams (subject to redactions) | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 81 | 331 B 1328 | 9/9/20 | Text Exch Chisholm, Chandler | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; 803(3) Then existing mental, emotional condition; Relevance will be demonstrated at trial.** |
| 82 | | | Screenshot 2023-02-11 at 7.51.21 PM- Chandler Facebook | Objection – Hearsay, Relevance, Authenticity **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; Business Record exception; Relevance and authenticity will be demonstrated at trial.** |
| 83 | 331 B 1330 | 2/28/21 | Text Msg Chisholm to Saab, Buckel and others | Objection – Hearsay, Relevance **Pl. Resp.- Not being offered for the truth of the matters asserted; admission of a party opponent; 803(3) Then existing** |

| | | | | mental, emotional condition; Relevance will be demonstrated at trial. |
|---|---|---|---|---|

**ATTACHMENT 3**

Plaintiff's Proposed Additional Jury Instructions

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:20-cv-2456 (MJM) |
| | ) | |
| **331B, LLC** | ) | |
| **(D/B/A ROCKWELL FITNESS)** | ) | |
| | ) | |
| Defendant**.** | ) | |
| | ) | |

### PLAINTIFF'S PROPOSED ADDITIONAL JURY INSTRUCTIONS

Plaintiff Kimberly Kubas, through undersigned counsel, pursuant to Rule 51 of the Federal Rules of Civil Procedure and Local Rule 106.8, respectfully submits the following proposed additional jury instructions:

| NO. | TITLE |
|---|---|
| 1 | Inference Defined |
| 2 | Bias |
| 3 | Discrepancies in Testimony |
| 4 | Impeachment by Prior Inconsistent Statements |
| 5 | Title VII Retaliation Claim |
| 6 | Plaintiff Need Not Show that Retaliation was the Sole Factor in Defendant's Decision to Terminate Her |
| 7 | Pretext |
| 8 | Proof of Retaliation |
| 9 | Sexual Harassment Complaint Need Not Be Meritorious to Prove a Retaliation Claim Under Title VII |
| 10 | Evidence of Timing in Proving Retaliation |
| 11 | Compensatory Damages-Retaliation |
| 12 | Punitive Damages |

**INSTRUCTION NO. 1**

**<u>Inference Defined</u>**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

*Modern Federal Jury Instructions*-Civil 75-1 (2022)

**INSTRUCTION NO. 2**

**<u>Bias</u>**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color her testimony. In short, if you find that a witness is biased, you should view her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

*Modern Federal Jury Instructions*-Civil 76-2 (2022)

**INSTRUCTION NO. 3**

**Discrepancies in Testimony**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict [herself] themself. It is also a fact that two people witnessing an event [will] may see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in [her] their testimony. You should, as always, use common sense and your own good judgment.

*Modern Federal Jury Instructions*-Civil 76-4 (2022)

4

## INSTRUCTION NO. 4

### <u>Impeachment by Prior Inconsistent Statements</u>

You have heard evidence that at some earlier time the witness has said or done something that counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted herself. If you find that the witness made an earlier statement that conflicts with <u>his or </u>her trial testimony, you may consider that fact in deciding how much of [her] <u>their</u> trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

*Modern Federal Jury Instructions*-Civil 76-5 (2022)

5

**INSTRUCTION NO. 5**

**Title VII Retaliation Claim**

To make out her claim of retaliation, Plaintiff must prove, by a preponderance of the evidence, each of the following essential elements:

First: [That the plaintiff complained of discrimination in her employment, specifically [specify the protected activity]].  That the plaintiff engaged in protected activity, that is, at the time she made her complaints, she held a reasonable good faith belief that her complaints of sexual harassment and retaliation by Mr. Conway violated the law;*

Second: That the plaintiff was then subjected to a material adverse action by the defendant, specifically her termination; and

Third: [That the plaintiff's complaint was the critical element in the defendant's decision to take the adverse action]. That the adverse employment action would not have occurred but for the protected activity.

With respect to the second element, an adverse action is "material," in terms of a retaliation claim, if it might have discouraged a reasonable worker from complaining about similar harassment or retaliation. [The adverse action itself, however, need not be related to the plaintiff's employment].

With respect to the third element, [it must be the case that the defendant would not have taken the adverse action except as a response to the plaintiff's protected activity.] the defendant must have taken the adverse action because of an intent to retaliate against the plaintiff for complaining about retaliation and sexual harassment.

*Modern Federal Jury Instructions*-Civil (2022) 88-46 (modified)

---

* Authorities for modification: *Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 606 (D. Md. 2002) ("[A] plaintiff bringing a claim under the opposition clause of Title VII need not establish that the employment practice he opposed in fact violated Title VII. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 357 n.1 (4th Cir. 1985), *abrogated on other grounds by, Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989); *see also Dea v. Washington Suburban Sanitary Comm'n*, 11 Fed. Appx. 352, 2001 WL 672046, *3 (4th Cir. 2001) (unpublished). The plaintiff must, however, at a minimum have held a reasonable good faith belief at the time he opposed an employment practice that the practice was violative of Title VII. *See* Dea, 11 Fed. Appx. 352, 2001 WL 672046, at *3 (*citing Little v. United Techs.*, 103 F.3d 956 (11th Cir. 1997)).

## INSTRUCTION NO. 6

### <u>Plaintiff Need Not Show that Retaliation was the Sole Factor in<br>Defendant's Decision to Terminate Her</u>

Plaintiff must show by a preponderance of the evidence, that when she was terminated by Defendant, it was because of retaliation. This means that protected activity was a necessary factor in the defendant's decision, without which that decision would not have been made. "Because of" retaliation means in part that the plaintiff need not prove that her protected activities were the only factor behind her termination. However, she must prove by direct or indirect evidence that but-for those activities, she would not have been terminated.

<u>Authorities</u>

*Burrage v. United States*, 134 S. Ct. 881, 888-889, 892 (Jan. 27, 2014) (emphasis in original) (Ginsburg, J., concurring); *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (U.S. 2013); *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2547 (U.S. 2013) (Ginsburg, J. dissenting); *Price-Waterhouse v. Hopkins*, 490 U.S. 228, 241 n.7 (1989) (noting that Congress "specifically rejected an amendment that would have placed 'solely' in front of the words 'because of'" in Title VII); *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. Md. 2015); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n. 5 (2d Cir. 2013); *Ponce v. Billington*, 679 F.3d 840, 846 (D.C. Cir. 2012) ("[W]e never said—nor could we given *McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 282 n.10 (1976) that a plaintiff in a *but-for* case must show that an adverse employment action occurred solely because of a protected characteristic.") (*citing Porter v. Natsios*, 414 F.3d 13, 18 (D.C. Cir. 2005) ("the statutory phrase 'because of' does not mean 'solely because of.'"") (*quoting Price Waterhouse*, 490 U.S. at 241)).

**INSTRUCTION NO. 7**

**<u>Pretext</u>**

Plaintiff may also prove, by a preponderance of the evidence, <u>through direct or circumstantial evidence,</u> that the defendant's stated reason to terminate her is false or a pretext for [discrimination] <u>retaliation</u> by persuading you that the defendant's offered reason is not believable or that it was not the true reason why it fired Plaintiff.  If you find that the defendant's offered reason was false or pretextual, the law allows you to infer that the defendant had a [discriminatory] <u>retaliatory</u> motive and you may find for the plaintiff for this reason alone, although you are not required to do so.

*ABA Model Jury Instructions Employment Litigation* 1.02[3][a] *(modified)*

<u>Authorities</u>

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Hagelthorn v. Kennecott Corp.*, 710 F. 2d 76 (2nd Cir. 1983); *Fuentes v. Perskie*, 32 F. 3d 759 (3rd Cir. 1994); *Ratliff v. City of Gainesville*, 256 F. 3d 355 (5th Cir. 2001); *Kline v. TVA*, 128 F 3d 337 (6th Cir. 1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997).

8

## INSTRUCTION NO. 8

### <u>Proof of Retaliation</u>

Ms. Kubas may prove her retaliation case through direct evidence, circumstantial evidence, or both.  Direct evidence of retaliation is evidence of remarks or actions that, if believed, would prove that Defendant's termination of her was caused by Ms. Kubas's protected activity.

Indirect -- or circumstantial -- evidence may include proof of a set of circumstances that would warrant your inferring that Plaintiff's expression of opposition to what she believed to be harassment and retaliation caused the adverse employment action.

Circumstantial evidence of retaliation can be shown by suspicious timing of events, negative statements about Plaintiff, ambiguous or contradictory oral or written statements, or other bits and pieces of information from which retaliatory intent might be shown. Evidence of a pattern of retaliatory conduct occurring soon after a complaint is made may also warrant an inference of retaliatory motive.

<u>Authorities</u>

Federal Employment Jury Instructions Par. 1:300 (1999)
42 U.S.C. Sec. 2000e-2(m)
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)
*Carter v. Ball*, 39 F.3d 450, 460 (4th Cir. 1994)

**INSTRUCTION NO. 9**

**Sexual Harassment Complaint Need Not Be Meritorious To Prove a
Retaliation Claim Under Title VII**

You need not find that Plaintiff would have prevailed on her sexual harassment complaint in order to find that she has proved her claim of retaliation under Title VII.

Authorities

*Ford v. Rigidply Rafters*, 999 F. Supp. 647, 649 (D. Md. 1998) ("it is well-settled in the Fourth Circuit that a Title VII plaintiff alleging unlawful Title VII retaliation need not prove the underlying claim of sexual harassment to prevail upon the retaliation claim." (*citing Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.), cert. denied, 519 U.S. 818, 136 L. Ed. 2d 30, 117 S. Ct. 70 (1996); *Kralowec v. Prince George's County*, 503 F. Supp. 985, 1008 (D. Md. 1980), aff'd, 679 F.2d 883 (4th Cir. 1982) (holding that if the plaintiff proves his reasonable belief that sexual harassment occurred, he may maintain his retaliation claim.); see also, *Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999)* ("[R]etaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed"); *Hankins v. AirTran Airways, Inc., 237 F. App'x. 513, 519 (11th Cir. 2007)* (same).

10

## INSTRUCTION NO. 10

### Evidence of Timing in Proving Retaliation

In considering whether Defendant has engaged in unlawful retaliation against Ms. Kubas in violation of Title VII of the Civil Rights Act of 1964, you may rely upon the proximity in time between the activities constituting protected opposition to harassment and retaliation, and the alleged retaliatory action of Defendant.


Authorities

Plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021)) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The Fourth Circuit has "made abundantly clear" that, at the prima facie stage, "temporal proximity suffices to show a causal relationship." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021) (citing *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 335 (4th Cir. 2018)). "An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers*, 895 F.3d at 335–36.

## INSTRUCTION NO. 11

### Compensatory Damages-Retaliation

If you find that Defendant acted unlawfully, you may award the Plaintiff an amount for her compensatory damages. You may award damages for any pain, suffering or mental anguish that Plaintiff experienced as a consequence of the retaliation. You are instructed that mental anguish is not presumed simply because Plaintiff may be a victim of retaliation. Plaintiff must prove the existence, nature and severity of any mental anguish that she suffered by a preponderance of the evidence,. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that the plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

Authorities

3 Devitt, Blackmar, and Wolff, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.05 (West Supp. 1997); Proposed Pattern Civil Jury Instructions for the Seventh Circuit; *Kyles v. J.K. Guardian Securities Services, Inc.*, 222 F.3d 289, 300 (7th Cir. 2000).

### INSTRUCTION NO. 12

### Punitive Damages

Plaintiff is also requesting an award of punitive damages against Defendant. Punitive damages are damages above and beyond the amount that you may award for compensatory or nominal damages. Punitive damages are awarded to punish the Defendant and to deter Defendant and others from engaging in similar conduct in the future.

You may award punitive damages only if you find that the act or acts of the Defendant were malicious, or in willful, wanton or reckless disregard of Plaintiff's rights. Malice, or wrongful motive, is a state of mind. It may be proven by circumstantial evidence, that is, it may be inferred from the acts of the Defendant or by direct evidence such as statements, either written or oral, made by the Defendant. You may award such additional sum for punitive damages if you find that the unlawful conduct to which the plaintiff was subjected caused her economic damage, embarrassment, humiliation, or indignity. This standard does not require "a showing of egregious or outrageous [retaliation]," but rather proof that the employer retaliated "in the face of a perceived risk that its actions [would] violate federal law."

If you find that the plaintiff is entitled to an award of punitive damages, you should consider the following factors in determining the appropriate amount to award: the seriousness of the defendant's conduct, its state of mind when committing the retaliation, the extent of its malice towards Plaintiff, and how much you wish to deter similar actions by them or other employers in the future.

Authorities

*Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535-36 (1999); *Gallina v. Mintz*, 123 Fed. Appx. 558, 564 (4th Cir. 2005); *Howard University v. Best*, 484 A.2d 958 (D.C. 1984).

# ATTACHMENT 3a

Defendant's Objections and Plaintiff's Reply to Plaintiff's Proposed Jury Instructions

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | | ) |
| | Plaintiff, | ) |
| | | ) |
| v. | | )   Civil Action No.  1:20-cv-2456 (MJM) |
| | | ) |
| **331B, LLC** | | ) |
| **(D/B/A ROCKWELL FITNESS)** | | ) |
| | | ) |
| | Defendant. | ) |
| | | ) |

## PLAINTIFF'S PROPOSED ADDITIONAL JURY INSTRUCTIONS
### [With Defendant's Objection and Plaintiff's Response]

Plaintiff Kimberly Kubas, through undersigned counsel, pursuant to Rule 51 of the Federal Rules of Civil Procedure and Local Rule 106.8, respectfully submits the following proposed additional jury instructions:

| NO. | TITLE |
|---|---|
| 1 | Inference Defined |
| 2 | Bias |
| 3 | Discrepancies in Testimony |
| 4 | Impeachment by Prior Inconsistent Statements |
| 5 | Title VII Retaliation Claim-**Defendant's Objection below** |
| 6 | Plaintiff Need Not Show that Retaliation was the Sole Factor in Defendant's Decision to Terminate Her-**Defendant's Objection below** |
| 7 | Pretext |
| 8 | Proof of Retaliation-**Defendant's Objection below** |
| 9 | Sexual Harassment Complaint Need Not Be Meritorious to Prove a Retaliation Claim Under Title VII-**Defendant's Objection below** |
| 10 | Evidence of Timing in Proving Retaliation-**Defendant's Objection below** |
| 11 | Compensatory Damages-Retaliation--**Defendant's Objection below** |
| 12 | Punitive Damages-**Defendant's Objection below** |

1

**INSTRUCTION NO. 1**

**<u>Inference Defined</u>**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw— but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

*Modern Federal Jury Instructions*-Civil 75-1 (2022)

**INSTRUCTION NO. 2**

**<u>Bias</u>**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color her testimony. In short, if you find that a witness is biased, you should view her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

*Modern Federal Jury Instructions*-Civil 76-2 (2022)

**INSTRUCTION NO. 3**

**<u>Discrepancies in Testimony</u>**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict [herself] <u>themself</u>. It is also a fact that two people witnessing an event [will] <u>may</u> see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in [her] <u>their</u> testimony. You should, as always, use common sense and your own good judgment.


*Modern Federal Jury Instructions*-Civil 76-4 (2022)

4

## INSTRUCTION NO. 4

### <u>Impeachment by Prior Inconsistent Statements</u>

You have heard evidence that at some earlier time the witness has said or done something that counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted herself. If you find that the witness made an earlier statement that conflicts with <u>his or </u>her trial testimony, you may consider that fact in deciding how much of [her] <u>their</u> trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

*Modern Federal Jury Instructions*-Civil 76-5 (2022)

5

**INSTRUCTION NO. 5**

**Title VII Retaliation Claim**

To make out her claim of retaliation, Plaintiff must prove, by a preponderance of the evidence, each of the following essential elements:

First: [That the plaintiff complained of discrimination in her employment, specifically [specify the protected activity]].  That the plaintiff engaged in protected activity, that is, at the time she made her complaints, she held a reasonable good faith belief that her complaints of sexual harassment and retaliation by Mr. Conway violated the law;*

Second: That the plaintiff was then subjected to a material adverse action by the defendant, specifically her termination; and

Third: [That the plaintiff's complaint was the critical element in the defendant's decision to take the adverse action]. That the adverse employment action would not have occurred but for the protected activity.

With respect to the second element, an adverse action is "material," in terms of a retaliation claim, if it might have discouraged a reasonable worker from complaining about similar harassment or retaliation. [The adverse action itself, however, need not be related to the plaintiff's employment].

With respect to the third element, [it must be the case that the defendant would not have taken the adverse action except as a response to the plaintiff's protected activity.] the defendant must have taken the adverse action because of an intent to retaliate against the plaintiff for complaining about retaliation and sexual harassment.

*Modern Federal Jury Instructions*-Civil (2022) 88-46 (modified)

---

* Authorities for modification: *Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 606 (D. Md. 2002) ("[A] plaintiff bringing a claim under the opposition clause of Title VII need not establish that the employment practice he opposed in fact violated Title VII. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 357 n.1 (4th Cir. 1985), *abrogated on other grounds by, Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989); *see also Dea v. Washington Suburban Sanitary Comm'n*, 11 Fed. Appx. 352, 2001 WL 672046, *3 (4th Cir. 2001) (unpublished). The plaintiff must, however, at a minimum have held a reasonable good faith belief at the time he opposed an employment practice that the practice was violative of Title VII. *See* Dea, 11 Fed. Appx. 352, 2001 WL 672046, at *3 (*citing Little v. United Techs.*, 103 F.3d 956 (11th Cir. 1997)).

6

**Defendant's Objection:** Strike in favor of 3C Fed. Jury Prac. & Instr. § 171:25 (6th ed.)(Westlaw 2023).

**Plaintiff's Response:** Defendant does not articulate why its proposed jury instruction is more favorable to Plaintiff's proposed instruction.  Without a specific objection, Plaintiff has no basis in which to reply other than to incorporate her specific objections to Defendant's proposed instruction which is contained in Attachment *.

**INSTRUCTION NO. 6**

**Plaintiff Need Not Show that Retaliation was the Sole Factor in
Defendant's Decision to Terminate Her**

Plaintiff must show by a preponderance of the evidence, that when she was terminated by Defendant, it was because of retaliation. This means that protected activity was a necessary factor in the defendant's decision, without which that decision would not have been made. "Because of" retaliation means in part that the plaintiff need not prove that her protected activities were the only factor behind her termination. However, she must prove by direct or indirect evidence that but-for those activities, she would not have been terminated.

Authorities

*Burrage v. United States*, 134 S. Ct. 881, 888-889, 892 (Jan. 27, 2014) (emphasis in original) (Ginsburg, J., concurring); *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (U.S. 2013); *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2547 (U.S. 2013) (Ginsburg, J. dissenting); *Price-Waterhouse v. Hopkins*, 490 U.S. 228, 241 n.7 (1989) (noting that Congress "specifically rejected an amendment that would have placed 'solely' in front of the words 'because of'" in Title VII); *Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. Md. 2015); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 n. 5 (2d Cir. 2013); *Ponce v. Billington*, 679 F.3d 840, 846 (D.C. Cir. 2012) ("[W]e never said—nor could we given *McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 282 n.10 (1976) that a plaintiff in a *but-for* case must show that an adverse employment action occurred solely because of a protected characteristic.") (*citing Porter v. Natsios*, 414 F.3d 13, 18 (D.C. Cir. 2005) ("the statutory phrase 'because of' does not mean 'solely because of.'"") (*quoting Price Waterhouse*, 490 U.S. at 241)).

**Defendant's Objection**: Strike as duplicative to 3C Fed. Jury Prac. & Instr. § 171:25 (6th ed.)(Westlaw 2023).

**Plaintiff's Response**: Instruction No. 6 better explains "but for" causation and is supported by Supreme Court jurisprudence.

## INSTRUCTION NO. 7

### Pretext

Plaintiff may also prove, by a preponderance of the evidence, <u>through direct or circumstantial evidence,</u> that the defendant's stated reason to terminate her is false or a pretext for [discrimination] <u>retaliation</u> by persuading you that the defendant's offered reason is not believable or that it was not the true reason why it fired Plaintiff.  If you find that the defendant's offered reason was false or pretextual, the law allows you to infer that the defendant had a [discriminatory] <u>retaliatory</u> motive and you may find for the plaintiff for this reason alone, although you are not required to do so.


*ABA Model Jury Instructions Employment Litigation* 1.02[3][a] *(modified)*

<u>Authorities</u>

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Hagelthorn v. Kennecott Corp.*, 710 F. 2d 76 (2nd Cir. 1983); *Fuentes v. Perskie*, 32 F. 3d 759 (3rd Cir. 1994); *Ratliff v. City of Gainesville*, 256 F. 3d 355 (5th Cir. 2001); *Kline v. TVA*, 128 F 3d 337 (6th Cir. 1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997).

## INSTRUCTION NO. 8

### Proof of Retaliation

Ms. Kubas may prove her retaliation case through direct evidence, circumstantial evidence, or both.  Direct evidence of retaliation is evidence of remarks or actions that, if believed, would prove that Defendant's termination of her was caused by Ms. Kubas's protected activity.

Indirect -- or circumstantial -- evidence may include proof of a set of circumstances that would warrant your inferring that Plaintiff's expression of opposition to what she believed to be harassment and retaliation caused the adverse employment action.

Circumstantial evidence of retaliation can be shown by suspicious timing of events, negative statements about Plaintiff, ambiguous or contradictory oral or written statements, or other bits and pieces of information from which retaliatory intent might be shown. Evidence of a pattern of retaliatory conduct occurring soon after a complaint is made may also warrant an inference of retaliatory motive.


Authorities

Federal Employment Jury Instructions Par. 1:300 (1999)
42 U.S.C. Sec. 2000e-2(m)
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)
*Carter v. Ball*, 39 F.3d 450, 460 (4th Cir. 1994)


**Defendant's Objection:** Strike as duplicative of Court's instructions regarding direct and indirect evidence.

**Plaintiff's Response**:  Plaintiff respectfully asserts that while the Court has an instruction concerning direct and indirect evidence, proposed Instruction No. 8 defines these types of admissible evidence within the specific context of Plaintiff's retaliation claim.   There is no prejudice to Defendant if the different types of evidence are explained in this manner and it would be helpful to the jury.

**INSTRUCTION NO. 9**

**Sexual Harassment Complaint Need Not Be Meritorious To Prove a**
**Retaliation Claim Under Title VII**

You need not find that Plaintiff would have prevailed on her sexual harassment complaint in order to find that she has proved her claim of retaliation under Title VII.

<mark>Authorities</mark>

*Ford v. Rigidply Rafters*, 999 F. Supp. 647, 649 (D. Md. 1998) ("it is well-settled in the Fourth Circuit that a Title VII plaintiff alleging unlawful Title VII retaliation need not prove the underlying claim of sexual harassment to prevail upon the retaliation claim." (*citing Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.), cert. denied, 519 U.S. 818, 136 L. Ed. 2d 30, 117 S. Ct. 70 (1996); *Kralowec v. Prince George's County*, 503 F. Supp. 985, 1008 (D. Md. 1980), aff'd, 679 F.2d 883 (4th Cir. 1982) (holding that if the plaintiff proves his reasonable belief that sexual harassment occurred, he may maintain his retaliation claim.); see also, *Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999)* ("[R]etaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed"); *Hankins v. AirTran Airways, Inc., 237 F. App'x. 513, 519 (11th Cir. 2007)* (same).

**Defendant's Objection**: Strike as duplicative to 3C Fed. Jury Prac. & Instr. § 171:25 (6th ed.)(Westlaw 2023). Additionally, not based upon 4th circuit authority.

**Plaintiff's Response**: Plaintiff revised to include this Court and 4th Circuit authority.

INSTRUCTION NO. 10

**Evidence of Timing in Proving Retaliation**

In considering whether Defendant has engaged in unlawful retaliation against Ms. Kubas in violation of Title VII of the Civil Rights Act of 1964, you may rely upon the proximity in time between the activities constituting protected opposition to harassment and retaliation, and the alleged retaliatory action of Defendant.

Authorities

Plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021)) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The Fourth Circuit has "made abundantly clear" that, at the prima facie stage, "temporal proximity suffices to show a causal relationship." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021) (citing *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 335 (4th Cir. 2018)). "An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers*, 895 F.3d at 335–36.

**Defendant's Objection**: Strike as based on authority outside of the 4th Circuit.  This is not the established law in the 4th Circuit.

**Plaintiff's Response**: Plaintiff has revised to include 4th Circuit Authority.

## INSTRUCTION NO. 11

### <u>Compensatory Damages-Retaliation</u>

If you find that Defendant acted unlawfully, you may award the Plaintiff an amount for her compensatory damages. You may award damages for any pain, suffering or mental anguish that Plaintiff experienced as a consequence of the retaliation. You are instructed that mental anguish is not presumed simply because Plaintiff may be a victim of retaliation. Plaintiff must prove the existence, nature and severity of any mental anguish that she suffered by a preponderance of the evidence,. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that the plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

<u>Authorities</u>

3 Devitt, Blackmar, and Wolff, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 104.05 (West Supp. 1997); Proposed Pattern Civil Jury Instructions for the Seventh Circuit; *Kyles v. J.K. Guardian Securities Services, Inc.*, 222 F.3d 289, 300 (7th Cir. 2000).

**Defendant's Objection**: Strike in favor of 3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.)(Westlaw 2023).

**Plaintiff's Response:** Defendant does not articulate why its proposed jury instruction is more favorable to Plaintiff's proposed instruction. Without a specific objection, Plaintiff has no basis in which to reply other than to incorporate her specific objections to Defendant's proposed instruction which is contained in Attachment *.

# INSTRUCTION NO. 12

## <u>Punitive Damages</u>

Plaintiff is also requesting an award of punitive damages against Defendant. Punitive damages are damages above and beyond the amount that you may award for compensatory or nominal damages. Punitive damages are awarded to punish the Defendant and to deter Defendant and others from engaging in similar conduct in the future.

You may award punitive damages only if you find that the act or acts of the Defendant were malicious, or in willful, wanton or reckless disregard of Plaintiff's rights. Malice, or wrongful motive, is a state of mind. It may be proven by circumstantial evidence, that is, it may be inferred from the acts of the Defendant or by direct evidence such as statements, either written or oral, made by the Defendant. You may award such additional sum for punitive damages if you find that the unlawful conduct to which the plaintiff was subjected caused her economic damage, embarrassment, humiliation, or indignity. This standard does not require "a showing of egregious or outrageous [<u>retaliation</u>]," but rather proof that the employer retaliated "in the face of a perceived risk that its actions [would] violate federal law."

If you find that the plaintiff is entitled to an award of punitive damages, you should consider the following factors in determining the appropriate amount to award: the seriousness of the defendant's conduct, its state of mind when committing the retaliation, the extent of its malice towards Plaintiff, and how much you wish to deter similar actions by them or other employers in the future.

<u>Authorities</u>

*Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535-36 (1999); G*allina v. Mintz*, 123 Fed. Appx. 558, 564 (4th Cir. 2005); *Howard University v. Best*, 484 A.2d 958 (D.C. 1984).

**Defendant's Objection**: Strike in favor of 3C Fed. Jury Prac. & Instr. § 171:94 (6th ed.)(Westlaw 2023).

**Plaintiff's Response**: Defendant does not articulate why its proposed jury instruction is more favorable to Plaintiff's proposed instruction.  Without a specific objection, Plaintiff has no basis in which to reply other than to incorporate her specific objections to Defendant's proposed instruction which is contained in Attachment *.

14

**Defendant's Objections:**  Defendant's objections are made using the strikethrough "tracked changes" function on the list of jury instructions and with "Comments" made on each specific jury instruction highlighting the reason for each of the requests.

**Plaintiff's Response**:  To ensure that the typeface did not become too small when converting the document with comments into a pdf, Plaintiff's counsel copied Defendant's comments into the body of the document, which is also consistent with the other documents that are being submitted to the Court in the Pretrial Statement.

Respectfully submitted,


_____ / s / _____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

# ATTACHMENT 4

Plaintiff's Case Specific *Voir Dire* Questions

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| **KIMBERLY KUBAS** )<br> Plaintiff, )<br> )<br> v. )<br> )<br> **331B, LLC** )<br> **(D/B/A ROCKWELL FITNESS)** )<br> )<br> Defendant**.** )<br>_____ ) | Civil Action No.  1:20-cv-2456 (MJM) |

**ATTACHMENT 4**
**PLAINTIFF'S CASE SPECIFIC VOIR DIRE QUESTIONS**

1.  The law firms involved with this case are: Alderman, Devorsetz & Hora PLLC and Buckel Levasseur Pillai & Beeman LLC.  Have you or people you are close with had business dealings with, or been employed by, any of the law firms mentioned?

    Def Objection:

2.  The lawyers involved in this case are: Sundeep Hora, Emma Eckert, Jason Buckel and Lee Beeman. Do any of you or people you are close with know any of the attorneys involved in this action, either through work, or through social connections?

    Def Objection:

3.  The plaintiff in this case is Kim Kubas.  At one point, she worked at a gym called Rockwell Fitness, who is the defendant in this case.  Do you think you know, or have you read/heard anything about Ms. Kubas either in the news, or social media networks?

    Def Objection:

4.  Defendant Rockwell Fitness is owned by Maryland State Delegate Brian Chisholm and former Maryland State Delegate Sid Saab.  Do you think you know, or have you read/heard anything about Rockwell Fitness, Mr. Chisholm or Mr. Saab either in the news, or social media networks?

    Def Objection:

5.  Do you live or have you recently lived in Districts 31 or 33 of Anne Arundel County?

Def Objection:

6. Jason Buckel, Defendant's attorney, is also a Maryland State Delegate.  Do you live or have you recently lived in District 1B?

Def Objection:

7. Have you or anyone close to you ever been a member of Rockwell Fitness, attended an event at the gym or worked out there?

Def Objection:

8. Do you know or have any familiarity with any other members of the jury pool?

Def Objection:

9. Have you or anyone close to you ever consulted with a lawyer about the possibility of filing a lawsuit? If so, briefly describe the situation that made you consult with a lawyer.

Def Objection:

10. Have you or anyone close to you had to defend yourself in a lawsuit?  If so, briefly describe the nature of the allegations in the case against you or the person close to you.

Def Objection:

11. Have you, a family member, or a close friend ever had a complaint or accusation of discrimination, retaliation, formal or informal, made against you/them?

Def Objection:

12. Do you have any views about anti-discrimination laws or discrimination cases and/or retaliation claims that would make it difficult for you to render a fair and impartial verdict in this case?

Def Objection:

13. Are you or have you ever been a manager, supervisor, or human resources representative, or had a job where you were responsible for hiring or firing employees?

14. Do you own or have you ever owned your own business? If so, what type of business? Is your business currently operating?

Def Objection:

15.   [Of those who have ownership/management/supervisory experience:] Did you ever have to fire or reprimand an employee? If yes, describe the reason/s.

      Def Objection:

16.   The plaintiff in this case is an individual. The defendant is a company. Does anyone here feel that it would be hard to treat an individual and a company equally? In other words, does anyone have a slight leaning where, if given a choice, you'd lean towards favoring one side or the other?

      Def Objection:

17.   Do you have any moral, religious, philosophical or political beliefs that preclude you from sitting on a jury or that will make it difficult for you to render a fair and impartial verdict in this case?

      Def Objection:

# ATTACHMENT 4a

# Defendant's Objections and Plaintiff's Response to Plaintiff's Case Specific *Voir Dire* Questions

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:20-cv-2456 (MJM) |
| | ) | |
| **331B, LLC** | ) | |
| **(D/B/A ROCKWELL FITNESS)** | ) | |
| | ) | |
| Defendant**.** | ) | |
| | ) | |

**ATTACHMENT 4**
**PLAINTIFF'S CASE SPECIFIC VOIR DIRE QUESTIONS**
**[with Defendant's Objections and Plaintiff's Reply]**

1. The law firms involved with this case are: Alderman, Devorsetz & Hora PLLC and Buckel Levasseur Pillai & Beeman LLC.  Have you or people you are close with had business dealings with, or been employed by, any of the law firms mentioned?

   Def Objection: None.

2. The lawyers involved in this case are: Sundeep Hora, Emma Eckert, Jason Buckel and Lee Beeman. Do any of you or people you are close with know any of the attorneys involved in this action, either through work, or through social connections?

   Def Objection: None.

3. The plaintiff in this case is Kim Kubas.  At one point, she worked at a gym called Rockwell Fitness, who is the defendant in this case.  Do you think you know, or have you read/heard anything about Ms. Kubas either in the news, or social media networks?

   Def Objection: None.

4. Defendant Rockwell Fitness is owned by Brian Chisholm and Sid Saab.  Do you think you know, or have you read/heard anything about Rockwell Fitness, Mr. Chisholm or Mr. Saab either in the news, or social media networks?

   **Def Objection:** *See* **stricken language above. Brian Chisholm and Sid Saab's status as (former) Maryland State Delegates is entirely irrelevant to the proceedings and is offered only for prejudicial purposes.**

**Deleted:** Maryland State Delegate

**Deleted:** former Maryland State Delegate

**Plaintiff's Reply- Chisholm and Saab's status as delegates, whether jurors live in their district and have voted for or against them are relevant factors in determining bias and for peremptory strike purposes.  The same applies to Attorney Buckel's status as a a delegate and minority leader.**

5.   Do you live or have you recently lived in Anne Arundel County?

**Deleted:** Districts 31 or 33 of

**Def Objection: *See* stricken language above and Objection No. 5.**

6.   *?*

**Deleted:** Jason Buckel, Defendant's attorney, is also a Maryland State Delegate.  Do you live or have you recently lived in District 1B

**Def Objection: Jason Buckel's status as a Maryland State Delegate while also serving as counsel for Defendants is entirely irrelevant and offered only for prejudicial purposes.**

7.   Have you or anyone close to you ever been a member of Rockwell Fitness, attended an event at the gym or worked out there?

Def Objection: None.

8.   Do you know or have any familiarity with any other members of the jury pool?

Def Objection: None.

9.   Have you or anyone close to you ever consulted with a lawyer about the possibility of filing a lawsuit? If so, briefly describe the situation that made you consult with a lawyer.

Def Objection: None.

10.  Have you or anyone close to you had to defend yourself in a lawsuit?  If so, briefly describe the nature of the allegations in the case against you or the person close to you.

Def Objection: None.

11.  Have you, a family member, or a close friend ever had a complaint or accusation of discrimination, retaliation, formal or informal, made against you/them?

Def Objection: None.

12.  Do you have any views about anti-discrimination laws or discrimination cases and/or retaliation claims that would make it difficult for you to render a fair and impartial verdict in this case?

Def Objection: None.

13. Are you or have you ever been a manager, supervisor, or human resources representative, or had a job where you were responsible for hiring or firing employees?

    Def Objection: None.

14. Do you own or have you ever owned your own business? If so, what type of business? Is your business currently operating?

    Def Objection: None.

15. [Of those who have ownership/management/supervisory experience:] Did you ever have to fire or reprimand an employee? If yes, describe the reason/s.

    Def Objection: None.

16. The plaintiff in this case is an individual. The defendant is a company. Does anyone here feel that it would be hard to treat an individual and a company equally? In other words, does anyone have a slight leaning where, if given a choice, you'd lean towards favoring one side or the other?

    Def Objection: None.

17. Do you have any moral, religious, philosophical or political beliefs that preclude you from sitting on a jury or that will make it difficult for you to render a fair and impartial verdict in this case?

    Def Objection: None.

# ATTACHMENT 5

## Plaintiff's Proposed Verdict Form with Defendant's Objections and Plaintiff's Response

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:20-cv-2456 (MJM) |
| | ) | |
| **331B, LLC** | ) | |
| **(D/B/A ROCKWELL FITNESS)** | ) | |
| | ) | |
| Defendant**.** | ) | |
| | ) | |

## PLAINTIFF'S PROPOSED SPECIAL VERDICT FORM
### [With Defendant's Objections and Plaintiff's Response]

1.  Do you find by a preponderance of the evidence that Defendant, 331B, LLC, has engaged in unlawful retaliation against Kimberly Kubas in violation of Title VII of the Civil Rights Act of 1964?

    _____            _____
    Yes                      No

2.  If yes, what amount of compensatory damages, to compensate for pain, suffering or mental anguish, should Kimberly Kubas receive from 331B, LLC as a result of Defendant's conduct?

    $_____

3.  Do you find by a preponderance of the evidence that Kimberly Kubas should receive punitive damages from 331B, LLC as a result of this retaliatory action?

    _____            _____
    Yes                      No

4.  If yes, what amount of punitive damages do you award?

    $_____

Respectfully submitted,

/s/ _____
Sundeep Hora, Esq. (MD Bar No. 28208)
Emma Eckert (PHV
Alderman, Devorsetz & Hora PLLC
1025 Connecticut Ave NW; Suite 615
Washington, DC 20036
Tel. 202-969-8220
Fax 202-969-8224
Email: shora@adhlawfirm.com

*Counsel for Plaintiff*


**Defendant's Objection:**

Defendant believes the verdict form it has proffered more accurately represents the manner in which the jury should proceed through verdict and is based upon the pattern "Jury Interrogatories" contained in Federal Jury Practice and Instructions 6th edition, as modified for retaliation. 3C Fed. Jury Prac. & Instr. § 171:101 (6th ed.)(Westlaw 2023).  *See*, Defendant's Proposed Special Verdict Form.

Respectfully submitted,

'

____/ s / _____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*


**Plaintiff's Response**-Plaintiff objects to Defendant's proposed verdict form for the reasons stated in Attachment 8.  Plaintiff's proposed verdict form is appropriate, straightforward and reflects that it will be used after the jury has been properly instructed by the Court on each of the elements of Plaintiff's retaliation claim and request for damages.

# ATTACHMENT 6

# Defendant's Exhibit List with Plaintiff's Objections and Defendant's Response

*Kubas v. 331B*, 1:20-cv-2456 (MJM)
**Defendant's Exhibit List**
Updated 2-24-23

**Will Use**

**May Use**

| Exhibit No | Bates | Date (s) | Description | Plaintiff's Objection | Defendant's Reply |
|---|---|---|---|---|---|
| 1 | 331B_ 0001-0017 | 01/25/21 | Defendant's EEOC Position Statement | 802, 805 (hearsay); 402, 403 (prejudicial because it contains counsel's argument and is not evidence). | Withdrawn. |
| 2 | 331B_ 0018-0022 | 12/20/19 | Affidavit of Devin Conway | FRE 802, 805 (hearsay), Foundation/Speculation. This affidavit was produced by Defendant in discovery and drafted with the assistance of defense counsel. Defendant cannot introduce Conway's self-serving, out-of-court statements as evidence at trial. The affidavit also includes additional layers of hearsay (reporting what others, told him).  Mr. Conway is expected to testify and is listed as a witness for both parties.  FRE 403 applies because Plaintiff cannot cross examine an affidavit. | Defendant may use in the event that Devin Conway is unavailable. |

| 3 | 331B_ 0023- 0025 | | Affidavit of Bobbi Beers | 802, 805 (hearsay); Foundation/Speculation. Beers' affidavit is unsigned.  FRE 802 (hearsay), Foundation/Speculation. This affidavit was produced by Defendant in discovery and drafted with the assistance of defense counsel. The affidavit is hearsay and inadmissible at trial. Defendant cannot introduce Beers self-serving, out-of-court statements as evidence at trial. The affidavit also includes additional layers of hearsay (reporting what others  told her). It is likely that Beers  (who is engaged to Conway) will testify as an impeachment witness for Defendant.  403 because Plaintiff cannot cross examine an affidavit. | Defendant may use in the event that Bobbi Beers is unavailable. |
| 4 | 331B_ 0026- 0028 | 12/23/19 | Affidavit of Breanna Moore | 802, 805 (hearsay); Foundation/Speculation.  It is likely that Moore will testify as an impeachment witness for Defendant.  403 because Plaintiff cannot cross examine an affidavit. | Defendant may use in the event that Breanna Moore is unavailable. |

| 5 | 331B_0029-0030 | 12/3/19 | Affidavit of Constance Conway | 402, 802. 805 (hearsay); Foundation/Speculation. Constance Conway is Devin Conway mother.  FRE 403 applies because Plaintiff cannot cross examine an affidavit. | Defendant may use in the event that Connie Conway is unavailable. |
|---|---|---|---|---|---|
| 6 | 331B_0178-0193 | | Rockwell Employee Handbook | *See* Plaintiff's Motion in Limine. FRE 401, 402, 403, 802, 901 (authenticity).  Defendant has not offered any evidence that this handbook was in effect during Ms. Kubas's tenure, or that Ms. Kubas reviewed or agreed to the contents of the handbook.   In fact, it appears that the handbook was created after Ms. Kubas was terminated in August 2019 (331B 1017) and was not distributed to employees until after (See 331B 809). | *See*, Defendant's Proposed Ex. 11 regarding implementation of Handbook and Receipt of Handbook by Plaintiff.  An updated handbook was produced during discovery which was put into effect after Plaintiff's termination (*see* 331B_1018). |
| 7 | 331B_0223-0244 | 09/14/18 - 07/10/19 | Kubas Payroll Records | No objection. | |
| 8 | 331B_0798-0800 | 11/04/2019 | Kubas Charge of Discimination | No objection. | |
| 9 | 331B_0049 | 06/01/2019 | Kubas Timeclock records 06/1/19-6/21/19 | No objection. | |
| 10 | 331B_0046-0047 | Various | Kubas / Chisholm Texts | No objection. | |

| 11 | 331B_ 1036-1037 | 07/12/2017 | Email from Ryan VanBrackel to Rockwell Employees | Hearsay, 403 because there is no way to know what version of the handbook was attached. | |
| 12 | 331B_ 1038-1053 | | Employee Handbook from 2017 | *See* Plaintiff's Motion in Limine. FRE 401, 402, 403, 802, 901 (authenticity).  Defendant has not offered any evidence that this handbook was in effect during Ms. Kubas's tenure, or that Ms. Kubas reviewed or agreed to the contents of the handbook.   In fact, it appears that the handbook was created after Ms. Kubas was terminated in August 2019 (331B 1017) and was not distributed to employees until after (See 331B 809). | |
| 13 | 331B_ 0194-0198 | 06/19/2019-06/21/2019 | Emails Between Kubas, Chisholm, and Saab | No objection. | |

Defendant may use all exhibits identified by Plaintiff in Plaintiff's exhibit list.

**Plaintiff's response:  If Defendant "may use all of the exhibits identified by Plaintiff," then all of Plaintiff's exhibits should be considered joint exhibits.**

Respectfully submitted,

\_\_\_\_/ s /_____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

# ATTACHMENT 7

# Defendant's Proposed Additional Jury Instructions

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:20-cv-2456 (MJM) |
| | ) | |
| **331B, LLC** | ) | |
| **(D/B/A ROCKWELL FITNESS)** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S PROPOSED ADDITIONAL JURY INSTRUCTIONS**

Defendant 331B, LLC, through undersigned counsel, pursuant to Rule 51 of the Federal Rules of Civil Procedure and Local Rule 106.8, respectfully submits the following proposed additional jury instructions:

| NO. | TITLE |
|---|---|
| 1 | Instructions apply to each party |
| 2 | All person equal before the law – Organizations |
| 3 | Burden of Proof – Preponderance of the Evidence |
| 4 | Retaliation |
| 5 | Proximate Cause |
| 6 | Defenses |
| 7 | Legitimate nondiscriminatory reasons for employment decision |
| 8 | Business Judgment |
| 9 | Compensatory Damages |
| 10 | Nominal Damages |
| 11 | Punitive Damages |

**Instruction No. 1**

**<u>Instructions apply to each party</u>**

Unless I state otherwise, you should consider each instruction given to apply separately and individually to each plaintiff and to each defendant in the case.

*3 Fed. Jury Prac. & Instr.* § 103:10 (6th ed.) (Westlaw 2023).

**Instruction No. 2**

**<u>All person equal before the law – Organizations</u>**

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A [corporation] [partnership] [unincorporated association] is entitled to the same fair trial as a private individual. All persons, including [corporations], [partnerships], [unincorporated associations], and other organizations stand equal before the law, and are to be treated as equals.

*3 Fed. Jury Prac. & Instr.* § 103:12 (6th ed.)(Westlaw 2023).

**Instruction No. 3**

**<u>Burden of Proof – Preponderance of the Evidence</u>**

Plaintiff  has the burden in a civil action, such as this, to prove every essential element of plaintiff's claim by a preponderance of the evidence. If plaintiff  should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence, you should find for defendant  as to that claim.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.), 3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.)

Instruction No. 4

**Retaliation**

Plaintiff Kimberly Kubas claims Defendant 331B, LLC retaliated against Plaintiff because Plaintiff took steps to enforce Plaintiff's lawful rights under Title VII of the Civil Rights Act of 1964.

Title VII prohibits discrimination in the workplace and also prohibits an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under those laws.

Plaintiff may make a discrimination complaint as a means to enforce what Plaintiff believes in good faith to be the Plaintiff's lawful rights. So, even if a complaint of discrimination against Defendant is later found to be invalid or without merit, Plaintiff cannot be penalized in retaliation for having made such a complaint if you find Plaintiff made the complaint as a means of seeking to enforce what Plaintiff believed in good faith to be Plaintiff's lawful rights. To establish "good faith," it is insufficient for Plaintiff merely to allege that Plaintiff's belief in this regard was honest and bona fide. The allegations and the record must also establish the belief, though perhaps mistaken, was objectively reasonable.

Plaintiff claims Defendant underlined terminated her employment because Plaintiff complained that a co-worker was sexually harassing her.

Defendant denies Plaintiff's claim and asserts that Plaintiff voluntarily resigned her employment while being disciplined for time-keeping related matters.

To succeed on Plaintiff's claim, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:       Plaintiff engaged in a protected activity;
Second:   Defendant then took an adverse employment action;
Third:      Defendant took the adverse employment action because of Plaintiff's protected activity; and
Fourth:    Plaintiff suffered damages because of the adverse employment action.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, Plaintiff claims that Plaintiff engaged in protected activity when Plaintiff complained to the owners of Defendant 331B, LLC that she was being sexually harassed by a co-worker. That action is "protected activity" if it was based on Plaintiff's good-faith, reasonable belief that Plaintiff was being sexually harassed by a co-worker. Plaintiff had a "good faith" belief if Plaintiff honestly believed that Plaintiff was being sexually harassed by a co-worker. Plaintiff had a "reasonable" belief if a reasonable person would, under the circumstances, believe that Plaintiff was being sexually harassed by a co-worker. Plaintiff does not have to prove Plaintiff was

being sexually harassed by a co-worker. But Plaintiff must prove that Plaintiff had a good-faith, reasonable belief that <u>Plaintiff was being sexually harassed by a co-worker.</u>

For the second element, Plaintiff claims Defendant took an adverse employment action against Plaintiff when Defendant <u>331B, LLC terminated her employment</u>. You must decide whether <u>termination of Plaintiff's employment</u> is an adverse employment action.

An "adverse employment action" is any type of action that would have made a reasonable employee reluctant to make or support a charge of discrimination. Put another way, if a reasonable employee would be less likely to complain about or oppose alleged discrimination because the employee knew that the employer would <u>terminate the individual's employment</u>, then that action is an adverse employment action. If the employment action would not make it less likely for a reasonable employee to make complaints about or oppose the alleged discrimination, it is not an adverse employment action.

For the third element, if you find that Plaintiff engaged in protected activity and that Defendant took an adverse employment action against Plaintiff, you must decide whether Defendant took that action because of Plaintiff's protected activity. In other words, you must decide whether Plaintiff's protected activity was the main reason for Defendant's decision.

To determine that Defendant took an adverse employment action because of Plaintiff's protected activity, you must decide that Defendant 331B, LLC would not have taken the action had Plaintiff not engaged in the protected activity but everything else had been the same.

Defendant claims Defendant did not <u>terminate Plaintiff's employment</u> because of Plaintiff's <u>complaining of a coworker sexually harassing her</u> and that Defendant [took the action for *[another reason/other reasons]*] <u>did not terminate Plaintiff's employment</u>. An employer may not take an adverse action against an employee because of the employee's protected activity. But an employer may terminate an employee for any other reason, good or bad, fair or unfair. If you believe Defendant's reason*[s]* for Defendant's decision, and you find Defendant did not make Defendant's decision because of Plaintiff's protected activity, you must not second guess that decision, and you must not substitute your own judgment for Defendant's judgment — even if you do not agree with it.

For the fourth element, you must decide whether Defendant's acts were the proximate cause of damages that Plaintiff sustained. Put another way, you must decide, if Defendant had not <u>terminated Plaintiff's employment</u>, would these damages have occurred.

If you find Defendant's acts were the proximate cause of damages that Plaintiff incurred, you must determine the amount of damages.

3C Fed. Jury Prac. & Instr. § 171:25 (6th ed.)(Westlaw 2023).

**Instruction No. 5**

**<u>Proximate Cause</u>**

Plaintiff must prove that Defendant would not have <u>terminated Plaintiff's employment</u> in the absence of—in other words, but for—Plaintiff's <u>complaint of sexual harassment by a co-worker</u>. Plaintiff does not have to prove that <u>Plaintiff's complaint of sexual harassment by a co-worker</u> was the only reason Defendant <u>terminated Plaintiff's employment</u>. But Plaintiff must prove that Defendant decision to <u>terminate Plaintiff's employment</u> would not have occurred in the absence of such discrimination.

3C Fed. Jury Prac. & Instr. § 171:62 (6th ed.)(Westlaw 2023).

**Instruction No. 6**

**<u>Defenses</u>**

If, after considering Plaintiff's evidence and Defendant's rebuttal of that evidence, you find Plaintiff has established each and every element of Plaintiff's claim, only then should you concern yourselves with the defenses offered by Defendant.

With regard to any of Defendant's defenses, remember Plaintiff must disprove the defense by a preponderance of the evidence. In other words, Defendant establishes the defense unless you find the evidence that opposes the existence of that defense has more convincing force to you than the evidence that supports it.

If you find Plaintiff has successfully rebutted the defense, then you must find for Plaintiff. If you find Defendant has established Defendant's defense, then you must find for Defendant.

3C Fed. Jury Prac. & Instr. § 171:70 (6th ed.)(Westlaw 2023).

**Instruction No. 7**

**<u>Legitimate nondiscriminatory reasons for employment decision</u>**

You must also consider any legitimate, nondiscriminatory reason or explanation stated by Defendant for its decision. If you determine Defendant has stated such a reason, then you must decide in favor of Defendant unless Plaintiff proves by a preponderance of the evidence that the stated reason was not the true reason but was only a pretext or excuse for Defendant's retaliation against Plaintiff because of plaintiff's complaint of sexual harassment by a co-worker.

3C Fed. Jury Prac. & Instr. § 171:77 (6th ed.)(Westlaw 2023).

**Instruction No. 8**

**<u>Business Judgment</u>**

Even if an employer is mistaken and its business judgment is wrong, an employer is entitled to make its own policy and business judgment. An employer may make those employment decisions as it sees fit, as long as it is not unlawful.

In determining whether Defendant's stated reason for its actions was a pretext for <u>retaliation</u>, you may not question Defendant's business judgment. Pretext is not established just because you disagree with the business judgment of Defendant unless you find that Defendant's reason was a pretext for <u>retaliation</u>.

3C Fed. Jury Prac. & Instr. § 171:75 (6th ed.)(Westlaw 2023).

## Instruction No. 9

## __Compensatory Damages__

If you find Defendant retaliated against Plaintiff based on Plaintiff's __complaint of sexual harassment by a co-worker__, then you must determine an amount that is fair compensation for Plaintiff's damages. You may award compensatory damages only for injuries Plaintiff proves were caused by Defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation—no more and no less.

You may award damages for any pain, suffering or mental anguish that Plaintiff experienced as a consequence of Defendant's __termination of her employment because of Plaintiff's complaint of sexual harassment by a co-worker__. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that Plaintiff prove the amount of Plaintiff's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.)(Westlaw 2023).

**Instruction No. 10**

**<u>Nominal Damages</u>**

If you find in favor of Plaintiff under Instruction No. ____, but you find Plaintiff's damages have no monetary value, then you must return a verdict for Plaintiff in the nominal amount of one dollar.

3C Fed. Jury Prac. & Instr. § 171:93 (6th ed.)(Westlaw 2023).

## Instruction No. 11

## **Punitive Damages**

Plaintiff claims the acts of Defendant were done with malice or reckless indifference to the Plaintiff's federally protected rights so as to entitle Plaintiff to an award of punitive damages in addition to compensatory damages.

[In some cases punitive damages may be awarded for the purpose of punishing a Defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.]

An award of punitive damages would be appropriate in this case only if you find for Plaintiff and then further find from a preponderance of the evidence:

First:       That an [higher management official] owner of Defendant personally acted with malice or reckless indifference to Plaintiff's federally protected rights, and

Second: That Defendant itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

If you find that punitive damages should be assessed against Defendant, you may consider the financial resources of Defendant in fixing the amount of such damages.

Punitive damages must bear a reasonable relationship to plaintiff's actual injury. However, there is no simple way to link punitive to compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all relevant factors. These include:
1. The impact or severity of Defendant's conduct.
2. The amount of time Defendant conducted itself in this manner.
3. The amount of compensatory damages.
4. The potential profits Defendant may have made from Defendant's conduct.
5. The attitudes and actions of Defendant's [top management] Owner(s) after the misconduct was discovered.
6. The effect of the damages award on Defendant's financial condition.

While you may consider evidence of actual harm to nonparties as part of your determination of reprehensibility, you may not use it to punish a Defendant for injury the Defendant may have inflicted upon nonparties or those whom they directly represent.

3C Fed. Jury Prac. & Instr. § 171:94 (6th ed.)(Westlaw 2023).

Respectfully submitted,


_____/ s /_____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

**ATTACHMENT 7a**

Plaintiff's Objections and Defendant's Reply to Defendant's Proposed Jury Instructions

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:20-cv-2456 (MJM) |
| | ) | |
| **331B, LLC** | ) | |
| **(D/B/A ROCKWELL FITNESS)** | ) | |
| | ) | |
| Defendant**.** | ) | |
| ———————————————— | ) | |

**DEFENDANT'S PROPOSED ADDITIONAL JURY INSTRUCTIONS**
**With Plaintiff's Objections and Defendant's Reply**

Defendant 331B, LLC, through undersigned counsel, pursuant to Rule 51 of the Federal

Rules of Civil Procedure and Local Rule 106.8, respectfully submits the following proposed

additional jury instructions:

| NO. | TITLE |
|---|---|
| 1 | Instructions apply to each party |
| 2 | All person equal before the law – Organizations |
| 3 | Burden of Proof – Preponderance of the Evidence |
| 4 | Retaliation |
| 5 | Proximate Cause |
| 6 | Defenses |
| 7 | Legitimate nondiscriminatory reasons for employment decision |
| 8 | Business Judgment |
| 9 | Compensatory Damages |
| 10 | Nominal Damages |
| 11 | Punitive Damages |

**Instruction No. 1**

**<u>Instructions apply to each party</u>**

Unless I state otherwise, you should consider each instruction given to apply separately and individually to each plaintiff and to each defendant in the case.

*3 Fed. Jury Prac. & Instr.* § 103:10 (6th ed.) (Westlaw 2023).


**Plaintiff's Objection:  Duplicative of Court's Instruction ("Unless otherwise stated, you should consider each instruction given to apply separately and individually to each party in the case.").**


**Defendant's Reply: Withdrawn.**

**Instruction No. 2**

**All person equal before the law – Organizations**

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A [corporation] [partnership] [unincorporated association] is entitled to the same fair trial as a private individual. All persons, including [corporations], [partnerships], [unincorporated associations], and other organizations stand equal before the law, and are to be treated as equals.

*3 Fed. Jury Prac. & Instr.* § 103:12 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection:  Duplicative of Court's Instruction (PARTIES ARE EQUAL BEFORE THE COURT)**

**Defendant's Reply: This model jury instruction is only duplicative of the Court's Instruction in the first sentence.  The remaining language of the model interrogatory is designed to be offered when an individual has filed suit against a corporation or vice versa. Here, the Court instructing the jury on the necessity of fairness and equality before the law of corporations is germane and just.**

**Instruction No. 3**

**<u>Burden of Proof – Preponderance of the Evidence</u>**

Plaintiff has the burden in a civil action, such as this, to prove every essential element of plaintiff's claim by a preponderance of the evidence. If plaintiff should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence, you should find for defendant as to that claim.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.), 3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.)


**Plaintiff's Objection:  Duplicative of Court's Instruction (BURDEN AND STANDARD OF PROOF—PREPONDERANCE OF THE EVIDENCE)**

**Defendant's Reply: Withdrawn**

**Instruction No. 4**

**Retaliation**

Plaintiff Kimberly Kubas claims Defendant 331B, LLC retaliated against Plaintiff because Plaintiff took steps to enforce Plaintiff's lawful rights under Title VII of the Civil Rights Act of 1964.

Title VII prohibits discrimination in the workplace and also prohibits an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under those laws.

Plaintiff may make a discrimination complaint as a means to enforce what Plaintiff believes in good faith to be the Plaintiff's lawful rights. So, even if a complaint of discrimination against Defendant is later found to be invalid or without merit, Plaintiff cannot be penalized in retaliation for having made such a complaint if you find Plaintiff made the complaint as a means of seeking to enforce what Plaintiff believed in good faith to be Plaintiff's lawful rights. To establish "good faith," it is insufficient for Plaintiff merely to allege that Plaintiff's belief in this regard was honest and bona fide. The allegations and the record must also establish the belief, though perhaps mistaken, was objectively reasonable.

Plaintiff claims Defendant terminated her employment because Plaintiff complained that a co-worker was sexually harassing her and other female employees and that the co-worker who sexually harassed her was retaliating against her.

Defendant denies Plaintiff's claim and asserts that Plaintiff voluntarily resigned her employment while being disciplined for time-keeping related matters.

To succeed on Plaintiff's claim, Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:     Plaintiff engaged in a protected activity;
Second:    Defendant then took an adverse employment action;
Third:     Defendant took the adverse employment action because of Plaintiff's protected activity; and
Fourth:    Plaintiff suffered damages because of the adverse employment action.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, Plaintiff claims that Plaintiff engaged in protected activity when Plaintiff complained to the owners of Defendant 331B, LLC that she was being sexually harassed by a co-worker, that other female employees we being sexually harassed by the same co-worker, and that the same co-worker was retaliating against her. That action is "protected activity" if it was based on Plaintiff's good-faith, reasonable belief that Plaintiff was being sexually harassed by a co-worker or Plaintiff's co-workers were being sexually harassed by a co-worker or the co-worker

was retaliating against Plaintiff for complaining of his sexual harassment. Plaintiff had a "good faith" belief if Plaintiff honestly believed that Plaintiff was being sexually harassed by a co-worker or Plaintiff's co-workers were being sexually harassed by a co-worker or the co-worker was retaliating against Plaintiff for complaining of his sexual harassment. Plaintiff had a "reasonable" belief if a reasonable person would, under the circumstances, believe that Plaintiff was being sexually harassed by a co-worker or Plaintiff's co-workers were being sexually harassed by a co-worker or the co-worker was retaliating against Plaintiff for complaining of his sexual harassment. Plaintiff does not have to prove Plaintiff was being sexually harassed by a co-worker or Plaintiff's co-workers were being sexually harassed by a co-worker or the co-worker was retaliating against Plaintiff for complaining of his sexual harassment. But Plaintiff must prove that Plaintiff had a good-faith, reasonable belief that Plaintiff was being sexually harassed by a co-worker or Plaintiff's co-workers were being sexually harassed by a co-worker or the co-worker was retaliating against Plaintiff for complaining of his sexual harassment.

For the second element, Plaintiff claims Defendant took an adverse employment action against Plaintiff when Defendant 331B, LLC terminated her employment. You must decide whether termination of Plaintiff's employment is an adverse employment action.

An "adverse employment action" is any type of action that would have made a reasonable employee reluctant to make or support a charge of discrimination. Put another way, if a reasonable employee would be less likely to complain about or oppose alleged discrimination because the employee knew that the employer would terminate the individual's employment, then that action is an adverse employment action. If the employment action would not make it less likely for a reasonable employee to make complaints about or oppose the alleged discrimination, it is not an adverse employment action.

For the third element, if you find that Plaintiff engaged in protected activity and that Defendant took an adverse employment action against Plaintiff, you must decide whether Defendant took that action because of Plaintiff's protected activity. In other words, you must decide whether Plaintiff's protected activity was the main reason for Defendant's decision.

To determine that Defendant took an adverse employment action because of Plaintiff's protected activity, you must decide that Defendant 331B, LLC would not have taken the action had Plaintiff not engaged in the protected activity but everything else had been the same.

Defendant claims Defendant did not terminate Plaintiff's employment because of Plaintiff's complaining of a coworker sexually harassing her and that Defendant [took the action for *[another reason/other reasons]*], terminated Plaintiff's employment for a legitimate non-discriminatory reason, namely that Plaintiff was clocking in to the time system while not actually working. An employer may not take an adverse action against an employee because of the employee's protected activity. But an employer may terminate an employee for any other reason, good or bad, fair or unfair. If you believe Defendant's reason*[s]* for Defendant's decision, and you find Defendant did not make Defendant's decision because of Plaintiff's protected activity, you must not second guess that decision, and you must not substitute your own judgment for Defendant's judgment — even if you do not agree with it.

**Deleted:** did not terminate Plaintiff's employment

For the fourth element, you must decide whether Defendant's acts were the proximate cause of damages that Plaintiff sustained. Put another way, you must decide, if Defendant had not <u>terminated Plaintiff's employment</u>, would these damages have occurred.

If you find Defendant's acts were the proximate cause of damages that Plaintiff incurred, you must determine the amount of damages.

3C Fed. Jury Prac. & Instr. § 171:25 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection: Defendant's proposed jury instructions makes several references to discrimination, which is not at issue here. Defendant also improperly frames Plaintiff's protected activity as limited to a complaint that Conway sexually harassed her. Plaintiff also complained that Conway sexual harassed other employees and that he was actively retaliating against Ms. Kubas after he found out that she was complaining about him.**

**Jury instructions should be accurate, impartial, and free from argument. This jury instruction improperly alludes to Defendant's claim that Plaintiff voluntarily resigned her employment, whereas Defendant has previously acknowledged that Ms. Kubas was terminated. *See* Summary Judgment Motion at 27 ("In his affidavit, Chisholm states that Plaintiff's employment 'was terminated because she was in effect stealing from the Gym by being clocked in while attending to personal matters and not performing work on behalf of Rockwell Fitness.' (Chisholm Aff. ¶ 34, ECF No. 53-1 at 68)"); *see also*, Def. Ans. To Interrogatory No. 5 ("Q: Identify and describe in detail Defendant's purported legitimate and non-discriminatory reason(s) for terminating Plaintiff. ANSWER: The decision to terminate Plaintiff's employment arose out of the discovery that she was falsifying her time records again by clocking in and recording hours worked when she was taking care of personal matters and not working for Rockwell, after previously being instructed not to do so and to strictly comply with company timekeeping policy. Chisholm even gave Plaintiff the opportunity to give an explanation for why she was clocked in while not working, but she failed to provide one, or even attempt to make a valid explanation. Plaintiff's employment ended because she falsified time – not because of retaliation.").**

**Defendant's Reply: Please see updated proposed language which incorporates Plaintiff's objections.**

Deleted: "

Instruction No. 5

**<u>Proximate Cause</u>**

Plaintiff must prove that Defendant would not have <u>terminated Plaintiff's employment</u> in the absence of—in other words, but for—Plaintiff's <u>complaint of sexual harassment by a co-worker against her and other co-workers and Plaintiff's complaint that the co-worker was retaliating against her for complaining of sexual harassment</u>. Plaintiff does not have to prove that <u>Plaintiff's complaint of sexual harassment by a co-worker against her and other co-workers and Plaintiff's complaint that the co-worker was retaliating against her for complaining of sexual harassment</u> was the only reason Defendant <u>terminated Plaintiff's employment</u>. But Plaintiff must prove that Defendant decision to <u>terminate Plaintiff's employment</u> would not have occurred in the absence of such <u>retaliation</u>.

3C Fed. Jury Prac. & Instr. § 171:62 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection: Defendant's proposed jury instructions makes several references to discrimination, which is confusing.  Defendant also improperly frames Plaintiff's protected activity as limited to a complaint that Conway sexually harassed her.  Plaintiff also complained that Conway sexual harassed other employees and that he was actively retaliating against Ms. Kubas after he found out that she was complaining about him.**

**Defendant's Reply: Please see updated proposed language which incorporates Plaintiff's objections.**

**Deleted:** discrimination

Instruction No. 6

<u>**Defenses**</u>

If, after considering Plaintiff's evidence and Defendant's rebuttal of that evidence, you find Plaintiff has established each and every element of Plaintiff's claim, only then should you concern yourselves with the defenses offered by Defendant.

With regard to any of Defendant's defenses, remember Plaintiff must disprove the defense by a preponderance of the evidence. In other words, Defendant establishes the defense unless you find the evidence that opposes the existence of that defense has more convincing force to you than the evidence that supports it.

If you find Plaintiff has successfully rebutted the defense, then you must find for Plaintiff. If you find Defendant has established Defendant's defense, then you must find for Defendant.

3C Fed. Jury Prac. & Instr. § 171:70 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection:  Defendant's proposed jury instruction is confusing because it references "Defendant's defenses" when it should refer to defendant's legitimate and nondiscriminatory reason for terminating Plaintiff, which is referenced in Defendant's proposed Instruction No. 7.  Plaintiff respectfully asserts that her proposed Instruction No. 7 (Pretext), derived from the ABA Model Jury Instructions Employment Litigation 1.02[3][a], contains a better instruction concerning how Plaintiff can rebut Defendant's legitimate and non-discriminatory reason for terminating her.  *See* Pl. Proposed Jury Instruction No. 7 Pretext ("Plaintiff may also prove, by a preponderance of the evidence, through direct or circumstantial evidence, that the defendant's stated reason to terminate her is false or a pretext for [discrimination] retaliation by persuading you that the defendant's offered reason is not believable or that it was not the true reason why it fired Plaintiff.  If you find that the defendant's offered reason was false or pretextual, the law allows you to infer that the defendant had a [discriminatory] retaliatory motive and you may find for the plaintiff for this reason alone, although you are not required to do so.").**

**Defendant's Reply: This instruction deals with the larger concept of defenses on a conceptual basis to frame the issue for the jury, with Defendant's next proposed jury instruction dealing specifically with the defense of "legitimate non-discriminatory reason for termination." It is not inappropriate in the slightest to inform the jury of the general concept of defenses and the procedure that should be utilized for defenses and then instruct the jury on the specific defense.**

**Instruction No. 7**

**<u>Legitimate nondiscriminatory reasons for employment decision</u>**

You must also consider any legitimate, nondiscriminatory reason or explanation stated by Defendant for its decision. If you determine Defendant has stated such a reason, then you must decide in favor of Defendant unless Plaintiff proves by a preponderance of the evidence that the stated reason was not the true reason but was only a pretext or excuse for Defendant's retaliation against Plaintiff because of plaintiff's complaint of sexual harassment by a co-worker <u>against her and other co-workers and Plaintiff's complaint that the co-worker was retaliating against her for complaining of sexual harassment</u>.

3C Fed. Jury Prac. & Instr. § 171:77 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection: Defendant also improperly frames Plaintiff's protected activity as limited to a complaint that Conway sexually harassed her.  Plaintiff also complained that Conway sexual harassed other employees and that he was actively retaliating against Ms. Kubas after he found out that she was complaining about him.**

**Defendant's Reply: Please see updated proposed language which incorporates Plaintiff's objections.**

**Instruction No. 8**

**<u>Business Judgment</u>**

Even if an employer is mistaken and its business judgment is wrong, an employer is entitled to make its own policy and business judgment. An employer may make those employment decisions as it sees fit, as long as it is not unlawful.

In determining whether Defendant's stated reason for its actions was a pretext for <u>retaliation</u>, you may not question Defendant's business judgment. Pretext is not established just because you disagree with the business judgment of Defendant unless you find that Defendant's reason was a pretext for <u>retaliation</u>.

3C Fed. Jury Prac. & Instr. § 171:75 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection:  The proposed jury instruction is duplicative of other instructions that reference Defendant's legitimate and non-discriminatory reason for terminating Plaintiff and it is potentially confusing, as it could lead jurors to believe that its purported "business judgment" was a permissible basis for retaliation.**

**Defendant's Reply:  Defendant believes that this instruction is neither duplicative nor confusing.  Federal Jury Practice & Instructions has laid out each of these instructions for separate purposes.  This instruction provides the jury with further instructions regarding pretext and motive.**

**Instruction No. 9**

**<u>Compensatory Damages</u>**

If you find Defendant retaliated against Plaintiff based on Plaintiff's <u>complaint of sexual harassment by a co-worker</u> <u>against her and other co-workers and Plaintiff's complaint that the co-worker was retaliating against her for complaining of sexual harassment</u>, then you must determine an amount that is fair compensation for Plaintiff's damages. You may award compensatory damages only for injuries Plaintiff proves were caused by Defendant's allegedly wrongful conduct.

The damages that you award must be fair compensation—no more and no less.

You may award damages for any pain, suffering or mental anguish that Plaintiff experienced as a consequence of Defendant's <u>termination of her employment because of Plaintiff's complaint of sexual harassment by a co-worker</u> <u>against her and other co-workers and Plaintiff's complaint that the co-worker was retaliating against her for complaining of sexual harassment</u>. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that Plaintiff prove the amount of Plaintiff's losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection: Defendant's proposed instruction improperly frames Plaintiff's protected activity as limited to a complaint that Conway sexually harassed her. Plaintiff also complained about Conway's sexual harassment of other employees and that he was actively retaliating against Ms. Kubas after he found out that she was complaining about him.**

**Defendant's Reply: Please see updated proposed language which incorporates Plaintiff's objections.**

**Instruction No. 10**

**<u>Nominal Damages</u>**

If you find in favor of Plaintiff under Instruction No. ____, but you find Plaintiff's damages have no monetary value, then you must return a verdict for Plaintiff in the nominal amount of one dollar.

3C Fed. Jury Prac. & Instr. § 171:93 (6th ed.)(Westlaw 2023).

**Plaintiff's Objection: None.**

Instruction No. 11

**<u>Punitive Damages</u>**

Plaintiff claims the acts of Defendant were done with malice or reckless indifference to the Plaintiff's federally protected rights so as to entitle Plaintiff to an award of punitive damages in addition to compensatory damages.

An award of punitive damages would be appropriate in this case only if you find for Plaintiff and then further find from a preponderance of the evidence:

> First:
> That an owner of Defendant personally acted with malice or reckless indifference to Plaintiff's federally protected rights, and
> Second: That Defendant itself had not acted in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace.

If you find that punitive damages should be assessed against Defendant, you may consider the financial resources of Defendant in fixing the amount of such damages.

Punitive damages must bear a reasonable relationship to plaintiff's actual injury. However, there is no simple way to link punitive to compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all relevant factors. These include:
1. The impact or severity of Defendant's conduct.
2. The amount of time Defendant conducted itself in this manner.
3. The amount of compensatory damages.
4. The potential profits Defendant may have made from Defendant's conduct.
5. The attitudes and actions of Defendant's Owner(s) after the misconduct was discovered.
6. The effect of the damages award on Defendant's financial condition.

While you may consider evidence of actual harm to nonparties as part of your determination of reprehensibility, you may not use it to punish a Defendant for injury the Defendant may have inflicted upon nonparties or those whom they directly represent.

3C Fed. Jury Prac. & Instr. § 171:94 (6th ed.)(Westlaw 2023).

**Deleted:** [In some cases punitive damages may be awarded for the purpose of punishing a Defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.]

**Deleted:** [higher management official]

**Deleted:** [top management]

**Plaintiff's Objection:  Plaintiff objects to the inclusion of "However, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace."  First, Defendant cannot separate itself from the actions of its General Manager, Devin Conway.  There is substantial evidence that Mr. Chisholm and Mr. Conway worked together to craft Defendant's defense and ensure a consistent narrative by reviewing affidavits and other evidence in this case. See Pl Ex. 24, 331B (Text Message Chisholm to Conway: "[I] appreciate you putting your eyes on it and trying to point out all of the contradictions and false statements…"); Ex. 27 (Email containing Conway's analysis of the complaint); Ex. 34 (7/25/19 Email Chisholm to Conway attaching "Kimberly Kubas Timeline.").  Conway was intimately involved in Plaintiff's termination: he told Chisholm about the rumor circulating at the gym that he was getting fired due to Ms. Kubas's complaints, which infuriated Chisholm, and that Ms. Kubas had clocked in remotely on the day that she was terminated. Second, there is also no valid policy or program that Defendant used or relied on to prevent unlawful harassment.  *See* Plaintiff's Motion in Limine concerning Defendant's Employee Handbook.  Third, the reference to "[higher management official] owner of Defendant personally acted with malice or reckless indifference to Plaintiff's federally protected rights" is confusing.  Defendant cannot separate themselves into categories like "higher management official" especially when Mr. Conway was the highest rank manager at Defendant's gym.**

**Defendant's Reply:  Defendant was utilizing the Court's noted method of removing language from the model instruction using brackets in the above instruction.  All language which Plaintiff has objected to was intended to have been removed from the model interrogatory.  For clarification, Defendant has stricken that language in the above red-line.**

Respectfully submitted,

\_\_\_\_\_ / s / _____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

# ATTACHMENT 8

# Defendant's Case Specific *Voir Dire* Questions

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | |
|---|---|
| **KIMBERLY KUBAS** | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.  1:20-cv-2456 (MJM) |
| | ) |
| **331B, LLC** | ) |
| **(D/B/A ROCKWELL FITNESS)** | ) |
| | ) |
| Defendant**.** | ) |
| | ) |

**ATTACHMENT 8
<u>DEFENDANT'S CASE SPECIFIC VOIR DIRE QUESTIONS</u>**

1.      Have you or anyone close to you ever had a serious or legal dispute with an employee or employer?

Plaintiff's Objection:

2.      Have you or anyone close to you ever felt discriminated against at work because of your age, race, gender, or national origin?

Plaintiff's Objection:

3.      Have you ever filed a grievance or claim regarding any employment related issues?

Plaintiff's Objection:

4.      Do you feel you have ever been denied a promotion or a job within a company based on gender, race, national origin, religion, age, etc?

Plaintiff's Objection:

5.      Do you feel you have made complaints to your employer which go unheard or are ignored?

Plaintiff's Objection:

6.      Have you ever had any training (legal, human resources, etc.) as it pertains to non-discrimination or retaliation in the workplace?

Plaintiff's Objection:

7.      Aside from issues of discrimination, have you ever felt treated unfairly at work for any other reason?

Plaintiff's Objection:

8.      Have you heard, or read anything suggesting that Rockwell Fitness is either a good company to work for or a bad company to work for?

Plaintiff's Objection:

9.      The Judge will instruct you on the law that will guide your decisions.  The Judge may instruct you that a corporation has a right to make decisions – be they right or wrong, good or bad, sound or unsound, fair or unfair – as long as those decisions are not discriminatory or retaliatory or otherwise unlawful.  Would you have trouble following such an instruction based on some life experience or feeling about employers or corporations?

Plaintiff's Objection:

10.     If, after hearing all the evidence, you determine that Plaintiff has not proven a causal connection to retaliation against a protected activity, but you think the manner in which Plaintiff was terminated was unfair (in other words there was something about the termination that you did not like), would you have any difficulty finding that there was no retaliation?

Plaintiff's Objection:

11.     Do you think you would be tempted to substitute your own views of company police for Rockwell's policy?

Plaintiff's Objection:

Respectfully submitted,


_____/ s /_____

Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

**ATTACHMENT 8a**

Plaintiff's Objections and Defendant's Response
to Defendant's Case Specific *Voir Dire*
Questions

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| **KIMBERLY KUBAS** | | ) |
| | Plaintiff, | ) |
| | | ) |
| | v. | ) Civil Action No.  1:20-cv-2456 (MJM) |
| | | ) |
| **331B, LLC** | | ) |
| **(D/B/A ROCKWELL FITNESS)** | | ) |
| | | ) |
| | Defendant. | ) |
| _____ | | ) |

**ATTACHMENT 8**
**DEFENDANT'S CASE SPECIFIC VOIR DIRE QUESTIONS**
**[WITH PLAINTIFF'S OBJECTIONS]**


1.      Have you or anyone close to you ever had a serious or legal dispute with an employee or employer?

**Plaintiff's Objection: None.**

2.      Have you or anyone close to you ever felt discriminated against at work because of your age, race, gender, or national origin?

Plaintiff's Objection: **The crux of this case is retaliation so the issues of age, race, gender, or national origin are not relevant, confusing and should not be used to screen or disqualify potential jurors.**

**Defendant's Reply: While the issues of retaliation and discrimination are not one in the same, panelists that have experienced discrimination in the workplace are very likely to be bias toward a victim of retaliation due to the similarities between the unlawful practices.**

3.      Have you ever filed a grievance or claim regarding any employment related issues?

**Plaintiff's Objection: None.**

4.      Do you feel you have ever been denied a promotion or a job within a company based on gender, race, national origin, religion, age, etc?

Plaintiff's Objection: **The crux of this case is retaliation and termination so the issues of age, race, gender, national origin, and promotion are not relevant, confusing and should not be used to screen or disqualify potential jurors.**

**Defendant's Reply: While the issues of retaliation and discrimination are not one in the same, panelists that have experienced discrimination in the workplace are very likely to be bias toward a victim of retaliation due to the similarities between the unlawful practices.**

5.      Do you feel you have made complaints to your employer which go unheard or are ignored?

**Plaintiff's Objection: This question is too generic will likely elicit responses from a vast majority of potential jurors, such that it is not an effective means to screen for potential disqualification or further inquiry.**

**Defendant's Reply: Plaintiff alleges here that she made complaints of sexual harassment and was retaliated against.  Individual panelists that feel as if they've made complaints in the workplace and were ignored are likely to exhibit bias. This bias is likely directed at Defendant as an employer. This matter is relevant and should be explored.**

6.      Have you ever had any training (legal, human resources, etc.) as it pertains to non-discrimination or retaliation in the workplace?

Plaintiff's Objection: **None.**

7.      Aside from issues of discrimination, have you ever felt treated unfairly at work for any other reason?

**Plaintiff's Objection: This is also a very generic question and will likely elicit responses from a vast majority of potential jurors, such that it is not an effective question to screen for potential disqualification or further inquiry.**

**Defendant's Reply: Individual panelists that feel as if they've been treated unfairly in the workplace are likely to exhibit bias. This bias is likely directed at Defendant as an employer.  This matter is relevant and should be explored.**

8.      Have you heard, or read anything suggesting that Rockwell Fitness is either a good company to work for or a bad company to work for?

**Plaintiff's Objection: None**.

9.      The Judge will instruct you on the law that will guide your decisions.  The Judge may instruct you that a corporation has a right to make decisions – be they right or wrong, good or bad, sound or unsound, fair or unfair – as long as those decisions are not discriminatory or retaliatory or otherwise unlawful.  Would you have trouble following such an instruction based on some life experience or feeling about employers or corporations?

> **Plaintiff's Objection: This question depends on whether the Court will include such an instruction and is too specific to the Defendant.  A better question is whether any juror feels like he or she will not be able to follow the instructions given by the Court as it pertains to reaching a verdict in this case.**

> **Defendant's Reply: Plaintiff's proposed voir dire question is too generic and is not likely to lead to relevant information on whether an individual panelist is likely to express bias.**

10.     If, after hearing all the evidence, you determine that Plaintiff has not proven a causal connection to retaliation against a protected activity, but you think the manner in which Plaintiff was terminated was unfair (in other words there was something about the termination that you did not like), would you have any difficulty finding that there was no retaliation?

> **Plaintiff's Objection: This is an improper and confusing question for voir dire as the jury has not been instructed as to the elements of Plaintiff's retaliation claim.  If the Court were to ask this question, the converse should be asked as well to ensure fairness.**

> **Defendant's Reply: If Plaintiff seeks to ask the converse of the question, Defendant does not object and believes this line of questioning important to determining potential bias of panelists.**

11.     Do you think you would be tempted to substitute your own views of company police for Rockwell's policy?

> **Plaintiff's Objection: This is a confusing and misleading question because even if the company has a policy (the specific policy is not even identified), that does not preclude a verdict in Plaintiff's favor, nor does it mean that the juror is substituting his or her own view over the gym's policy.**

> **Defendant's Reply: Withdrawn.**

Respectfully submitted,


_____ / s / _____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

# ATTACHMENT 9

# Defendant's Proposed Verdict Form with Plaintiff's Objections

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| **KIMBERLY KUBAS** | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No.  1:20-cv-2456 (MJM) |
| | ) |
| **331B, LLC** | ) |
| **(D/B/A ROCKWELL FITNESS)** | ) |
| | ) |
| Defendant**.** | ) |
| | ) |

## DEFENDANT'S PROPOSED SPECIAL VERDICT FORM
## WITH PLAINTIFF'S OBJECTIONS

Do you find by a preponderance of the evidence that:

1.      That Plaintiff Kimberly Kubas was terminated from her employment by Defendant 331B, LLC?

   Answer Yes _____ or No _____

2.      That Plaintiff's complaint of sexual harassment by a co-worker was the but for cause for Defendant 331B, LLC to take that action?

   Answer Yes _____ or No _____

   **Note:**      If you answered "No" to either Question No. 1 or Question No. 2 you need not answer the remaining question.

3.      That Defendant 331B, LLC had a legitimate, nondiscriminatory reason to terminate the employment of Plaintiff Kimberly Kubas.

   Answer Yes _____ or No _____

   **Note:**      If you answered "Yes," to Question No. 3, you need not answer the remaining questions.]

4.      That Plaintiff Kimberly Kubas should be awarded damages to compensate for a net loss of wages and benefits to the date of trial?

   Answer Yes _____ or No _____

If your answer is "Yes," in what amount? $_____?

5.      That Plaintiff Kimberly Kubas should be awarded damages to compensate for emotional pain and mental anguish?

Answer Yes _____ or No _____

If your answer is "Yes," in what amount? $_____?

6.
(a) That an owner of Defendant 331B, LLC acted with malice or reckless indifference to Plaintiff's federally protected rights?

Answer Yes _____ or No _____

(b) If your answer is "Yes," that Defendant 331B, LLC itself did act in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace?

Answer Yes _____ or No _____

(c) If your answer is "Yes," what amount of punitive damages, if any, should be assessed against Defendant 331B, LLC? $_____.


Respectfully submitted,


_____/ s /_____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

## Plaintiff's Objections to Defendant's Proposed Verdict Sheet

Defendant's proposed form misapplies the law, omits key facts and is both prejudicial and confusing.  With respect to question 1, the jury is asked whether Ms. Kubas "was terminated from her employment" even though this is a settled issue and is the law of the case.  *See* Summary Judgment Order at 13 ("According to Chisholm, Plaintiff's employment 'was terminated because she was in effect stealing from the Gym by being clocked in while attending to personal matters and not performing work on behalf of Rockwell Fitness.' (Chisholm Aff. ¶ 34, ECF No. 53-1 at 68)"); *see also*, Def. Ans. To Interrogatory No. 5 (5. Identify and describe in detail Defendant's purported legitimate and non-discriminatory reason(s) for terminating Plaintiff. ANSWER: The decision to terminate Plaintiff's employment arose out of the discovery that she was falsifying her time records again by clocking in and recording hours worked when she was taking care of personal matters and not working for Rockwell, after previously being instructed not to do so and to strictly comply with company timekeeping policy. Chisholm even gave Plaintiff the opportunity to give an explanation for why she was clocked in while not working, but she failed to provide one, or even attempt to make a valid explanation. Plaintiff's employment ended because she falsified time – not because of retaliation.").  In short, Mr. Chisholm's own affidavit that was submitted in support of Defendant's Motion for Summary Judgment and Defendant's responses to Interrogatory No. 5 plainly states that Ms. Kubas was terminated from her position.  Asking the jury to answer this question is confusing and unnecessary.

Defendant's second question, "That Plaintiff's complaint of sexual harassment by a co-worker was the but for cause for Defendant 331B, LLC to take that action?" omits a key issue in this case, specifically, that Ms. Kubas reported that Conway had previously sexually harassed her

and others *and that he was retaliating* against her after he found out that she had complained

about his sexual harassment.  After Ms. Kubas reported Mr. Conway to the Defendant, she was

terminated shortly thereafter.

The third question is misleading, "that Defendant 331B, LLC had a legitimate,

nondiscriminatory reason to terminate the employment of Plaintiff Kimberly Kubas," because it

fails to account for whether Plaintiff has offered evidence of pretext to rebut Defendant's

articulated justification for her termiantion.  This question also misstates the law because

Plaintiff is required to show "but for" causation, whereas, as phrased, Defendants' question

makes it appear that if it articulated a legitimate non-discriminatory reason for her termination,

then it is not liable for damages.  See Summary Judgment Order at 25 ("'A plaintiff may attempt

to demonstrate that a protected activity caused an adverse action [at the prima facie stage]

'through two routes.' *Id*. at 123 (quoting *Johnson v. United Parcel Serv., Inc*., 839 F. App'x 781,

783–84 (4th Cir. 2021)). The first route would require the plaintiff to establish facts 'suggest[ing]

that the adverse action occurred because of the protected activity.' *Id*. (quoting Johnson, 839 F.

App'x at 783–84)").

With respect to the fourth question concerning back wages, this issue is in within the

province of the Court, not the jury to award, therefore it is an improper question for the jury.

*Hylind v. Xerox Corp.*, 481 F. App'x 819, 824 (4th Cir. 2012) ("The determination of back pay is

an equitable matter for the judge, not the jury."); *Duke v. Uniroyal Inc*., 928 F.2d 1413, 1424

(4th Cir. 1991) (holding that an award of compensation for future lost earnings, or "front pay," is

an equitable matter for the court, not the jury); *Lutz v. Glendale Union High Sch*., 403 F.3d 1061,

1069 (9th Cir. 2005) (holding that an award of back pay under Title VII "remains an equitable

remedy to be awarded by the district court in its discretion"); *Pals v. Schepel Buick & GMC Truck, Inc*., 220 F.3d 495, 500-01 (7th Cir. 2000) (same, with respect to back pay and front pay).

With respect to question 6, there are much simpler and less confusing, redundant or prejudicial ways of asking the jury to determine whether punitive damages are appropriate in this case.  Question 6(b) is duplicative of 6(a) because, presumably, if the jury found that Defendant's made good faith attempt to comply with the law, it could not find that it acted with malice or reckless indifference.  Also, it is confusing that if the jury answers "yes" to question 6(b), then it should not proceed to the final question of the amount of punitive damages to award.

In general, Defendant's verdict form is unnecessarily complicated and misstates the law. It also obviates the need for jury instructions which are designed to instruct the jury as to the law so that it can answer clear questions iin the verdict form regarding Defendant's liability and the amount of damages to award, if appropriate.

# ATTACHMENT 9a

# Defendant's Response to Plaintiff's Objections to Defendant's Proposed Verdict Form

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| **KIMBERLY KUBAS** | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No.  1:20-cv-2456 (MJM) |
| | ) |
| **331B, LLC** | ) |
| **(D/B/A ROCKWELL FITNESS)** | ) |
| | ) |
| Defendant**.** | ) |
| _____ | ) |

**DEFENDANT'S PROPOSED SPECIAL VERDICT FORM**
**WITH PLAINTIFF'S OBJECTIONS**

Do you find by a preponderance of the evidence that:

> **Deleted:** 1.→ That Plaintiff Kimberly Kubas was terminated from her employment by Defendant 331B, LLC?¶
> ¶
> Answer Yes _____ or No _____
>
> **Deleted:** 2

1.  That Plaintiff's complaint of sexual harassment by a co-worker against herself and others and her complaint that the co-worker was retaliating against her for complaining of sexual harassment was the but for cause for Defendant 331B, LLC to take that action?

    Answer Yes _____ or No _____

    **Note:**   If you answered "No" to Question No. 1 you need not answer the remaining question.

> **Deleted:** either
>
> **Deleted:** or Question No. 2
>
> **Deleted:** 3

2.  That Defendant 331B, LLC had a legitimate, nondiscriminatory reason to terminate the employment of Plaintiff Kimberly Kubas.

    Answer Yes _____ or No _____

3.  That Defendant 331B, LLC's legitimate, nondiscriminatory reason to terminate the employment of Plaintiff Kimberly Kubas was a pretext for retaliation.

    Answer Yes _____ or No _____

    **Note:**   If you answered "No," to Question No. 3, you need not answer the remaining questions.]

4.  That Plaintiff Kimberly Kubas should be awarded damages to compensate for a net loss of wages and benefits to the date of trial?

1

Answer Yes _____ or No _____

If your answer is "Yes," in what amount? $_____?

5.      That Plaintiff Kimberly Kubas should be awarded damages to compensate for emotional pain and mental anguish?

Answer Yes _____ or No _____

If your answer is "Yes," in what amount? $_____?

6.

(a) That an owner of Defendant 331B, LLC acted with malice or reckless indifference to Plaintiff's federally protected rights?

Answer Yes _____ or No _____

(b) If your answer is "Yes," that Defendant 331B, LLC itself did act in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace?

Answer Yes _____ or No _____

© If your answer is "Yes," what amount of punitive damages, if any, should be assessed against Defendant 331B, LLC? $_____.

Respectfully submitted,

_____/ s /_____
Jason C. Buckel, Bar Number: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington, Street
Cumberland, Maryland 21502
Tel: (301) 759-3700
Email: lbeeman@blpblaw.com
*Counsel for Defendant*

2

3

**Plaintiff's Objections to Defendant's Proposed Verdict Sheet**

Defendant's proposed form misapplies the law, omits key facts and is both prejudicial and confusing.  With respect to question 1, the jury is asked whether Ms. Kubas "was terminated from her employment" even though this is a settled issue and is the law of the case.  *See* Summary Judgment Order at 13 ("According to Chisholm, Plaintiff's employment 'was terminated because she was in effect stealing from the Gym by being clocked in while attending to personal matters and not performing work on behalf of Rockwell Fitness.' (Chisholm Aff. ¶ 34, ECF No. 53-1 at 68)"); *see also*, Def. Ans. To Interrogatory No. 5 (5. Identify and describe in detail Defendant's purported legitimate and non-discriminatory reason(s) for terminating Plaintiff. ANSWER: The decision to terminate Plaintiff's employment arose out of the discovery that she was falsifying her time records again by clocking in and recording hours worked when she was taking care of personal matters and not working for Rockwell, after previously being instructed not to do so and to strictly comply with company timekeeping policy. Chisholm even gave Plaintiff the opportunity to give an explanation for why she was clocked in while not working, but she failed to provide one, or even attempt to make a valid explanation. Plaintiff's employment ended because she falsified time – not because of retaliation.").  In short, Mr. Chisholm's own affidavit that was submitted in support of Defendant's Motion for Summary Judgment and Defendant's responses to Interrogatory No. 5 plainly states that Ms. Kubas was terminated from her position.  Asking the jury to answer this question is confusing and unnecessary.

Defendant's second question, "That Plaintiff's complaint of sexual harassment by a co-worker was the but for cause for Defendant 331B, LLC to take that action?" omits a key issue in this case, specifically, that Ms. Kubas reported that Conway had previously sexually harassed her

4

and others *and that he was retaliating* against her after he found out that she had complained about his sexual harassment.  After Ms. Kubas reported Mr. Conway to the Defendant, she was terminated shortly thereafter.

The third question is misleading, "that Defendant 331B, LLC had a legitimate, nondiscriminatory reason to terminate the employment of Plaintiff Kimberly Kubas," because it fails to account for whether Plaintiff has offered evidence of pretext to rebut Defendant's articulated justification for her termination.  This question also misstates the law because Plaintiff is required to show "but for" causation, whereas, as phrased, Defendants' question makes it appear that if it articulated a legitimate non-discriminatory reason for her termination, then it is not liable for damages.  See Summary Judgment Order at 25 ("'A plaintiff may attempt to demonstrate that a protected activity caused an adverse action [at the prima facie stage] 'through two routes.' *Id*. At 123 (quoting *Johnson v. United Parcel Serv., Inc*., 839 F. App'x 781, 783–84 (4ᵗʰ Cir. 2021)). The first route would require the plaintiff to establish facts 'suggest[ing] that the adverse action occurred because of the protected activity.' *Id*. (quoting Johnson, 839 F. App'x at 783–84)").

With respect to the fourth question concerning back wages, this issue is in within the province of the Court, not the jury to award, therefore it is an improper question for the jury. *Hylind v. Xerox Corp.*, 481 F. App'x 819, 824 (4ᵗʰ Cir. 2012) ("The determination of back pay is an equitable matter for the judge, not the jury."); *Duke v. Uniroyal Inc*., 928 F.2d 1413, 1424 (4ᵗʰ Cir. 1991) (holding that an award of compensation for future lost earnings, or "front pay," is an equitable matter for the court, not the jury); *Lutz v. Glendale Union High Sch*., 403 F.3d 1061, 1069 (9ᵗʰ Cir. 2005) (holding that an award of back pay under Title VII "remains an equitable

remedy to be awarded by the district court in its discretion"); *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500-01 (7th Cir. 2000) (same, with respect to back pay and front pay).

With respect to question 6, there are much simpler and less confusing, redundant or prejudicial ways of asking the jury to determine whether punitive damages are appropriate in this case. Question 6(b) is duplicative of 6(a) because, presumably, if the jury found that Defendant's made good faith attempt to comply with the law, it could not find that it acted with malice or reckless indifference. Also, it is confusing that if the jury answers "yes" to question 6(b), then it should not proceed to the final question of the amount of punitive damages to award.

In general, Defendant's verdict form is unnecessarily complicated and misstates the law. It also obviates the need for jury instructions which are designed to instruct the jury as to the law so that it can answer clear questions in the verdict form regarding Defendant's liability and the amount of damages to award, if appropriate.

### Defendant's Reply to Plaintiff's Objections

Defendant has incorporated a number of Plaintiff's objections into the red-lined version of Defendant's Proposed Verdict Form. Defendant has based its Verdict Form on a model included among Federal Jury Practice and Instructions, by O'Malley, et al. and believes it to be legally sufficient and appropriate. 3C Fed. Jury Prac. & Instr. § 171:101 (6th ed.)(Westlaw 2023).

6