UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **KIMBERLY KUBAS** )<br>Plaintiff, )<br>)<br>v. )<br>)<br>**331B, LLC** )<br>**(D/B/A ROCKWELL FITNESS)** )<br>)<br>Defendant. )<br>) | Civil Action No. 1:20-cv-2456 (MJM) |

## PLAINTIFF'S OMNIBUS MOTION IN LIMINE

### TABLE OF CONTENTS

1. To preclude Defendant from offering any evidence or otherwise alluding to offers of settlement………………………………………………………………………………...2

2. To preclude Defendant and witnesses from offering personal opinions on the merits of the lawsuit or the credibility Plaintiff ……………………………………………….4

3. To preclude testimony from Messrs. Chisholm and Saab conflating their status as public officials and purported duty to tell the truth and ensure safety and fairness of their employees……………………………………………………………………………….5

4. To exclude evidence of Defendant's Employee Handbook ………………………….7

1

Plaintiff, by and through her undersigned counsel, respectfully submits her omnibus motion *in limine* to exclude certain evidence as discussed herein.

## **Legal Standards**

"Motions in limine are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *United States v. Wall*, No. SAG-19-0500, 2022 U.S. Dist. LEXIS 77347 (D. Md. Apr. 28, 2022). Motions in limine aid the trial process by enabling the Court to rule in advance on the relevance of certain forecasted evidence, as to issues that are set for trial. "A motion in limine to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence….The party seeking to introduce evidence bears the burden of establishing relevancy. Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *United States v. Mosby*, No. 22-cr-00007-LKG, 2022 U.S. Dist. LEXIS 163001 (D. Md. Sep. 8, 2022)

"The moving party must "demonstrate why certain categories of evidence should (or should not) be introduced at trial and … direct the Court to specific evidence, by pointing to specific parts of the record, that would favor or disfavor the introduction of that particular category of evidence." *United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12 (D.D.C. 2008).

In deference to their familiarity with the details of the case and greater experience in evidentiary matters, trial judges are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility. *United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004).

**Motion in *Limine* No. 1:**   To preclude Defendant from offering any evidence or otherwise alluding to offers of settlement.

Rule 408 Compromise Offers and Negotiations, in relevant part, precludes a party, from introducing evidence in order "to prove or disprove the validity or amount of a disputed claim from offering evidence of…(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim…" Fed. R. Evid. 408.  There are several communications (emails and text messages) wherein Brian Chisholm, co-owner of Rockwell Fitness, shared Plaintiff's offer of settlement with witnesses in this case.  *See* Ex. 1 331B 1300 (Chisholm text message exchange with Bree Moore: "my lawyer sent an email saying Kubas lawyer reached back out and would still like a settlement around 100K"). In some instances, Plaintiff's settlement offer was shared in the context of depicting the lawsuit as unmeritorious and painting plaintiff in a negative light. *See* Ex. 2 331B 291-299 (Chisholm to Riley Mayer: "She's asking for $100,000 and the lawsuit is almost 100% lies as you will see when I send it to you." Mayer's response, "She is NUTS lol." Chisholm: "Yes I agree but her insanity is costing me lots of time, money and peace of mind.").

Plaintiff requests that the Court preclude Defendant from offering any testimony, evidence or otherwise alluding to offers of settlement in this case.  Should any party seek to introduce documents containing any offer of settlement, the document should be redacted accordingly to remove any reference to the offer and any responses related to the offer.  Rule 408 has limited exceptions allowing admission of this evidence "for another purpose, such as proving a witness's bias or prejudice..." Fed. R. Evid. 408(b).  In the event that either party seeks to introduce this evidence pursuant to a 408(b) exception, Plaintiff requests that the Court require

3

the offering party to seek approval of the Court prior to raising the issue or introducing such evidence before the jury.

**Motion in *Limine* No. 2:**   **To preclude Defendant and witnesses from offering personal opinions on the merits of the lawsuit or the credibility of Plaintiff.**

As exemplified in the above referenced communication between Mr. Chisholm and Riley Mayer,[1] Ms. Mayer provided her opinion of Ms. Kubas's credibility ("She is NUTS lol") which is improper evidence as it invades the province of the jury. Ex. 2 at 331B 299. *See Daughety v. Harvey*, No. CBD 04-2114, 2006 U.S. Dist. LEXIS 116320, at *27 (D. Md. Mar. 20, 2006) (noting that plaintiff's credibility is an issue reserved for the jury); *Hale v. Mayor of Balt. City*, No. 20-cv-00503-SAG, 2022 U.S. Dist. LEXIS 22324, at *29 (D. Md. Feb. 8, 2022) ("…it is for the jury to assess the credibility of Plaintiff's testimony"); *Munoz v. Williams*, No. 21-cv-22801, 2022 U.S. Dist. LEXIS 205197, at *15 (S.D. Fla. Nov. 10, 2022) (granting plaintiff's motion in limine that no witness shall provide their opinion about plaintiff's credibility or the credibility of any other witness).

In the same text message exchange, after Mayer reviewed the complaint, she texted Chisholm, "Thanks I could not believe what I was reading [sic] so ridiculous." Ex 2. At 331B 298. Ms. Mayer, and any other witness, should not be allowed to testify as to their personal opinions on the merits of Ms. Kubas's lawsuit. *See Ogilvie v. Swank*, No. 2:14-cv-354-SPC-, 2016 U.S. Dist. LEXIS 51639, at *6-7 (M.D. Fla. Apr. 15, 2016) (witness will not be permitted to testify as to his personal opinions on the merits of the suit).

---

[1] Ms. Mayer is not listed on either party's witness list but it is anticipated that Defendant may try to call Ms. Mayer (as well as Bobbi Beers and Bree Moore) as impeachment witnesses.

Using Ms. Mayer as an example, her opinion on the merits is speculative. She is mentioned only in one paragraph of the Complaint (Paragraph 13) concerning her experience with Devin Conway; she was not present for any of the other allegations in the complaint as she left Rockwell Fitness prior to many of the relevant events in this case. See Dkt. # 1 (Complaint) at ¶ 13. Her opinion also constitutes an inadmissible lay opinion that is not based on her own perception and would not be helpful to understand or determine a fact in issue. See Fed. R. Evid. 701. Her opinion on the merits of the lawsuit is also irrelevant because her opinion does not have a tendency to make any material facts more or less likely. See Fed. R. Evid. 401. To the extent that Defendant seeks to admit communications from Ms. Mayer or any other witness who offers an opinion concerning the merits of this lawsuit, such communications are prejudicial, have no probative value and are inadmissible hearsay because they are being offered to prove the truth of the matter asserted. See Fed. R. Evid. 801, 802. In short, "[e]valuation of evidence, drawing of inferences, and credibility determinations are within the province of the jury; not Plaintiff's past co-workers." *Miller v. Tyco Elecs., Ltd.*, No. 1:10-cv-2479, 2012 U.S. Dist. LEXIS 164531, at *18 (M.D. Pa. Nov. 14, 2012).

**Motion in *Limine* No. 3:**  **To preclude testimony from Messrs. Chisholm and Saab conflating their status as public officials and purported duty to tell the truth and ensure safety and fairness of their employees.**

It is anticipated that Defendant may attempt to refer to the statuses of Mr. Chisolm and Mr. Saab[2] as "public officials" or "public servants" and imply, that due to this status, they have a heightened duty to tell the truth and ensure the safety and equitable treatment of their employees. There are several communications wherein Brian Chisolm, co-owner of Rockwell Fitness, references his status as a public official and these heightened duties.

---

[2] Mr. Saab recently lost his election in Maryland 33rd district. His last day in office was January 11, 2023.

> I took this very seriously and shared my conversation with my business partner Sid Saab at the time. I told him I wanted to make sure to find the truth and I would dedicate all resources to uncovering this truth. **Sid and I are both public officials and as such, we are held to a higher standard and must be fully committed to the truth, safety and fairness.**

Ex. 3 (331B 662) ("Kimberly Kubas Timeline" authored by B. Chisholm) (emphasis added). *See also* Chisolm Dep. 32:12-15 ("Personally, my wife wanted to make sure that people knew what the truth was and I told her I'm a man of very high character. I have a solid reputation in this community.").

Chisholm's self-serving view of his reputation or for being committed to the truth is wholly irrelevant to the issues in dispute in this matter and should be excluded under FRE 402. Even if the evidence Defendant seeks to admit had any bearing on an issue in this case, which it does not, it should be excluded under Fed. R. Evid. 403 because its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues and misleading the jury. If Defendant was permitted to introduce evidence of Mr. Chisolm's and Mr. Saab's statuses as public officials, it would likely confuse or mislead the jury into concluding that as public officials, Mr. Chisolm and Mr. Saab are more committed to safety, truth, and fairness than the average person. Moreover, credibility determinations are within the province of the jury. "It is 'the jury's task to resolve any conflicts in the evidence and assess the credibility of witnesses.'" *Correll v. State*, 215 Md. App. 483, 502 (2013), *citing Allen v. State*, 158 Md. App. 194, 251 (2004).

Plaintiff therefore respectfully requests that the Court instruct Defendant and defense counsel not to comment on or attempt to suggest to the jury in any way that Mr. Chisolm and Mr. Saab are held to higher standards of honesty due to their state delegate positions.

**Motion in *Limine* No. 4:**     To exclude evidence of Defendant's Employee Handbook.

Defendant seek to admit an Employee Handbook (Def. Exs. 6 331B 178-198 and 12 331B 1038-1053 (the same document) ("Handbook"). This document should not be permitted into evidence because no facts have been presented that this Handbook was used while Plaintiff was employed with Defendant or that she reviewed it or agreed to its contents.  There is evidence that the Handbook was created or modified *after* Ms. Kubas was terminated on June 21, 2019.

**Defendant cannot confirm whether Plaintiff reviewed Def. Ex. 6 or 12 or that Defendant distributed it to its employees as a final binding document.**  Mr. Conway, in his deposition, admits that there have been "tons of manuals and things like that" over time. *See* Conway Dep. 122:13-14. He further suggests that, even though he was Defendant's General Manager at the time, he was not familiar with which manual was in effect during which periods of time or with what rules were contained within the manual:

> I'm not positive. Like I said it's the old logo on the actual front of it. So that logo was discontinued in – I want to say right before Brian and Sid took over because they changed the logo to blue. Previously Rockwell was orange and black. So I can't give detail if that's been updated since then or if that's the one that was in place before I changed it. I'm not really sure.

Conway Dep. 124:3-11.

Brian Chisholm was unable to testify as to any of the basic foundational issues that are required to authenticate the Handbook prior to its admission.  He claims that the Handbook requires employees to come into the gym to clock in ("To my knowledge, yes. Everybody is instructed in your employee handbook that you must come in to clock in. Chisholm Dep. 37:11-12), however, the Handbook does not contain any such provision.  Chisholm also claims that there was an email to all employees containing the Handbook but that this was sent out prior to Defendant's purchase of the gym.  Id. 37:18-38:8 ("Q. In order to do that, do you [have any]

7

evidence that a copy of that employee handbook was provided to Ms. Kubas? A. I believe we have it in an email that it went out to everybody and her – because this was obviously prior to us purchasing the business. I think in 2015 -- and I don't want to say that I have a copy because I recall somebody saying we had a copy of it -- that she had signed and confirmed email receipt of which early on in that handbook, which I reviewed several times. I think it's in section 16 falsifying of documents can lead to dismissal.").

Chisholm also references a provision in the Handbook as a basis to claim that Ms. Kubas was prohibited from taking work home with her ("Yes, but in our employee handbook it specifically says, "You must be doing Rockwell work," and I will point it out in our handbook that cannot be at a doctor's appointment. You must make arrangements. It is in the handbook. And I know you think she didn't sign the handbook. But I will grant you, she was working from 10:03 to 10:07."). There is no such policy in the Handbook, moreover, no policy from the Handbook was referenced in Defendant's responses to Interrogatory No. 3, which asked, "Identify each and every alleged instance that Defendant claims Plaintiff failed to follow Rockwell's policy for recording hours worked. For each instance identified please provide: the identity of the person(s) who made the complaint about Plaintiff's failure to follow policy, a detailed description of the complaint, any efforts to notify, discuss, counsel or discipline Plaintiff regarding the alleged failure to follow policy, and whether a record (electronic or otherwise) was made regarding the complaint and/or deficiency." Defendant answered Interrogatory No. 3 by referring to its answer to Interrogatory No. 4:[3]

---

[3] Interrogatory No. 4: Identify each and every alleged instance that Defendant claims Plaintiff "stole time" by entering more hours in Defendant's timekeeping system than she actually worked during that pay period. For each instance identified please provide: the identity of the person(s) who made the complaint about Plaintiff "stealing time," a detailed description of the complaint, and whether a record (electronic or otherwise) was made regarding the alleged incident(s).

> ANSWER NO. 4: On June 17, 2019, Plaintiff texted Conway, "Hey, Devin. Just realized my time clock is completely fucked up. Had been forgetting to clock in for meetings, work from home, etc. Can you put me down for 25 hours. I'll make any adjustments to next pay. Also, I'll be in around 1130 today. Is our call at 1?" Conway texted back, "The call is at 1. From now on you will have to clock in/out when you are here and when you are working from home. No exceptions."
>
> Plaintiff did not clock in on June 17th or 18th. After a managers' meeting on June 18, Conway asked Plaintiff why she still wasn't clocking in or out. Plaintiff was defensive and said that Conway's June 17, 2019 text message telling her to clock in and out with "no exceptions" was "hostile." Mr. Conway told her that she was responsible for clocking in and out just like every other employee and that she could not make up hours as she pleased. Plaintiff responded that she could go into the system and manually change and edit her time entries. She accused Mr. Conway of targeting her and being visibly rude to her. On June 19, 2019, Plaintiff and her co-worker Ms. Williams asked to speak with Conway and Chisholm. During the meeting, Plaintiff accused Conway of targeting her for falsifying her hours and refusing to clock in. Mr. Conway responded that if Plaintiff would simply clock in and out, there would be no problems. Plaintiff then stormed out of the meeting.
>
> Later in the evening of June 19, 2019, Chisholm received an emailed complaint from Plaintiff regarding Conway. Plaintiff asked to work from home for two weeks "due to the current situation." Chisholm granted that request but reiterated in a text to Plaintiff that she was required to clock in and out for work performed.
>
> Shortly after 10:00 AM on June 21, 2019, Chisholm told Conway that Plaintiff was taking her daughter to the doctor but would be making a bank deposit for RWF later that afternoon. Conway was surprised by this information because, as he told Chisholm, Plaintiff had clocked into work at 10:03 AM and had not yet clocked out. Chisholm was concerned that Plaintiff was clocked in but not working (she had expressly stated via text message that she was at her daughter's doctor's appointment). Chisholm disabled Plaintiff's access to her account so that he would know when she tried to access it for work. Plaintiff remained clocked in until 12:14 PM when she texted Chisholm to advise that she was at the bank trying to make a deposit.

Nowhere in Defendant's response to Plaintiff's Interrogatory No. 3 (or in its answer to No. 4) does Defendant mention any policy or handbook, let alone the Handbook it seeks to introduce at trial.

9

After Plaintiff was termianted, Defendant sought to rectify its inability to locate an acknowledgement of receipt by Plaintiff of an employee handbook in a September 2, 2020 email from Chisholm to Bree Moore, Sid Saab and others. In this email, Chisholm instructed that all new employees "must then be given our employee handbook via hard copy or electronic copy *and asked to sign an acknowledgement of receipt*. This must be added to the hard copy and the electronic folder." Ex. 4 (331B 809).

In sum, the Handbook should not be admitted under 403 because there is no evidence that Ms. Kubas received the specific handbook Defendant has included as Exhibits 6 and 12, no evidence that she reviewed it or that she executed the acknowledgement form.

Should the Court grant Plantiff's request to exclude Exhibist 6 and 12 or any mention of an Employee Handbook, it follows that Defendant should be precluded from offering any testimony that it had a written policy concerning procedures for reporting sexual harassment or clocking in and out as no such policy or procedures have been produced in discovery.

Dated: February 27, 2023

    /s/ Sundeep Hora
Sundeep Hora (Bar. No. 28208)
Emma Eckert (PHV)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW, Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

**COUNSEL FOR PLAINTIFF**