UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **KIMBERLY KUBAS** )<br>  Plaintiff, )<br> )<br> v.   )<br> )<br>**331B, LLC** )<br>**(D/B/A ROCKWELL FITNESS)** )<br> )<br>  Defendant**.** )<br> ) | Civil Action No.  1:20-cv-2456 (MJM) |

**Declaration of Sundeep Hora, Esq.**
**Counsel for Plaintiff Kim Kubas**

I, Sundeep Hora, Esquire, swear, declare and affirm under penalty of perjury, that the following Declaration submitted in support of Plaintiff's Motion for Attorney's Fees and Costs is true and accurate:

1. I am over the age of eighteen (18) and a citizen of the United States.

2. I graduated *magna cum laude* from American University's Washington College of Law ("WCL") in 2000 with a *Juris Doctorate* degree.

3. I am a duly licensed attorney practicing in the District of Columbia and Maryland. I have been a member of the D.C. Bar since June 2001 and of the Maryland Bar since December 2000. I am admitted to practice in all courts of the District of Columbia and Maryland, the U.S. Supreme Court, the D.C. Circuit, Federal Circuit, and the Fourth Circuit.

4. Upon graduating from WCL, I began practicing in September 2000 as a litigation associate with Arnold & Porter LLP in Washington, DC.  While at Arnold & Porter, I worked on a team that represented Wyeth in the "fen-phen" diet drug litigation. I was a member of several

1                                                                      **Exhibit 1**

trial teams that litigated around the country.  My duties included drafting discovery and trial motions, conducting numerous depositions of plaintiffs and "treating" physicians and assisting with trial and hearing preparation.  My *pro bono* work at Arnold & Porter included representing clients in the landmark civil rights suit, *Pigford v. Veneman*, arising out of the federal government's discriminatory denial of USDA loan programs to African American farmers.  In September 2003, I left the firm to begin a clerkship with Judge Marvin J. Garbis of the United States District Court for the District of Maryland.

5. In June 2004, I became a litigation associate with Shapiro, Lifschitz and Schram, P.C. in Washington, DC.  In August 2005, I joined Alderman & Devorsetz PLLC as a Member of the Firm.  The Firm was founded in 2003 by two of my law school classmates, Les Alderman and Cary Devorsetz.  In 2007, the Firm changed its name to Alderman, Devorsetz & Hora PLLC to add me as a named partner.  Our firm currently has three partners, two of-counsel, one associate attorney, and two legal assistants.

6. I have more than twenty-three (23) years of experience litigating complex civil cases.  For the past eighteen (18) years as a Member of Alderman, Devorsetz & Hora, my litigation practice has been primarily devoted to employment discrimination, retaliation and wage and hour cases.  I have represented more than a hundred individuals and companies in administrative and court actions, including numerous cases involving violations of federal employment discrimination and wage and hour statutes.   I direct all phases of litigation, administrative hearings and post-trial pleadings.  I have served as lead trial counsel in trials before the Equal Opportunity Employment Commission, the National Labor Relations Board, in arbitrations and before the state and federal courts in the District of Columbia and the federal court in Maryland.

7. I currently serve as the Vice-Chair of the nine member Board on Professional Responsibility for the District of Columbia. The Board includes seven attorneys and two public members who are appointed by the D.C. Court of Appeals to serve as an intermediate appellate body to adjudicate cases of attorney misconduct and to administer the attorney disciplinary system. Prior to my service as a member of the Board, from 2014 to 2018, I was a Hearing Examiner (one of a three-member panel) where I adjudicated attorney disciplinary cases for the D.C. Bar at the "trial" level.

8. From 2007 to 2011, I served as a Hearing Examiner for the Office of Police Complaints where I adjudicated complaints of police officer misconduct including harassment, inappropriate language, retaliation, unnecessary or excessive force, discrimination and failure to identify. I conducted full evidentiary hearings on the merits and drafted findings of fact and conclusions of law based on the record of investigation and evidence presented at the hearing.

9. I have achieved a Martindale peer rating of AV Preeminent, with a rating of 4.9 out of 5. My AVVO rating is 10 out of 10. I've been included in the "Super Lawyers" list every year since 2016. I have also been recognized by Best Lawyers for the past three (3) years and my firm, Alderman Devorsetz & Hora PLLC, has been recognized by the Best Law Firms for the past two (2) years: nationally we are a Tier 2 Firm in "Litigation-Labor and Employment" and in the D.C. metro area, we are ranked as a Tier 1 firm for "Employment Law – Individuals" and "Litigation-Labor and Employment."

10. A list of cases that I have appeared in before this Court and the District Court of Columbia is included as Exhibit 1A to my affidavit.

### *The Attorney-Client Relationship*

11. Ms. Kubas was referred to me by the Times Up Legal Defense Fund. The Times Up Legal Defense Fund is administered by the Legal Network for Gender Equity, which is part of the National Women's Law Center. The Times Up Legal Defense Fund performs an initial screening and then connects prospective clients with select attorneys who have been vetted and added to its attorney network. When I met with Ms. Kubas and reviewed the timeline of events, it was evident to me that she had been subjected to a retaliatory termination. She had been a valued employee for over thirteen (13) years and suddenly she was terminated within days after reporting Devin Conway's sexual harassment and retaliation to Brian Chisholm and Sid Saab, the two owners of Defendant 331B LLC. At the time I met her, which was approximately three (3) months after she was unlawfully terminated, Ms. Kubas was unemployed, did not have any money and was raising two children while living with her ex-husband's mother in her home. She had already filed an EEOC charge before meeting with us, however, we substantively amended her charge within weeks of being retained. Ms. Kubas retained our firm on a fee-shifting basis, which meant that she would not be responsible for attorneys' fees and we would only collect our fees if we were successful by way of settlement or a verdict in her favor.

12. I have found that representing clients in civil rights cases on anything other than a contingent arrangement invariably leads to a situation where the client is forced to make prejudicial litigation choices (foregoing necessary depositions for example), negotiate a resolution at a significant discount, experience economic duress, or to take significant economic risks, such as borrowing from retirement, to afford the litigation.

13. The undersigned and members of his firm believes that placing clients in such a situation is harmful to their interests and as a result, we only accept civil rights cases on a

contingency arrangement with no up-front retainer.  This means that the undersigned and his firm are not compensated until the *successful* conclusion of these cases, which often means that the undersigned is not compensated for years.  In this case, specifically, the undersigned has represented Ms. Kubas for four (4) years without compensation.

14.     One of the main reasons I decided to not rejoin Arnold & Porter or another large firm after my clerkship with Judge Garbis, was because I wanted to serve individual clients like Ms. Kubas and provide them with high-quality competent legal representation.  I am fortunate to be able to take cases on a contingency and an hourly basis for corporate clients.  My hourly work on behalf of employers and companies pays significantly higher per hour, typically $620 per hour, whereas cases in Maryland, particularly those subject to Appendix B, pay significantly lower, but the feeling of helping an individual vindicate their rights is priceless.  Ms. Kubas's retaliation claim and the harm she suffered resonated with me.  Although her monetary damages were not significant, I felt very strongly that she had been treated unlawfully and deserved justice for what she endured.  One of the hallmarks of our firm is that we only take cases that we believe we can win at trial, and we do not abandon our clients if the case does not settle.  We stood by Ms. Kubas and continued litigating her case during the global pandemic, which caused the closure of many gyms across the country, if not the world.  We also continued our representation after three (3) failed settlement opportunities and ultimately took this case to trial where we were successful on her behalf.

### *Defendant Could Have Avoided Prolonging This Litigation*

15.     As part of the process before the Equal Employment Opportunity Commission ("EEOC"), the parties are required to engage in mediation before the investigative process begins.  After our firm was retained, we filed an amended charge with the EEOC (she initially

filed her charge *pro se*), but Defendant, through counsel, declined to engage in mediation.  Hora Aff. Ex. 1B (11/8/19 Email Brody to C. Patel (EEOC mediator).

16.    After the EEOC issued a right to sue letter, Plaintiff filed suit in this court on August 25, 2020.  Prior to the start of written discovery, the parties agreed to exchange settlement offers.  On November 11, 2020, Plaintiff made an <u>opening offer</u> to resolve Ms. Kubas's claims for $53,017.00 which was inclusive of $22,777.50 in attorneys' fees that had accrued by that point.  In my settlement communication, I outlined in detail the evidence that we had gathered by that point, and that even at this early stage, it was clear that this case would likely be heard by a jury due to the existence of material facts in dispute that could not be resolved via a dispositive motion.  Hora Aff. Ex. 1C (11/11/20 Ltr. Hora to Buckel).  I wrote, in part,

> This is a strong and clear-cut case of retaliation.  Ms. Kubas was a thirteen-year employee of the gym who had no disciplinary issues prior to her abrupt termination in June of 2019 for allegedly "stealing time" and/or working from home without permission.  The documents show that Ms. Kubas reported to Mr. Chisolm on June 1, 2019 that she had experienced sexual harassment by Devin Conway and that Conway was retaliating against her in the workplace for disclosing the harassment to another employee.  Though she was assured by Mr. Chislom that the complaint would be taken seriously, the retaliation continued, prompting Ms. Kubas to make an additional complaint about retaliation from Conway on June 19, 2019 both in person to Mr. Chisolm and through an email to Messrs. Chisolm and Saab in which she stated plainly "I have felt uncomfortable around Devin since this came to light due to the fact he is singling me out.  It is without a doubt related to my bringing his sexual harassment to light."  Ms. Kubas was terminated less than two days after this email, providing unimpeachable evidence of temporal proximity.  Though the parties may dispute the reason for this termination, Ms. Kubas will testify that Chisolm openly ascribed the termination to his retaliatory animus.  He stated that he was terminating Ms. Kubas because another customer had approached him about sexual harassment complaints against Conway and that Plaintiff was "a cancer" on the business.  This alone creates a dispute of fact that will require a resolution by a jury.  In addition, Ms. Kubas's long and incident free employment with the gym will add credence to her assertion that the claims of misconduct made against her were a work of fiction.

> There is also strong evidence of pretext based on Defendant's shifting explanations for Ms. Kubas's termination. First Rockwell claimed before the Maryland Division of Unemployment Insurance in July of 2019 that Ms. Kubas's termination was because Ms. Kubas was working from home without permission. Yet, in a later interview with the Division of Unemployment Insurance and in its Position Statement before the EEOC, Rockwell claimed that Ms. Kubas was fired for falsifying her time records.  Not only are these assertions problematic because they show shifting explanations, there is no evidence demonstrating that the claims are true.  In the case of the allegation that Plaintiff was working from home without permission, Ms. Kubas has provided documentary evidence showing that Mr. Chisolm had given her permission to work from home because she was uncomfortable being around Mr. Conway and she won her unemployment compensation claim on those grounds.  As to the second assertion, Defendant has not produced time keeping records showing any alleged theft … Plaintiff wholeheartedly denies that she was stealing time from her employer and Defendant's lack of evidence in support of that claim will make it difficult for Defendant to meet its burden that Ms. Kubas's termination was for a legitimate non-retaliatory reason.

Hora Aff. Ex. 1C.

17. In the above correspondence to defense counsel, which was sent well before dispositive motions and trial that followed, I provided a virtual roadmap for the evidence that was used to defeat summary judgment and which led to a successful verdict in Ms. Kubas's favor at trial.  Although time was of the essence because the parties agreed to exchange offers before the start of discovery, Defendant did not respond until three (3) months later wherein they offered a sum total of three thousand dollars ($3,000) inclusive of attorney's fees to resolve Ms. Kubas's case.  Hora Aff. Ex. 1D (2-10-21 Ltr. J. Buckel to S. Hora).

18. The parties had another opportunity to mediate this case before Judge Coulson, however, Defendant expressed that it was not interested in resolving Ms. Kubas's case above nuisance value.  Hora Aff. Ex. 1E (4-24-21 Hora Ltr. To Hon. J. Mark Coulson).

19. In sum, Defendant could have avoided the substantial time and expense with litigating this case had it agreed to engage in good faith settlement discussions on at least three (3) separate occasions, beginning with the EEOC's mediation process.

7

***Billing and Hours Expended***

20.     I worked (consecutively) with three (3) associates over the course of the four (4) years since Ms. Kubas retained our firm in September 2019:  Savanna Shuntich, Rebecca Stoddard and Emma Eckert.  Ms. Shuntich, who I consider to be a mid-level associate at the time she represented Ms. Kubas, was the primary attorney who assisted me on Ms. Kubas's matter.  As indicated in our time records (Ex. 4 to Pl. Motion), Ms. Shuntich was responsible for obtaining and process discovery documents, making the first draft of discovery requests and most motions.  Her first "cut" allowed me to more efficient in reviewing documents, preparing for and taking depositions and drafting and finalizing discovery dispute correspondence and motions.

21.     **Savanna Shuntich**:  As detailed in her Affidavit (Ex. 2 to Pl. Motion), Ms. Shuntich graduated *cum laude* from American University's Washington College of Law in 2015.  Ms. Shuntich was an associate at our firm from May 2017 to August 2021.  Pl. Mot. Ex. 2 at 1-2.  At the time that we filed suit on Ms. Kubas's behalf, Ms. Shuntich had five (5) years of litigation experience.  *Id*. at 2.  Ms. Shuntich also substantially assisted me on another case before this court, *Kande v. Dimensions Health Corp*., No. GJH-18-2306, 2020 U.S. Dist. LEXIS 225930 (D. Md. Dec. 2, 2020) involving pregnancy discrimination.  Ms. Shuntich had a major role in drafting our successful opposition to Defendant's motion for summary judgment in that case.  Pl. Mot. Ex. 2 at 2.  Ms. Shuntich was already very experienced in handling employment cases by the time Ms. Kubas retained our firm.  As reflected in Pl. Mot. Ex. 4, I reviewed her time records and reduced or deleted entries to account for inefficiencies and/or redundancies.

22.     **Rebecca Stoddard**. Ms. Stoddard was an associate at my Firm until August 31, 2022.  Prior to joining our firm, Ms. Stoddard practiced personal injury and civil rights law at a

8

boutique law firm in Manhattan. In May 2020, she graduated *cum laude* from New York Law School. Before graduating from law school, Rebecca served as a Judicial Intern for the Honorable Jane C. Tully, a Kings County Supreme Court judge and clerked at law firms whose specialties ranged from personal injury and civil rights to criminal defense and family law.  In law school, Ms. Stoddard worked as a clinic student with the Center for Justice and Democracy on various projects designed to raise awareness about legislative restrictions on individual access to the civil courts. Her responsibilities included writing memos to legislative committees and participating in virtual meetings with national lawmakers and lobbyists; she also made the Dean's List in the fall 2017, spring 2019 and spring 2020 semesters.  She was also a student advocate for the Civil Justice and National Advocacy Clinic at New York Law School.

   While she was employed at our firm, Ms. Stoddard had two (2) years of experience in civil litigation, including personal injury, civil rights, labor and employment law matters.  She was admitted to practice in New York and her admission to the District of Columbia was pending.  Ms. Stoddard was also a member of the Brooklyn Women's Bar Association, Bronx Bar Association, and New York State Trial Lawyers Association.

   Ms. Stoddard participated in a second-chair capacity in one jury trial, in New York, and a six-day arbitration in Washington D.C., in which she was responsible for taking witness testimony. Ms. Stoddard had experience drafting complaints, discovery requests, motions for summary judgment, motions to compel discovery, motions for default, and oppositions thereto.

   Ms. Stoddard worked approximately fifty-four (54) hours on Ms. Kubas's case, primarily assisting with researching and drafting Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  As indicated in the included spreadsheet, I have reduced Ms. Stoddard's hours to 23.1, over fifty percent (50%), to account for inefficiencies associated with getting up to

speed on this case and researching and drafting the first draft of Plaintiff's Opposition to Summary Judgment.

23. **Shannon Gough**.  Ms. Gough was a contract associate who assisted on Ms. Kubas's case during the summer of 2021.  Ms. Gough graduated *cum laude* from American University Washington College of Law in Washington, D.C. in 2020.  Ms. Gough worked at the United Mine Workers of America where she assisted in federal court and administrative agency litigation and advised local union leaders on a wide array of legal issues. While in law school Ms. Gough clerked for a variety of organizations, including the National Labor Relations Board, the American Federation of State, County, and Municipal Employees, and Public Justice. Before law school, Ms. Gough worked for several years in the business and human rights field.  She also holds an LLM in International Human Rights Law with distinction from the University of Essex in the UK. She is admitted to practice in the District of Columbia and Virginia and is a member of the AFL-CIO Union Lawyers Alliance.  In the exercise of billing judgment, Plaintiff is waiving Ms. Gough's time associated with this case (9.5 hours).

24. **Emma Eckert**.  Ms. Eckert joined our firm in October 2021 as an associate.  As indicated in her affidavit (Pl. Mot. Ex. 3), Ms. Eckert primarily has a corporate practice advising non-profits and condominium boards.  Pl. Mot. Ex. 3 at 1-2.  Given the small size of our firm and because she is currently our only associate, Ms. Eckert assisted me at the trial in this matter.  While she is not a litigator by trade, her assistance was invaluable in helping to prepare Ms. Kubas for trial, assisting me with my overall preparation, researching and formulating strategy throughout the week of trial.  Due to her lack of litigation experience and in exercising billing judgment, we utilized a billing rate at the lowest part of her range as provided in Appendix B to the local rules of $150.00.

25. My firm employed three (3) legal assistants during the pendency of this matter who assisted with Ms. Kubas's case by performing various tasks including processing written correspondence, assembling exhibits for use at depositions, and creating spreadsheets from invoices that were used in support of this petition. In exercising billing judgment, we are not seeking reimbursement for the approximately thirty (30) hours expended by legal assistants on this matter.

26. In reviewing my own time records, I reduced entries that appeared to be excessive or inefficient based on my judgment and legal experience. I also deleted time associated with witnesses who were not deposed and/or did not testify at trial and time associated with a motion *in limine* concerning Messrs. Saab and Chisholm's status as public figures, as Plaintiff withdrew this motion prior to the Court's consideration.

*Allocation of Time*

27. In accordance with Appendix B, Plaintiff's counsels' time is allocated into the following phases of the litigation:

    a. Case Development, Background Investigation and Case Administration: For ease and separation from the federal court litigation, the bulk of the administrative process before the EEOC was categorized as "Case Development." This also seemed logical because we were still in the fact gathering stage during this time period. **35.0 hours**

    b. Pleadings: **15.1 hours**

    c. Discovery (Interrogatories, document production, other written discovery and discovery disputes) **102 hours**

    d. Depositions (includes time spent preparing for depositions) **62.0 hours**

  e. Motions Practice:  **62.1 hours**

  f. Attending court hearings (including trial) **123.8 hours (2 attorneys)**

  g. Trial preparation and post-trial motions.  **212.3 hours**

  h. ADR/Settlement.  **15.3 hours**

  i. Fee Petition Preparation: **26.4 hours**


Dated:  October 26, 2023

            _____/s/_*Sundeep Hora*_____
            Sundeep Hora (MD Bar. No. 28208)
            ALDERMAN, DEVORSETZ & HORA PLLC
            1025 Connecticut Ave., NW
            Suite 615
            Washington, D.C. 20036
            Tel. 202-969-8220
            Fax 202-652-2457
            E-mail: shora@adhlawfirm.com

            **Attorney for the Plaintiff**