## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KIMBERLY KUBAS,

       Plaintiff,

      v.                         Civil Case No. <u>1:20-cv-2456</u>

331B, LLC
(D/B/A: ROCKWELL FITNESS)

       Defendant.

---

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR ATTORNEY'S FEES AND COSTS

---

       Defendant 331B, LLC, by and through its attorneys, Jason C. Buckel, T. Lee Beeman, Jr., and Buckel, Levasseur, Pillai & Beeman, LLC, hereby files its response to Plaintiff's Motion for Attorney Fees and Costs and in support thereof, states the following:

### I.   <u>Introduction</u>

       Plaintiff filed the underlying Complaint in this matter on or about August 25, 2020, alleging that Defendant violated Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) by terminating her in retaliation for complaining about the gym's general manager.

       Defendant contested all aspect of Plaintiff's claim for damages, specifically alleging that Plaintiff was terminated for a legitimate non-retaliatory reason. This matter was litigated through discovery, dispositive motions, and ultimately through a week-long jury trial to verdict. Ultimately, the jury found that Kimberly Kubas' protected activity was the but-for cause of Defendant taking adverse employment action against Plaintiff and awarded damages to compensate for a net loss of wages and benefits in the amount of $4,940.00.

Following the jury verdict, Plaintiff's counsel filed a Motion for Attorney's Fees and Costs requesting this Court award *reasonable* attorney's fees and costs in the amount of $260,572.50 and $11,139.09, respectively.

## II.   Argument

### A.   Legal Standard

This Court and others within the Fourth Circuit have repeatedly recited the legal standard upon which a Court may award the prevailing party a reasonable attorney's fee as part of the costs. Under Title VII, a court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs." 42 U.S.C. § 2000e-5(k). The standard for granting attorney's fees under Title VII is "identical" to the standard for doing so under 42 U.S.C. § 1988. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 n.10 (4th Cir. 1995). In such an action, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). Fee awards must be fair and fully compensate prevailing attorneys but are not intended to produce windfalls to attorneys. *Martin*, 48 F.3d at 1359. To that end, fee applicants "should exercise 'billing judgment' with respect to hours worked." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

In calculating an award of attorney's fees, a court first "determine[s] a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). The court then must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" and award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* at 88 (quoting *Robinson.* 560 F.3d at 244).

In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the Fourth Circuit has directed courts to consider the following factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors"):

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.
> *McAfee*, 738 F.3d at 88 & n.5.

A court is not required to conduct a specific analysis of each of the *Johnson* factors if they are considered and addressed more broadly. *See. e.g., Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825. 836 (D. Md. 2005); *Murrill v. Merritt*, No. DKC-17-2255, 2020 WL 1914804, at *3 (D. Md. Apr. 20, 2020).

**B.**    **Reasonableness of Attorney's Fee Request**

While a panoply of caselaw exists to assist courts in evaluating the reasonableness of attorney's fees requests, in this instant, the cases most appropriate for the Court to apply are *Fair House. Council of Greater Washington* (*see supra*), *McAfee* (*see supra*), and *Farrar* (*see supra*) as they bear the most similarities to Plaintiff's claims and recovery in this instant matter.

 A district court, may, in its discretion, deny a request for attorneys' fees in its entirety when the request, submitted pursuant to 42 U.S.C. § 1988, is so outrageously excessive it "shock[s] the conscience of the court." *Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 96, (4th Cir. 1993) *citing Sun Publishing Company Inc. v. Mecklenburg News, Inc.,* 823 F.2d 818, 819

3

(4th Cir. 1987).  The Fourth Circuit, in reaching the holding in *Fair Hous*, was not persuaded by the claim that "a total denial of attorneys' fees is inappropriate in civil rights litigation because of the need to "encourage able attorneys to represent meritorious civil rights claimants with relatively small damage claims."" *Id*.  The court sought to signal to attorneys to act responsibly when submitting petitions for attorneys' fees. *Id*.  The *Fair House* court joined the First and Seventh Circuits in reaching similar findings. *See e.g.*, *Lewis v. Kendrick*, 944 F.2d 949, 957-58 (1st Cir. 1991) and *Brown v. Stackler*, 616 F.2d 1057 (7th Cir. 1980).

In the final step before making an attorney's fee award under § 1988, a district court must "consider the relationship between the extent of success and the amount of the fee award." The court will reduce the award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley,* 461 U.S. at 439–40, 103 S.Ct. 1933. Indeed, the Supreme Court has recognized that the extent of a plaintiff's success is "the most critical factor" in determining a reasonable attorney's fee under 42 U.S.C. § 1988. *Id.* at 436, 103 S.Ct. 1933. What the court must ask is whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434, 103 S.Ct. 1933. *McAfee v. Boczar*, 738 F.3d 81, 92 (4th Cir. 2013), <u>as amended</u> (Jan. 23, 2014)

In *McAfee*, Plaintiff sought recovery of attorney's fees pursuant to 42 U.S.C. § 1988 after "prevailing" on a § 1983 civil rights claim. *Id*. The *McAfee* Court found itself reviewing *de novo* the award of attorney's fees by the United States District Court for the Eastern District of Virginia, in which the court awarded attorney's fees in the amount of over three hundred thousand dollars ($300,000.00) approximately 109 times the verdict. *Id*.  Significantly, the Plaintiff in *McAfee* failed to recover any special compensatory damages, or any punitive damages at all. *Id*.  "When considering the extent of the relief obtained, we must compare the amount of damages sought to

the amount awarded." *Id*. *citing Mercer v. Duke Univ.,* 401 F.3d 199, 204 (4th Cir.2005). If a §

1983 plaintiff achieves only part of the success she sought, the lodestar amount may be excessive.

*Id*. at 92-93 *citing Farrar v. Hobby*, 506 U.S. 103, 114 (1992).  The *McAfee* court correctly points

out that when you compare a paltry damages award against Plaintiff's lofty expectations, it can

produce an excessive fee award that would constitute a windfall under the *City of Riverside[1]*

analysis. *Id*. The Plaintiff in *Farrar* sought $17 million dollars in compensatory damages, but was

awarded "the meager sum of $1.00" *Id*. at 93.  The court, quoting Justice O'Connor's Concurrence

in *Farrar*, opined that "[A] substantial difference between the *judgment recovered* and the

*recovery sought* suggest that this victory is in fact purely technical. *Id*. at 93, *citing Farrar* at 121.

In evaluating the attorney's fee award in *McAfee*, the Court compared what was sought versus

what was recovered, noting that the plaintiff specifically encouraged the wide array of damages

sought when arguing to the jury and particularly focused on punitive damages." *Id*.

 While courts have noted that there is no direct proportionality between the amount sought

and the amount recovered, the *McAfee* court emphasized the Justice Powell's Concurring opinion

in *Rivera*, that "[w]here recovery of private damages is the purpose of a civil rights litigation, a

district court, in fixing fees, is obligated to give primary consideration to the amount of damages

awarded as compared to the amount sought." *Id*.[2]  The *McAfee* court observed that awarding an

attorney's fee award of $300,000.00 when the jury returned a verdict of $2,943.60 after Plaintiff's

requested more than $500,000.00 in damages represented a "puritanically modest" verdict and the

attorney's fee award fails to reflect that reality.

---

[1] *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986).
[2] The *McAfee* court observed that the Supreme Court of the United States affirmed a request for attorney's fees seven (7) times the verdict awarded to Plaintiff in *Rivera*, but goes on to note that *McAfee*'s request for attorney's fees 109 times the verdict award "may well be unprecedented in the [Fourth Circuit] and observed it to be a pronounced disproportionality before vacating the award and reducing it by two thirds.

Plaintiff's Counsel, in litigating this matter sought recovery for Plaintiff of: back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct; compensatory damages; and punitive damages. *Pl. Compl.* (ECF 001). In their settlement demand (ECF 107-4), Plaintiff's counsel demanded:

> "a lump sum of $*53,017.00*. This represents $10,080.00 in backpay running from June 23, 2019 through November 9, 2020 ($7,280 a year based on her last full year of work/26 pay periods = $280.00 a paycheck multiplied by the 36 pay periods since Plaintiff's termination) + $20,160.00 in compensatory damages calculated at a rate of 2x backpay + $22,777.50 in attorney's fees." (ECF 107-4).

During the same settlement offer, Plaintiff's counsel indicated that their offer was:

> ". . . a conservative offer made in good faith. We have not included any damages based on Plaintiff's lost benefits, including free baby-sitting, a free gym membership, and the personal training Ms. Kubas received through her employer. Moreover, we have calculated Plaintiff's compensatory damages at the lowest benchmark and without a front pay claim despite the reality that it has and will continue to be difficult for Ms. Kubas to find a new job during a pandemic." (ECF 107-4).

During trial of this matter, Plaintiff's counsel sought all damages outlined in the Complaint, including lost wages, compensatory damages, and even punitive damages. While Plaintiff's counsel had foregone claims for "any damages based on Plaintiff's lost benefits, including free baby-sitting, a free gym membership, and the personal training Ms. Kubas received through her employer" those were argued strenuously before the jury at trial.

In arguing for punitive damages, Plaintiff's counsel represented Defendant 331B, LLC and its owners Brian Chisholm and Said Saab to be men with all of the power that must be held accountable and punished for their actions.

Ultimately, Plaintiff failed to prevail upon the jury in her claim for damages. The jury found the award of punitive damages to be improper. (ECF 99). The jury awarded a paltry,

puritanically modest, amount in compensatory damages of $4,940.00 to Plaintiff. *Id*.  Plaintiff's counsel in the "virtual roadmap" graciously provided to Defendant's counsel for settlement purposes claimed that Plaintiff was entitled to backpay wages of $7,280 per year since her termination. (ECF 107-4).  During closing arguments, Plaintiff's counsel requested backpay from the time of termination through trial nearly four years later.  Ultimately, the jury's verdict represents a fraction of a single year's backpay alleged owed.  The jury offered no damages multiplier; the jury offered no additional compensatory damages for emotional pain and mental anguish; the jury offered no punitive damages. (ECF 99).  Ultimately, Plaintiff failed to recover damages on the vast majority of damages sought.

Significantly, in February 2021, Defendant made a good faith effort to resolve this matter by offering $3000.00 to Plaintiff in full and final resolution of her claims.  Plaintiff's counsel viewed Defendant's offer as being offered in bad faith and not offered toward meaningful resolution of the claim.  While Plaintiff's counsel viewed this offer as insignificant compared to their "conservative offer" of $53,017.00, Defendant's opening offer to resolve this matter tracked far more significantly with the jury's view of this matter than did Plaintiff's counsel's view.  Defendant's offer represented more than sixty percent (60%) of the jury's verdict.

Plaintiff indicates that on April 24, 2023, Plaintiff indicated to Judge Coulson that mediation of the matter would not be fruitful because Defendant expressed it was not interested in resolving Ms. Kubas' case above nuisance value. (ECF 107-6).  In the same correspondence, Plaintiff's counsel describes Plaintiff's case as "strong" and describes Defendants as not interested in resolving the case above nuisance value and lacking motivation."  In reality, the "nuisance value" offer discussed in anticipation of a potential mediation would have netted Ms. Kubas more

proceeds than awarded by the jury, as Defendant indicated that it intended to offer a "cost of defense" nuisance value offer at mediation.

Plaintiff's counsel is quick to chastise Defendant's lack of motivation to resolve the matter and "prolonging of litigation, but this discrepancy points out exactly the quandary that exists for Defendants in Title VII litigation; Defendant made a reasonable offer to resolve *Plaintiff's* claim (60% of the jury verdict during it's opening offer) and discussed offering resolving *Plaintiff's* claim in an amount which would have exceeded the jury verdict, but Defendant's offer was insufficient to satisfy *Plaintiff's Counsel's* claim for attorney's fees.  The *McAfee* and *Parker* courts both highlight this issue.  Plaintiff's counsel lacks any motivation to resolve *Plaintiff's* claim.  At the end of the day, Defendants are unable to resolve *Plaintiff's* claims in any meaningful way without dealing Plaintiff's counsel a windfall.  At more than 52 times the verdict awarded to Plaintiff at trial, it is hard to view Plaintiff's counsel's claim for attorney's fees in any manner other than a windfall.

    **C.**    **Reasonableness of Attorney's Hours**

The Supreme Court has "established a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague,* 505 U.S. 557,562 (1992); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986). The resulting lodestar figure may be adjusted upward or downward in light of the *Johnson* factors. *Rum Creek Coal Sales, Inc.,* 31, F.3d at 175 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974); *Hensley,* 461 U.S. at 430 n. 3).

    1.    The time and labor required.

This Court provides Appendix B to the Local Rules to provide procedural guidelines to assist in the preparation and prosecution of attorney's fees motions.  Among the guidelines

established are presumptive fee ranges based upon attorney's experience and time in practice. Within Plaintiff's motion, Plaintiff's counsel has deviated from the presumptive fee ranges.

Plaintiff's counsel identifies a number of associate attorneys who provided work and assistance in prosecuting Plaintiff's claim.   Among those associate attorneys was Savanna Shuntich.  Savanna Shuntich was billed at $300.00 per hour. (ECF 107-7).  According to Appendix B of the Local Rules for the United States District Court for the District of Maryland, attorneys with less than five (5) years of experience should be billed in a range from $150-$225 and attorneys with five (5) to eight (8) years of experience should be billed in a range from $165 to $300.  Ms. Shuntich indicated she had five (5) years of experience when this matter was initiated in August 2020 and remained with the firm for approximately one (1) year after this matter was initiated until August 2021.  Plaintiff's counsel offers no explanation why Ms. Shuntich's time should be billed at the top of the range for attorneys with five (5) to eight (8) years of experience when, in actuality, she had less than four years of experience for her first billable entry (September 20, 2019) on Exhibit 4 to Plaintiff's Motion (ECF 107-9) and was in her fifth year of practice during her time working on the underlying matter.  Of particular note, Ms. Shuntich was not admitted to practice before this Court *pro hac vice* until April 2021.  Given Ms. Shuntich's experience and the fact that she was not even admitted to practice before this Court for the majority of her billing entries, Defendant believes that Ms. Shuntich's time should be significantly reduced and that the hourly rate applied does not meet the Appendix B guidelines and should be reduced.

In addition to the guidelines establishing fee ranges based upon experience, the Local Rules also provide guidance regarding the billing of multiple attorneys for certain tasks.  Plaintiff's counsel's attorney's fee motion deviates from the established guidelines in Appendix B.

On August 18, 2023, Sundeep Hora and Emma Eckert have duplicative billing entries for five (5) hours to meet with client and trial consultant. Appendix B provides that, "Generally, only one lawyer is to be compensated for client, third party, and intraoffice conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer."

| 08/18/2023 | Meet with client and trial consultant | 5 | $750 |
|------------|---------------------------------------|------|-------|
| 08/23/2023 | Attend Pre-trial Hearing | 1.5 | $225 |
| 08/28/23 | Attend Trial | 7 | $1050 |
| 08/29/23 | Attend Trial | 8 | $1200 |
| 08/30/23 | Attend Trial | 8 | $1200 |
| 08/31/23 | Attend Trial | 8 | $1200 |
| 09/01/23 | Attend Trial | 8 | $1200 |

The above hours billed by Emma Eckert are entirely duplicative of Sundeep Hora's hours. During the trial in this matter, Ms. Eckert did not question a single witness, did not provide an opening statement or closing argument, argue a single motion *in limine*, argue a single dispositive motion, argue a single evidentiary objection, or even assist in operating the technology necessary to produce exhibits to the jury during Mr. Hora's questioning. Ms. Eckert's role during the trial was reduced to typing notes on her computer. The Local Rules reference a similar situation in the footnote on page 126, which states: "There is no guideline as to whether more than one lawyer for each party is to be compensated for attending trial. This must depend upon the complexity of the case and the role that each lawyer is playing. For example, if a junior lawyer is present at trial

primarily for the purpose of organizing documents but takes a minor witness for educational purposes, consideration should be given to billing his/her time at a paralegal's rate." It is clear that the above entries reflect impermissibly duplicative billing and should be stricken.

In addition to the foregoing, there are several time entries included on Plaintiff's counsel's time sheets that are incongruous. During the trial in this matter, Plaintiff's Counsel billed 17.5 hours during one single day of trial and 16.8 hours the following day of trial. (ECF107-9). The Court kept parties engaged in actual trial activities for no more than eight (8) hours on any given day of trial. To suggest that Plaintiff's counsel was billing for an average of seventeen hours per day during multiple days of trial is farfetched.

Perhaps the most outrageous part of Plaintiff's counsel's entire billing sheet comes in the form of his billable hours in preparation of the attorney's fees petition in this matter. After spending hundreds of hours to obtain a *de minimis* award of $4,940 for his client, Plaintiff's counsel has the audacity to submit billing statements claiming that he is due and owed over $12,500 for the preparation of the attorney's fees petition.

Plaintiff's counsel's expenses are also lacking a reasonable nature. Plaintiff is seeking reimbursement for "Advanced witness fee" and "Service of Subpoenas" for witnesses that they did not actually call at trial, namely Billy D. Williams and Latoya Butler Williams. Plaintiff's counsel claims an expense for "Lodging in Baltimore, Maryland for trial" in February 2023, nearly six months before trial in this matter. It is unclear what Plaintiff's counsel seeks reimbursement for. Plaintiffs seek reimbursement for service of process fees LaToya Butler Williams' deposition, but canceled the same deposition.

2.    <u>The Novelty and difficulty of the questions raised</u>.

Plaintiff's counsel described Plaintiff's claim as a "strong and clear-cut case of retaliation." (ECF 107-4).

4.    <u>The preclusion of other employment due to acceptance of the case</u>.

Plaintiff's counsel indicates that the firm was precluded from accepting other cases and hourly work so that it can devote the time and attention necessary to obtain a successful verdict.

5.    <u>The Customary Fee</u> and <u>the amount involved and the results obtained</u>.

Plaintiff's have submitted an attorney's fee claim fifty-two (52) times the jury verdict awarded at trial.   The lack of success and significant disproportionality of Plaintiff's Counsel's attorney's fees request have been addressed at length and are incorporated into this section for the sake of brevity.   The Seventh Circuit in *Brown v. Stackler*, 612 F.2d 1057 (7th Cir. 1980) highlighted a significant observation about unreasonable attorney's fees requests that is adopted by the Fourth Circuit in *Fair Hous*.   They observed:

> "If, as appellant argues, the court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such conduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful.... *Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 96, 1993 WL 258865 (4th Cir. 1993).

The *Fair Hous.* court stands for the principle that "A district court may, in its discretion, deny a request for attorney's fees in its entirety when the request . . . is so outrageously excessive it shocks the conscience of the court."

The *McAfee* court noted that it was unaware of any attorney's fee award in the Fourth Circuit that was affirmed where the requested attorney's fees were 109 times the jury verdict. *McAfee*, 738 F.3d at 94.   Similarly, Defendants are unable to locate caselaw within the Fourth

Circuit where a court has affirmed as reasonable an attorney's fee award of more than fifty (50) times the jury verdict.

10.     The undesirability of the case.

Plaintiffs' counsel laughably claims that this case was undesirable due to the "inability of Plaintiffs to pay attorney fees and costs."  Plaintiffs' counsel also claims that the firm primarily represents claimants in FLSA and civil rights actions in Federal and State Courts."  Clearly, Plaintiffs' counsel's Firm has developed a model of pursuing fee shifting contingency claims, despite their undesirable nature.

## CONCLUSION

Defendants request this Court:

1.     Deny Plaintiff's Motion for Attorney's Fees and Costs and unreasonable and shocking to the conscience of the Court based upon the lack of success of their claims for damages;

2.     Reduce the hours claimed by Plaintiffs to a reasonable amount;

3.     Reduce the legal fees claimed owing by Plaintiffs to a reasonable amount;

4.     Reduce the legal fees claimed owing by Plaintiffs based upon necessary adjustments for work performed in furtherance of claims which were unrelated and unsuccessful;

5.     Reduce the costs claimed owing to eliminate reimbursement for non-reimbursable costs;

6.     Set a hearing on this matter; and

7.     For such other further relief as this Court deems necessary and just.

Respectfully submitted,


*/s/*                                              .
Jason C. Buckel, Bar No: 24766
T. Lee Beeman, Jr., Bar Number: 19613
Buckel, Levasseur,
Pillai & Beeman, LLC
206 Washington Street
Cumberland, Maryland 21502
Phone: (301) 759-3700
Fax: (301) 982-9450
lbeeman@blpblaw.com
blplaw@atlanticbbn.net

*Counsel for Defendants*


## <u>REQUEST FOR HEARING</u>

Defendant, 331B, LLC, hereby requests a hearing on Plaintiff's Motion for Attorney's

Fees and Costs and Defendant's response thereto.


*/s/*                                              .
Jason C. Buckel, Bar No: 24766
T. Lee Beeman, Jr., Bar Number: 19613

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of December, 2023, a true and correct copy of the foregoing was served through the CM/ECF system and served via the same means to all parties entitled to service.

*/s/*                                               .
Jason C. Buckel, Bar No: 24766
T. Lee Beeman, Jr., Bar Number: 19613
