UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **KIMBERLY KUBAS**            Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 1:20-cv-2456 (MJM)<br>) |
| **331B, LLC**<br>**(D/B/A ROCKWELL FITNESS)** | )<br>)<br>) |
| Defendant. | )<br>) |

### PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiff, though the undersigned counsel, hereby submits her Reply in Support of Her Motion for Attorney's Fees and Costs, addressing the arguments raised in Defendant's Response, as follows:

**A. Reasonableness of Attorney's Fee Request**

Defendant 331B LLC argues that Plaintiff should be precluded from collecting any fee or that Plaintiff should collect a fee that is proportionate to the award in this case. ECF No. 112, at 3. In support, Defendant cites the decision in *Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). However, as this court noted in *Ramnarine v. Rainbow Child Dev. Ctr., Inc*, No. PWG 17-2261, 2022 U.S. Dist. LEXIS 201713 *6, n.1 (D. Md. Nov. 4, 2022), "*Farrar* [] is limited to its facts. In that case, Plaintiff sought millions of dollars in compensatory damages, but recovered only nominal damages. As the Court in *Farrar* noted, the "litigation accomplished little beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that their rights had been violated in some unspecified way." 506 U.S. at 114

1

(internal citations, quotation marks and brackets omitted). In this case, Plaintiff recovered thousands of dollars in unpaid wages; her victory was far from "technical." *See Reyazuddin v. Montgomery County, Maryland*, No. DKC 11-951, 2022 U.S. Dist. LEXIS 179634, 2022 WL 4608331, at *2 (D. Md. Sept. 30, 2022) (explaining that after *Farrar* a party may collect attorney's fees if their victory is "material," as opposed to "technical").

Plaintiff, who held a part-time administrative position with minimum pay, won the equivalent of almost a year's salary. By Defendant's measure, a stockbroker awarded twelve months of pay based on a $500,000 a year salary is more deserving of fees than the minimum wage earner obtaining comparable relief. Such an approach finds no support in the statute. *See Barrow v. Falck*, 977 F.2d 1100, 1103-04 (7th Cir. 1992)("Awarding the full cost of litigation, which looks excessive in the single case, is sensible because it aids in the enforcement of rules of law.").

In FLSA and other civil rights cases, the Supreme Court has "reject[ed] the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)). Such cases often involve "vulnerable plaintiffs" who "may be vindicating important rights that entitle them to relatively modest compensation." *Reyes v. Clime*, No. PWG-14-1908, 2015 U.S. Dist. LEXIS 74150, 2015 WL 3644639, at *4 (D. Md. June 8, 2015). At the time that Ms. Kubas retained Mr. Hora to represent her in this case, she was living with her ex-husband's mother in her home to make ends meet. Ex. 1 (Hora Aff.) at ¶11. She did not have the financial ability to retain counsel on an hourly basis to vindicate her civil rights. *Id*. Circumstances regularly arise where the amount sought in fees is outsized in comparison to the recovery. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006); *Salinas v.*

*Commercial Interiors*, No. 8:12-cv-1973-PWG, 2018 U.S. Dist. LEXIS 96731, 2018 WL 2752553, at *3 (D. Md. Jun. 8, 2018) ("The Supreme Court has opined that a rule requiring proportionality would 'seriously undermine Congress' purpose' and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system.") (quoting *Rivera*, 477 U.S. at 576).

Defendant asks that the Court consider the parties settlement negotiations in determining the reasonableness of Plaintiff's fee. For example, Defendant's assert that its February 2021 offer for $3,000 "represented more than sixty percent (60%) of the jury's verdict." $3,000 was the *sum total* of Defendant's offer even though the parties had engaged in litigation since September 2019 and even though Plaintiff had incurred $22,777.00 in fees by this juncture. Ex. 1 (Hora Decl. at ¶¶16, 20). This Court recently observed in *Fiallos v. Hamzah Slaughter House*, No. 20-3577-JMC, 2022 U.S. Dist. LEXIS 207066, *10 (D. Md. Nov. 14, 2022), how settlement negotiations should be considered in determining prevailing party fees

> In *Clark v. Sims*, the Fourth Circuit held that a trial court abused its discretion in reducing an attorneys' fees award based on the prevailing party's rejection of a prior settlement offer because that settlement offer did not constitute an "offer of judgment" under *Fed. R. Civ. P*. 68. *Clark v. Sims*, 28 F.3d 420, 423-24 (4th Cir. 1994). The court positively cited to *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) for the notion that a court's attorneys' fees analysis "must be guided by the principle that mere settlement negotiations may not be given the effect of a formal offer of judgment." *Clark*, 28 F.3d at 424. In *Ortiz*, the Second Circuit observed that, generally, a failure to settle a case should not lead a court to reduce an attorneys' fees award absent bad faith on the prevailing party's behalf. Id. at 141 (citation omitted).

*Id*. at *10. The $3,000 offer was not the equivalent of an offer of judgment and there is no assertion by Defendant that Plaintiff engaged in bad faith concerning any settlement negotiations between the parties.

Defendant's make several assertions concerning the parties negotiations that should be disregarded by the Court because they are not supported by any documentary evidence including a declaration from Defendant's counsel.[1]  For example, Defendant claims, without any support whatsoever, that "the "nuisance value" offer "discussed in anticipation of potential mediation" before Judge Coulson "would have netted Ms. Kubas more proceeds than awarded by the jury" and that Defendant "indicated that it *intended* to offer a 'cost of defense' nuisance value offer at mediation." ECF 112 at 7, 8 (emphasis added).[2]  There is no indication as to how Defendant's unspecified offer would have netted Ms. Kubas more than what the jury awarded, nor is there any evidence that Defendant "intended to offer a 'cost of defense'" at a mediation that never occurred.  To the extent that the "cost of defense nuisance value offer's" outer limits included the value of its attorney's fees incurred with summary judgment briefing, this offer was never made, there is no indication of the value of this offer, and regardless, Defendant's motion for summary judgment was denied.  Notably, there was never settlement negotiations after Defendant's summary judgment motion was denied, therefore, necessitating a trial which resulted in a verdict in Plaintiff's favor.

B. **Reasonableness of Attorney's Hours**

Defendant criticizes Savanna Shuntich's hourly rate of $300, complaining about her level of experience (4) at the time of her first billable entry (September 2019) but acknowledging that she was in her fifth year "during her time working on the underlying

---

[1] Defendant did not attach a single exhibit to their Opposition.
[2] Similarly, Defendant's offer without any support that they "discussed offering resolving Plaintiff's claim in an amount which would have exceeded the jury verdict, but Defendant's offer was insufficient to satisfy Plaintiff's claim for attorney's fees." ECF 112 at 8.  Rather than demonize Plaintiff's counsel's attempt to seek reimbursement for fees incurred to vindicate Ms. Kubas's civil rights, Defendant's counsel should empathize given that they are responsible for prolonging this litigation and, presumably, have been continually paid for their failed defense of their client.

4

matter." ECF 112 at 9. Defendant also criticizes her hourly rate based on the timing of when the Court granted her *pro hac vice* motion (April 2021). There is no support for contradicting the hourly rate within the range provided in Appendix B, based on the timing of a *pro hac vice* motion. Had Plaintiff moved for Ms. Shuntich's admission earlier, Defendant likely would have criticized Plaintiff for prematurely incurring fees. Regarding whether Ms. Shuntich's fee should be based on her years of experience at the time she first began working on this case or based on her last entry, it is well-settled that District courts must account for the effect of delay in payment on the value of the attorneys' fee award. *Ohio River Valley Envtl. Coal. Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 419 (4th Cir. 2007). Courts therefore account for this delay factor by "either using a fee rate based on the current market or by using the historical fee rate with reasonable interest added." *Id*. Defendant's attack on Ms. Shuntich's qualifications are also without merit. It should also be noted that Ms. Shuntich took deponent Billy D. Williams' deposition in this case, a point that was unintentionally omitted in Mr. Hora and Ms. Shuntich's declarations.

    Defendant's argue that Ms. Eckert's hours billed at trial are duplicative of Mr. Hora's hours because she did not "question a single witness, did not provide an opening statement or closing argument…or even assist in the operating the technology necessary to produce exhibits to the jury during Mr. Hora's questioning." While it is true that counsel for Defendant, Mr. Beeman, furnished the technology services to present Defendant's exhibits, and questioned one witness, this is no basis from which Defendant's counsel can claim the high ground on using two attorneys at trial. Ms. Eckert work on behalf of Ms. Kubas, including coordinating witnesses, providing

strategy and research, were instrumental in Plaintiff's success at trial. Her work was akin to the work that Mr. Beeman performed on behalf of his client and she should be compensated for her work.

Moreover, attendance at trial by two attorneys is reasonable. *See Parker v. Reema Consulting Services, Inc.,* No. TDC-17-1648, 2022 U.S. Dist. LEXIS 130427, 2022 WL 2905475, at *5 (D. Md. Jul. 21, 2022) (holding that the presence of seven attorneys, at trial, as opposed to two, was excessive); *Barrow v. Greenville, Independent School Dist.*, No. 3:00-CV-0913-D, 2005 U.S. Dist. LEXIS 34557, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (explaining that while the presence of two attorneys at trial was reasonable, four was duplicative and required the excising of any time billed for the third and fourth attorneys). "For example, while one attorney presents, the other attorney may reasonably coordinate the presence and preparation of witnesses, as well as highlight for the presenting attorney any points that may have been overlooked." *Ramnarine v. Rainbow Child Dev. Ctr., Inc,* No. PWG 17-2261, 2022 U.S. Dist. LEXIS 201713 *14 (D. Md. Nov. 4, 2022). "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation. *Almendarez v. J.T.T. Enterprises Corp.*, No. JKS 06-68, 2010 U.S. Dist. LEXIS 88043, 2010 WL 3385362, at *5 (D. Md. Aug. 25, 2010) (internal citation and quotation marks omitted). This is consistent with the Court's Local Rules. *See* Appendix B, 1.2.c ("There is no guideline as to whether more than one lawyer for each party is to

be compensated for attending trial. This must depend on the complexity of the case and the role that each lawyer is playing.").

Defendant also asserts that Plaintiff billing "17.5 hours during one single day of trial and 16.8 hours the following day of trial" is *per se* unreasonable.  The fact is that the hours reported were accurate and necessary in the successful prosecution of Ms. Kubas's case. These were, no doubt, exhausting days, but well worth it to obtain a successful verdict for a well-deserving client.  Likewise, the $12,500 amount of the preparation of the fees' petition is accurate and necessary in order to provide a complete and supported motion outlining the fees incurred over the course of four years of litigation.[3]

For the foregoing reasons and for the reasons outlined in Plaintiff's Motion for Fees, Plaintiff respectfully requests that she be awarded fees in the amount of $260,572.50 in fees and $11,139.09 in costs.

Dated: January 5, 2024                               Respectfully Submitted,

                                                                /s/ Sundeep Hora
Sundeep Hora (Bar. No. 28208)
Emma Eckert (PHV)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW, Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

**COUNSEL FOR PLAINTIFF**

---

[3] Defendant also argues that the "Lodging in Baltimore, MD for trial in February 2023, nearly six months before the trial in this matter," is somehow nefarious.  Defendant's apparently fail to recall that February 2023 was around the original time frame when the case was going to be tried before they sought multiple postponements.  The lodging reservations were subsequently rescheduled after each postponement.