UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KIMBERLY KUBAS,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. EA-20-2456 |
| **331B, LLC, d/b/a ROCKWELL FITNESS,** | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Plaintiff Kimberly Kubas initiated the above-captioned action on August 25, 2020, asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Following trial, a jury returned a verdict in favor of Ms. Kubas and the Court entered a judgment awarding her $4,940.00 in damages. ECF Nos. 99-100. Pending before the Court is Ms. Kubas's Motion for Attorney's Fees and Costs. ECF No. 107. The issues are fully briefed (ECF Nos. 107, 112-113) and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the motion is granted in part and denied in part and Ms. Kubas is awarded $91,320.00 in attorney's fees and $7,705.38 in costs.

**I.    Background**

In this action, Ms. Kubas alleged a single count of retaliation in violation of 42 U.S.C. § 2000e-3(a) based on allegations that her former employer, Defendant 331B, LLC, d/b/a Rockwell Fitness (331B), terminated her employment for reporting sexual harassment by another employee. ECF No. 80. Ms. Kubas alleged that as a result of 331B's actions she lost wages and benefits; felt "degraded, humiliated, and embarrassed"; and experienced "extreme emotions including stress, anxiety and depression over an extended period of time." *Id.* at ¶ 36. Ms.

Kubas sought $100,000.00 in damages for lost wages and benefits, compensatory and punitive damages, plus costs, interest, and attorney's fees.  ECF Nos. 1-1 and 80 at 12.[1]

The Honorable Matthew J. Maddox denied 331B's motion for summary judgment because there were disputed issues of material fact as to whether a 331B employee sexually harassed Ms. Kubas and other employees and whether 331B retaliated against Ms. Kubas for reporting the alleged sexual harassment.  ECF No. 57 at 20-23.  Following a six-day jury trial, the jury found in favor of Ms. Kubas and awarded $4,940.00 as compensation for lost wages and benefits.  ECF Nos. 85-90, 99.  The jury did not award damages to compensate Ms. Kubas for "emotional pain and anguish" and did not find that the necessary factual predicate for an award of punitive damages had been established at trial.  ECF No. 99.  Ms. Kubas now seeks $260,572.50 in attorney's fees and $11,139.09 in costs.  ECF No. 107.

**II.    Discussion**

Ms. Kubas moves for attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and Federal Rule of Civil Procedure 54(d)(2).  Under Section 2000e-5(k), a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs."  42 U.S.C. § 2000e-5(k); *see also* Fed. R. Civ. P. 54(d)(1) ("costs . . . should be allowed to the prevailing party").  The standard for granting attorney's fees under Section 2000e-5(k) is identical to the standard under 42 U.S.C. § 1988.[2]  *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *Martin* v. *Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 n.10 (4th Cir. 1995).  As the United

---

[1] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system printed at the top of the cited document.

[2] Section 2000e-5(k) is the fee-shifting statute applicable to civil actions challenging unlawful employment practices, whereas Section 1988 applies to other civil rights enforcement actions.

States Supreme Court has explained, the "purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94-1558, p. 1 (1976)); *Stinnie* v. *Holcomb*, 77 F.4th 200, 206 (4th Cir. 2023), *cert. granted sub nom.*, 144 S. Ct. 1390 (2024). Indeed, the Senate Report cited favorably by the *Hensley* Court underscores the link between fee awards and the vindication of civil rights.[3] 461 U.S. at 445 (Brennan, J., concurring in part). For this reason, a prevailing party in those actions "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id*. at 429 (majority opinion) (quoting S. Rep. No. 94-1011, p. 4 (1976)). The determination of a fee award should not, however, "result in a second major litigation." *Fox* v. *Vice*, 563 U.S. 826, 838 (2011) (internal quotation marks and citation omitted). And while fee awards should fairly and fully compensate the prevailing attorneys, they "are not intended to produce windfalls." *Martin*, 48 F.3d at 1359 (quoting *City of Riverside* v. *Rivera*, 477 U.S. 561, 580 (1986)). Fee applicants should therefore exercise billing judgment regarding hours worked. *Hensley*, 461 U.S. at 437.

As a threshold matter, the fee applicant must be the "prevailing party," that is, the party that obtains a judgment in their favor "regardless of the amount of damages awarded." *Buckhannon Bd. & Care Home, Inc.* v. *West Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001) (internal quotation marks and citation omitted). "This is a generous formulation

---

[3] S. Rep. 94-1011, p. 2 (1976) ("All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation[]'s fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.").

that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433. Reasonable attorney's fees are determined using a three-part test. *McAfee* v. *Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the court calculates the lodestar figure by multiplying "the number of reasonable hours expended times a reasonable rate." *Id*. Second, the court must subtract hours spent on any unsuccessful claims that are unrelated to the successful ones. *Id*. Finally, the court will award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*. Each step of the three-part test is discussed in turn below.

### A. The Lodestar Figure

The Court must first determine the lodestar amount, that is, the reasonable hourly rate multiplied by reasonable hours expended. *Robinson* v. *Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). Reasonableness is assessed using the *Johnson* factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber* v. *Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting the factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)). The Court is not required to analyze each factor individually or even examine every factor but may instead consider the factors as a whole. *Martin* v. *Mecklenburg Cnty.*, 151 Fed. Appx. 275, 283 (4th Cir. 2005); *Parker* v. *Reema Consulting Servs., Inc.*, Civil Action No. TDC-17-1648, 2022 WL 2905475, at *3 (D. Md. July 21, 2022); *Murrill* v. *Merritt*, Civil Action No. DKC-17-2255, 2020

4

WL 1914804, at *3 (D. Md. Apr. 20, 2020) (Simms, J.); *Imgarten* v. *Bellboy Corp.*, 383 F. Supp. 2d 825, 836 (D. Md. 2005).

Instead of seeking "auditing perfection," the goal of fee-shifting "is to do rough justice." *Fox*, 563 U.S. at 838. Therefore, a court "may take into account their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Id*. A court may not, however, consider the proportionality between the damages awarded to the plaintiff and the fee requested. *Jones* v. *Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015). Ultimately, the plaintiff has the burden of demonstrating that the requested fees are reasonable. *Jones* v. *Dancel*, 792 F.3d 395, 404 (4th Cir. 2015).

1. <u>Reasonable Rates</u>

The first question is whether Ms. Kubas's attorneys' hourly rates are reasonable. In making that determination, the Court finds *Johnson* factors 5 (customary fees for like work) and 9 (experience and ability) most relevant.

Appendix B of this Court's Local Rules, which outlines rules and guidelines for determining a prevailing party's reasonable attorney's fees, addresses reasonable hourly rates. Local Rule App'x B.3. Hourly rates are presumptively reasonable if they fall within Appendix B's guidelines, but the guidelines are not binding or determinative of the Court's assessment of a reasonable hourly rate. *E.g.*, *Carmona* v. *Ebrr Logistics, LLC*, Civil Action No. RDB-19-3077, 2024 WL 2113625, at *3 n.3 (D. Md. May 10, 2024); *Equal Emp't Opportunity Comm'n* v. *Freeman*, 126 F. Supp. 3d 560, 575 (D. Md. 2015). Indeed, "courts in this District routinely approve hourly rates that are much higher than those outlined in the Local Rules." *Katrina W.* v. *O'Malley*, Civil Action No. GLS-22-353, 2024 WL 2023756, at *2 (D. Md. May 7, 2024) (internal quotation marks and citation omitted) (collecting cases).

Part of the plaintiff's burden is to establish the reasonableness of the requested hourly rates. "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [counsel] seeks an award." *Robinson*, 560 F.3d at 244 (emphasis removed) (quoting *Plyler* v. *Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). "Satisfactory specific evidence" typically includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245.

Ms. Kubas contends that her attorneys' hourly rates are reasonable because they fall within Appendix B's guidelines. ECF No. 107 at 6-7. In response, 331B disputes only the hourly rate for Ms. Shuntich. ECF No. 112 at 8-9. In support of this motion, three of Ms. Kubas's attorneys (Sundeep Hora, Savanna Shuntich, and Emma Eckert) submitted affidavits. ECF Nos. 107-1, 107-7, and 107-8. Rebecca Stoddard and Shannon Gough did not submit affidavits. Instead, Mr. Hora attests to their backgrounds and experience in his affidavit. ECF No. 107-1 at 8-10. Mr. Hora also attested that three legal assistants provided support during Ms. Kubas's case, although their time (approximately 30 hours) has not been documented and they did not submit supporting affidavits. *Id.* at 11.

The three affidavits standing alone are insufficient to demonstrate the reasonableness of billing rates for five attorneys. No additional evidence, such as affidavits from local attorneys on "the prevailing market rate for employment lawyers in the Baltimore area," were submitted for the Court's consideration. *Proa* v. *NRT Mid Atl., Inc.*, Civil Action No. AMD-05-2157, 2009 WL 10681982, at *6 (D. Md. Feb. 13, 2009) (Gauvey, J.); *see also Gonzalez* v. *Caron*, Civil Action No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). Furthermore, none

of Ms. Kubas's attorneys attested to their normal billing rate in similar cases. *See*, *e.g.*, *Robinson*, 560 F.3d at 245; *Grissom* v. *The Mills Corp.*, 549 F.3d 313, 321-323 (4th Cir. 2008). When presented with insufficient documentation, the Court may rely on its own knowledge of the market. *CoStar Grp., Inc.* v. *LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000). In Maryland, that knowledge is embedded within the guidelines regarding hourly rates contained in the Local Rules. *Gonzalez*, 2011 WL 3886979, at *2. While all the proffered hourly rates are within this Court's Local Rules' guidelines (ECF No. 107-9), Ms. Shuntich and Ms. Gough's hourly rates are not supported by their experience and the available evidence.

Ms. Shuntich had approximately 4 to 6 years of general experience and a little over 2 to 4 years of employment law experience over the course of her representation of Ms. Kubas and billed at $300 per hour, which is the top of the guidelines for attorneys admitted to the bar for 5 to 8 years ($165 to $300 an hour).[4] ECF Nos. 107 at 8 and 107-9 at 1-12; Local Rule App'x B.3. Ms. Gough had less than one year of experience at the time she represented Ms. Kubas and billed $225 per hour, which is the top of the guidelines for attorneys admitted to the bar for less than 5 years ($150 to $225 an hour). ECF Nos. 107 at 8 and 107-9 at 10-11; Local Rule App'x B.3. The evidence provided does not support these billing rates. *E.g.*, *Murrill*, 2020 WL 1914804, at *3 (reducing 6-year associate's hourly rate from $300 because he had only general, non-particularized litigation experience and was just one year above the bottom of the guidelines); *Depaoli* v. *Vacation Sales Assocs.*, 489 F.3d 615, 622-623 (4th Cir. 2007) (reducing attorney's hourly rate from $305 and $325 to $225 because the only relevant evidence showed that the

---

[4] The years of experience are based on when the attorney was first admitted to the bar of any court. *See* Local Rules App'x B.3 (enumerating hourly rates based on attorney's number of years admitted to the bar).

7

attorney regularly charged plaintiff $225 per hour).  Ms. Shuntich's hourly rate will be reduced to $200 and Ms. Gough's will be reduced to $150.

Although Mr. Hora attested that he typically charges corporate clients $620 per hour, he did not specify his typical rates for individual clients.  ECF No. 107-1 at 5.  Notwithstanding, the Court relies on its knowledge of the market to determine that his hourly rate of $475 and those of Ms. Stoddard ($175) and Ms. Eckert ($150) are reasonable.

2. <u>Reasonable Hours</u>

The next inquiry is whether the number of hours Ms. Kubas's attorneys worked are reasonable.  The Court finds *Johnson* factors 1 (time and labor), 2 (novelty and difficulty), and 3 (required skill) most relevant to this question.

As a preliminary matter, clerical, ministerial, or administrative work "should not be compensated as an award for attorney's fees," no matter who performs it.  *Kreuze* v. *VCA Animal Hosps., Inc.*, Civil Action No. PJM-17-1169, 2019 WL 2107263, at *7 (D. Md. May 14, 2019); *see also Molina* v. *KP Stoneymill, Inc.*, Civil Action No. GLS-19-3123, 2021 WL 2805838, at *6 (D. Md. July 6, 2021); *Two Men & A Truck/Int'l, Inc.* v. *A Mover, Inc.*, 128 F. Supp. 3d 919, 929-930 (E.D. Va. 2015) (collecting cases).  An attorney may, however, recover for compensable work generally performed by paralegals *at the paralegal rate*.  *E.g.*, *Molina*, 2021 WL 2805838, at *6; *see also Ramirez* v. *316 Charles, LLC*, Civil Action No. SAG-19-03252, 2021 WL 662185, at *5 (D. Md. Feb. 19, 2021) (paralegal work may include drafting discovery requests, conducting intake interviews, and computing damages calculations).

It is the attorney's burden to provide sufficient information in support of billing entries. *Kreuze*, 2019 WL 2107263, at *7 (stating that courts have declined to award fees for hours where descriptions are unclear as to whether the task was clerical or legal).  "[C]ounsel is not required

8

to record in great detail how each minute . . . was expended," so long as they identify the general subject matter of their time expenditures.  *Hensley*, 461 U.S. at 437 n.12.  "[A]cross-the-board reductions are appropriate when billing records are voluminous and multiple billing entries are in dispute."  *Chapman* v. *Ourisman Chevrolet Co.*, Civil Action No. AW-08-2545, 2011 WL 2651867, at *18 n.11 (D. Md. July 1, 2011) (quotation marks and citation omitted).

Ms. Kubas asserts that the number of hours worked (762.5 reduced to 654.1 after exercising billing judgment) is reasonable because the case involved four years of litigation, several discovery disputes, a summary judgment motion, and a one-week trial, in addition to the difficulty proving discrimination and retaliation.  ECF No. 107.  331B challenges billing for two attorneys to attend client meetings, hearings, and trial and argues that Mr. Hora overbilled for trial attendance and preparation of the fee petition.  ECF No. 112 at 10-11.

The Court first considers the number of hours billed for reasonableness.  *Guillen* v. *Armour Home Improvement, Inc.*, Civil Action No. DLB-19-2317, 2024 WL 1346838, at *6-7 (D. Md. Mar. 29, 2024) (stating that court will evaluate only the "hours sought"—the number of hours worked minus non-billable tasks—to determine reasonableness for purposes of the Lodestar analysis) (collecting cases).  Included in those 762.5 hours, Ms. Kubas's attorneys billed for a variety of non-compensable clerical tasks, including calendaring court deadlines (ECF No. 107-9 at 5 and 12), filing various motions (*id*. at 4, 7, and 15), organizing exhibits (*id*. at 14 and 16), preparing binders (*id*. at 16 and 17), providing courtesy copies to opposing counsel and the Court (*id*. at 6 and 15), and engaging in simple communications such as checking on the status of service of a subpoena, asking how to serve the Maryland Department of Labor, and calling Chambers for the trial courtroom assignment (*id*. at 10 and 16).  They also billed for a variety of paralegal tasks at attorney rates, including drafting the civil cover sheet and summons

9

(*id*. at 4), creating spreadsheets and timelines organizing document production (*id*. at 5), and researching and computing damages calculations (*id*. at 2, 5 and 14). As for the unnamed legal assistants, because none of their approximately 30 hours of work has been documented and the Court cannot determine whether any of the time was compensable, these hours do not factor into the lodestar analysis. ECF No. 107-1 at 11; *see Molina*, 2021 WL 2805838, at *6.

Furthermore, Ms. Kubas's attorneys improperly billed two attorneys for certain tasks such as attending client meetings, hearings, depositions, and trial, in contravention with the Local Rules. Local Rules App'x B. The Local Rules provide that a departure from the guidelines is appropriate if there is a valid reason for sending two attorneys to an event, such as when a less senior attorney's presence is necessary because they organized numerous important documents for the deposition or proceeding but the more senior attorney has the requisite skill to depose the critical witness or argue before the court. *Freeman*, 126 F. Supp. 3d at 580-581. These billing entries do not require a departure from the guidelines. *E.g.*, *Jahn* v. *Tiffin Holdings, Inc.*, Civil Action No. SAG-18-1782, 2020 WL 4436375, at *3 (D. Md. Aug. 3, 2020) (disregarding junior attorney's duplicative entries for attending depositions, intra-office conferences, and reviewing parties' communications); *Hylind* v. *Xerox Corp.*, Civil Action No. PJM-03-116, 2011 WL 806419, at *6 (D. Md. Feb. 28, 2011), enforced, 2012 WL 3643759 (D. Md. Aug. 21, 2012) (subtracting time for second attorney's attendance at pretrial conference).

Finally, only work that is part of "a necessary step to ultimate victory" is chargeable in a fee petition. *Imgarten*, 383 F. Supp. 2d. at 839-840. Therefore, the Court will disregard time associated with witnesses who were not deposed or did not testify at trial and time associated with a motion *in limine*, as Ms. Kubas withdrew this motion prior to the Court's consideration. ECF No. 107-1 at 11; *see also* ECF Nos. 65 and 81 at 1.

10

In sum, upon analyzing the facts and *Johnson* factors 1, 2, and 3, the Court will apply a 15 percent reduction in the number of hours claimed.  The total rate and hours adjustment is as follows:

| Attorney | Org. Rate | Adj. Rate | Org. Hours | Adj. Hours | Adj. Total |
|---|---|---|---|---|---|
| Hora | $475.00 | $475.00 | 442.0 | 375.7 | $178,457.50 |
| Eckert | $150.00 | $150.00 | 69.6 | 59.2 | $8,880.00 |
| Gough | $225.00 | $150.00 | 9.5 | 8.1 | $1,215.00 |
| Shuntich | $300.00 | $200.00 | 186.3 | 158.4 | $31,680.00 |
| Stoddard | $175.00 | $175.00 | 54.2 | 46.1 | $8,067.50 |
| **TOTAL** | | | | | $228,300.00 |

B.   **Adjustments to the Lodestar Figure**

After determining the lodestar figure the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff."  *McAfee*, 738 F.3d at 88. When calculating a reasonable fee award, "the most critical factor" is "the degree of success obtained."  *Brodziak* v. *Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley*, 461 U.S. at 436).  An award will be reduced if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  *Hensley*, 461 U.S. at 439-440; *see also De Paredes* v. *Zen Nails Studio, LLC*, Civil Action No. TDC-20-2432, 2023 WL 8235753, at *5 (D. Md. Nov. 28, 2023) ("Although a reduction is not inevitable when there is a disparity between the amount a party sought and the amount it recovered, in its efforts to quantify success, the court 'must compare the amount of the damages sought to the amount awarded.'") (quoting *Mercer* v. *Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005)).  However, the Court must also consider nonmonetary success, such as vindicating rights and deterring future violations.  *Butler* v. *Directsat USA, LLC*, Civil Action No. DKC-10-2747, 2016 WL 1077158, at *6 (D. Md. Mar. 18, 2016); *see also City of Riverside*, 477 U.S. at 574 ("[A] successful civil rights plaintiff often secures important social

benefits that are not reflected in nominal or relatively small damages awards."). As the Fourth Circuit has recognized, fee awards "substantially exceeding damages are not unusual in civil rights litigation." *Thorn* v. *Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006).

Ms. Kubas fails to mention these last two steps for determining the attorney's fees award in her fee petition. Instead, she cites to *Parker*, a case in which this Court awarded $475,000.00 in attorney's fees after the jury awarded $83,000.00 in damages. ECF No. 107 at 11; 2022 WL 2905475. In response, 331B likens Ms. Kubas's fee award request to cases in which the court either refused to award attorney's fees because the amount requested "shock[ed] the conscience of the court" or significantly reduced the fee awards because of the notable difference between the damages sought and awarded. ECF No. 112 at 3-7 (citing *Farrar* v. *Hobby*, 506 U.S. 103 (1992); *McAfee*, 738 F.3d 81; *Fair Hous. Council of Greater Wash.* v. *Landow*, 999 F.2d 92 (4th Cir. 1993)).

Ms. Kubas was successful in her single count of retaliation, so no adjustment is necessary to separate "fees for hours spent on unsuccessful claims unrelated to successful ones." *McAfee*, 738 F.3d at 88. Her degree of success, however, warrants a reduction of the fee award. *Id.* Ms. Kubas sought $100,000.00 in damages in her complaint, which included lost pay and benefits, compensatory damages, and punitive damages. ECF Nos. 1-1 and 80 at 12. The jury determined Ms. Kubas was entitled to "damages to compensate for a net loss of wages and benefits to the date of trial" and awarded her $4,940.00. ECF No. 99. According to Ms. Kubas, this sum represents almost a year of her salary as a part-time bookkeeper with 331B. ECF Nos. 99, 107 at 5, and 113 at 2. Ms. Kubas correctly notes that low wage earners should not be penalized for their economic circumstances in a fee petition. ECF No. 113 at 2-3. It is Ms. Kubas's degree of success, not the amount of damages, that calls for a reduction in the fee award. The jury

awarded only a fraction of the four years of lost wages and benefits that Ms. Kubas sought at trial and declined to award her both compensatory and punitive damages. ECF Nos. 99 and 112 at 7. In total, Ms. Kubas secured less than 5 percent of the $100,000.00 in damages she sought in her initial Complaint. ECF Nos. 1-1 and 99.

*Parker*, the principal case on which Ms. Kubas relies, does not compel a different result. There, this Court awarded $475,870.50 in attorney's fees because the jury awarded $725,000.00 in compensatory and punitive damages, although the amount was reduced to $83,000.00 because of a statutory cap on damages, and the case was appealed up to the Supreme Court. 2022 WL 2905475, at *7. The damages award in this case is analogous to that in *McAfee*, where the plaintiff sought but failed to recover any compensatory damages or punitive damages. 738 F.3d at 93-94 (holding that jury's $2,943.60 damages award for plaintiff's out-of-pocket costs did not warrant attorney's fees of over $300,000.00).

While nonmonetary success is an important consideration in civil rights cases, including the vindication of rights and deterrence of future misconduct, the Fourth Circuit held that the "jury's forbearance of a punitive damages award . . . reveals that deterrence and vindication may not be so important." *Id*. at 94. The *McAfee* Court vacated the district court's fee award and reduced it by approximately two-thirds, exclusive of costs. *Id*. at 95; *see also Guillen*, 2024 WL 1346838, at *18-19 (reducing attorney's fees by 50 percent given that plaintiff secured only 17 percent of damages after four years of litigation and that case did not meaningfully develop the law or distinctly contribute to the public good). Therefore, the $228,300.00 lodestar amount will be reduced by 60 percent to $91,320.00.

**C.     Costs**

The Court has the discretion to determine costs that will be assessed against a losing defendant. *Roy* v. *Cnty. of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998). Costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell* v. *McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Service of process, filing fees, attorney admission costs, among other things, are reimbursable. *Butler*, 2023 WL 6517593, at *4. Lodging, transportation, and meals have, at times, been found to be reimbursable. *Compare Gonzalez* v. *New York Mart MD, Inc.*, Civil Action No. TDC-20-0020, 2022 WL 3577394, at *4 (D. Md. Aug. 19, 2022) (approving costs for transportation to trial); *Carrera* v. *EMD Sales, Inc.*, Civil Action No. JKB-17-3066, 2021 WL 3856287, at *10 (D. Md. Aug. 27, 2021) (approving reasonable costs for meals) *with De Paredes*, 2023 WL 8235753, at *6 (finding that meals were not a litigation expense); *Parker*, 2022 WL 2905475, at *7 (disapproving the cost of meals and lodging).

Ms. Kubas seeks $11,139.09 in costs, which is comprised of a $400.00 complaint filing fee, $100.00 *pro hac vice* filing fee for Ms. Shuntich, $1,546.80 in service expenses, $4,209.50 in deposition transcripts, $352.04 in "witness fees," $820.40 in exhibit preparation and trial materials, a $1,024.00 trial consultation, $2,337.69 in lodging/transportation, and $348.66 in meals. ECF No. 107-10. The costs will be reduced by $747.36 to account for service of process and witness fees for trial subpoenas of Mr. and Mrs. Williams, who were not called at trial, and Mrs. Williams' deposition, which was cancelled. *Carrera*, 2021 WL 3856287, at *9 (subtracting service of process and witness fees for witnesses who did not testify at trial). The costs will be further reduced by $2,686.35 to account for lodging/transportation and meals. Meals are not a necessary litigation expense, *De Paredes*, 2023 WL 8235753, at *6, and, given the proximity of

counsel's place of business, lodging in Baltimore was a convenience, not a necessity. *See CoStar Grp., Inc.,* 106 F. Supp. 2d at 790 (approving lodging expenses for a deposition in California). Local transportation costs may be permissible, *e.g.*, *Gonzalez*, 2022 WL 3577394, at *4, but because Ms. Kubas's filing does not separate transportation costs from impermissible lodging expenses, they will be disallowed. The remaining costs are reasonable. The costs awarded, as adjusted, total $7,705.38.

**III.     Conclusion**

For the foregoing reasons, it is hereby ordered that Ms. Kubas's Motion Attorney's Fees and Costs (ECF No. 107) is granted in part and denied in part. Ms. Kubas shall be awarded $91,320.00 in attorney's fees and $7,705.38 in costs. A separate Order will follow.

Date:  July 19, 2024

                                                                             /s/
                                                                Erin Aslan
                                                                United States Magistrate Judge